## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

UNITED STATES OF AMERICA,    )
    )
    Plaintiff,    )
    )
    v.    )
    )    Case No.
SHENNA BELLOWS in her official capacity    )
as Secretary of the State of Maine and the    )
STATE OF MAINE.    )
    )
    )
    Defendants.    )
    )

## **COMPLAINT**

As President Trump said earlier this year, "[f]ree, fair, and honest elections unmarred by fraud, errors, or suspicion are fundamental to maintaining our constitutional Republic."  Exec. Order No. 14248, 90 Fed. Reg. 14005 (Mar. 25, 2025).  Indeed, "[t]he right of American citizens to have their votes properly counted and tabulated, without illegal dilution, is vital to determining the rightful winner of an election."  *Id*.  Under our Constitution, States "must safeguard American elections in compliance with Federal laws that protect Americans' voting rights and guard against dilution by illegal voting, discrimination, fraud, and other forms of malfeasance and error."  *Id*.  Without such safeguards, "[v]oter fraud drives honest citizens out of the democratic process and breeds distrust of our government."  Purcell v. Gonzalez, 549 U.S. 1, 4 (2006).  And "[v]oters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised."  *Id*.

To prevent fraudulent votes from being cast, federal law requires that States conduct routine list maintenance procedures of their statewide voter registration databases.  Accurate

voter rolls prevent the opportunity for fraud in federal elections.  The Civil Rights Division of

the Department of Justice has the duty to ensure that States conduct regular voter registration list

maintenance to prevent the inclusion of ineligible voters on any State's voter registration

list.  This action seeks to remedy Defendant's violations of federal voting laws by their refusal to

comply with lawful data requests from the Department of Justice Civil Rights Division.  Plaintiff

United States of America ("United States") brings this action against the State of Maine and

Shenna Bellows in her official capacity as the Secretary of State for the State of Maine, and

alleges as follows:

1.      The United States brings this action to enforce provisions of the National Voter

Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq.*; the Help America Vote Act ("HAVA"),

52 U.S.C. § 20901 *et seq.*; and Title III of the Civil Rights Act of 1960 ("CRA"), 52 U.S.C. §

20701 *et seq.*

2.      Defendants have failed to comply with the important mandates of the NVRA and

HAVA by refusing to provide necessary information to enable the United States to assess its

compliance. One purpose of the NVRA is to "protect the integrity of the electoral process" and

"ensure that accurate and current voter registration rolls are maintained." 52 U.S.C.

§ 20501(b)(3)-(4). Consistent with these purposes, the NVRA requires each state to "conduct a

general program that makes a reasonable effort to remove the names of ineligible voters from the

official lists of eligible voters by reason of the death of a registrant or a change in residence of

the registrant." *Id.* § 20507(a)(4)(A)-(B).

3.      Similarly, HAVA requires the appropriate state or local election official to

perform list maintenance with respect to the centralized, computerized statewide voter

registration list required under HAVA "on a regular basis[.]" 52 U.S.C. § 21083(a)(1)-(2).

HAVA also requires that states have "[a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters[,]" with "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters." *Id.* § 21083(a)(4)(A)-(B).

4.      The United States brings this action pursuant to its authority under the NVRA, HAVA and the CRA to compel the State of Maine and its chief state election official,  Secretary of State Shenna Bellows, to provide information regarding the State's voter list maintenance procedures and an electronic copy of the statewide voter registration list including all fields, to allow the Attorney General to effectively assess Defendants' compliance with the requirements of the NVRA and HAVA.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, and 2201(a); 52 U.S.C. §§ 20510(a) and 21111; and 52 U.S.C. § 20705.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the United States' claims occurred in this District, and the Defendants are located in and conduct election administration activities in this District.

## PARTIES

7.      Plaintiff United States, through the Attorney General, has authority to enforce the NVRA, 52 U.S.C. § 20510(a), and Sections 21081-83, and 21083a of HAVA, *id.* § 21111. Both the NVRA and HAVA authorize the Attorney General to bring a civil action in an appropriate district court for such declaratory and injunctive relief as are necessary to carry out the relevant

requirements under the statute. *Id.* §§ 20510(a) and 21111.  Pursuant to the CRA, 52 U.S.C. §
20705, the Attorney General may compel states to produce certain records and papers relating to
the administration of federal elections.

8.      Defendant State of Maine is a state of the United States of America and therefore
is subject to the requirements of the NVRA, HAVA, and the CRA. 52 U.S.C. §§ 20502(4),
20503, 20701, and 21141.

9.      Defendant Secretary of State Shenna Bellows is sued in her official capacity as
chief state election official responsible for coordinating Maine's responsibilities under the
NVRA. *See* 52 U.S.C. § 20509; 21-A.M.R.S.A.S. 161(2-A). Secretary Bellows is sued in her
official capacity only.

## STATUTORY BACKGROUND

### The NVRA

10.     The NVRA was enacted "to establish procedures that will increase the number of
eligible citizens who register to vote in Federal elections "while "ensur[ing] that accurate and
current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(1), (4).

11.     Section 8 of the NVRA establishes requirements for the administration of voter
registration for elections for federal office in covered states, including Maine. Section 8(a)(4)
requires each state to "conduct a general program that makes a reasonable effort to remove the
names of ineligible voters from the official lists of eligible voters by reason of" the death of the
registrant, or "a change in the residence of the registrant, in accordance with subsections (b), (c),
and (d)[.]" 52 U.S.C. §§ 20507(a)(4)(A)-(B).

12.     Subsections (b), (c), and (d) set forth procedures for the removal of ineligible
voters from official lists of voters as part of a state's "program or activity to protect the integrity

of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office[.]" *Id.* § 20507(b).

13.     State voter list maintenance programs must be "uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965 (42 U.S.C. 1973, *et seq.*)[.]" 52 U.S.C. § 20507(b)(1); *see also* S. Rep. No. 103-6 at 31 (Feb. 25, 1993) ("The term 'uniform' is intended to mean that any purge program or activity must be applied to an entire jurisdiction."); *accord* H.R. Rep. No. 103-9 at 15 (Feb. 2, 1993) (same).

14.     Section 8(d) of the NVRA provides that a "[s]tate shall not remove the name of a registrant from the official list of eligible voters in elections for Federal office on the ground that the registrant has changed residence," unless the registrant

   A. confirms in writing that the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered; or

   B. has failed to respond to a [Confirmation Notice] and has not voted or appeared to vote . . . in an election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice.

52 U.S.C. § 20507(d)(1). Section 8(d)(2) sets forth specific requirements for the Confirmation Notice to be sent to registrants, and Section 8(d)(3) provides that a "voting registrar shall correct an official list of eligible voters in elections for Federal office in accordance with change of residence information obtained in conformance with [subsection 8(d)]." *Id.* §§ 20507(d)(2)-(3).

15.     Section 8 of the NVRA also provides an example of a list maintenance program that constitutes a reasonable effort to remove registrants who have become ineligible due to a change of residence. 52 U.S.C. § 20507(c)(1). Under this program, a state uses information from

the United States Postal Service National Change of Address ("NCOA") program to identify registrants who may have changed residence. *Id.* § 20507(c)(1)(A). Where it appears from the NCOA information that a registrant has moved to a new address in the same jurisdiction, the registration record is updated to show the new address and the registrant is sent a notice of the change by forwardable mail that includes a postage-prepaid, pre-addressed return form by which the registrant may verify or correct the address information. *Id.* § 20507(c)(1)(B)(i). Where it appears from the NCOA information that a registrant has moved to a new address in a different jurisdiction, the procedure set out in Section 8(d), described above, is used to confirm the address change. *Id.* § 20507(c)(1)(B)(ii).

16.     Section 8(i) of the NVRA provides that:

> Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

52 U.S.C. § 20507(i)(1). Section 8(i)(2) further specifies:

> The records maintained pursuant to paragraph (1) include lists of the names and addresses of all persons to whom notices described in subsection (d)(2) are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made.

*Id.* § 20507(i)(2).

17.     Section 10 of the NVRA requires each state to "designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities" under the NVRA. 52 U.S.C. § 20509.

**The Help America Vote Act**

18.     The purpose of HAVA "can be stated very simply—it is to improve our country's election system." H.R. Rep. 107-329(I) at 31 (2001). "Historically, elections in this country have been administered at the state and local level[,]" but Congress found that "the federal government can play a valuable [role] by assisting state and local government in modernizing their election systems." *Id.* at 31-32.

19.     HAVA imposes "minimum requirements" for the conduct of federal elections, which "allow the states to develop their own laws and procedures to fulfill the requirements" to the extent that they are consistent with the standards set by HAVA. *Id.* at 35.

20.     HAVA required all states to implement "in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level," that contains "the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State." 52 U.S.C. § 21083(a)(1)(A).

21.     The computerized list required by HAVA "shall be coordinated with other agency databases within the State." 52 U.S.C. § 21083(a)(1)(A)(iv).

22.     HAVA further establishes "[m]inimum standard[s] for accuracy of State voter registration records." 52 U.S.C. § 21083(a)(4). Section 303 provides that a state's "election system shall include provisions to ensure that voter registration records in the State are accurate and are updated regularly," including by use of a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters" and "safeguards to ensure that eligible voters are not removed in error from the official list of eligible voters." *Id*.

23.     HAVA mandates that a state may not process a voter-registration application without the applicant's driver's license number, where an applicant has a current and valid driver's license, or, for other applicants, the last four digits of the applicant's Social Security number.  *Id.* § 21083(a)(5)(A).  For applicants who have neither a driver's license nor a social security number, a state must assign a unique identifying number for voter registration purposes. *Id.* § 21083(a)(5)(A)(ii).  A state must then determine the validity of the information provided by the applicant.  *Id.* § 21083(a)(5)(A)(iii).

24.     HAVA applies to all fifty states, including Maine. *Id.* § 21141.

25.     Section 303 of HAVA incorporates by reference certain provisions of the NVRA. *See* 52 U.S.C. § 21083(a)(4)(A). These provisions, unless explicitly noted otherwise, apply to all states covered under HAVA. *Id.*

26.     HAVA vests the Attorney General of the United States with sole authority to "bring a civil action against any State or jurisdiction in an appropriate United States District Court for such declaratory and injunctive relief . . . as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements under "Sections 21081-83, and 21083a of [HAVA]." 52 U.S.C. § 21111.

27.     HAVA contains no private right of action. *See* 52 U.S.C. §§ 20901 to 21145.

### The Civil Rights Act of 1960

28.     Congress empowered the Attorney General to request records pursuant to Title III of the CRA, codified at 52 U.S.C. § 20701 *et seq.*

29.     Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a

period of twenty-two months after any federal general, special or primary election. *See* 52 U.S.C. § 20701.

30.     Section 303 of the CRA provides, in pertinent part, "Any record or paper required by Section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative…." 52 U.S.C. § 20703.

## FACTUAL ALLEGATIONS

31.     On July 24, 2025, the United States sent a letter to Secretary Bellows seeking information regarding Maine's compliance with the NVRA. Exhibit 1, Letter from Justice Department to Secretary Bellows (July 24, 2025) ("July 24 Letter"). The Letter requested, among other information and documents, a list of the election officials who are responsible for implementing Maine's general program of voter registration list maintenance from November 2022 through receipt of the letter and a description of the steps that Maine has taken, and when those steps were taken, to ensure that the state's list maintenance program has been properly carried out in full compliance with the NVRA. The July 24 Letter also requested – pursuant to Section 8(i) of the NVRA – that Maine provide a current electronic copy of its computerized statewide voter registration list ("SVRL"), required under Section 303 of HAVA.  *Id.* at 1.

32.     The United States Election Assistance Commission (EAC) was established by HAVA to serve as "a national clearinghouse and resource for the compilation of information and review of procedures with respect to the administration of Federal elections."  EAC website, "Help America Vote Act," https://www.eac.gov/about/help_america_vote_act.aspx. The EAC "is

an independent, bipartisan commission whose mission is to help election officials improve the administration of elections and help Americans participate in the voting process." EAC website, "About the EAC," (Sept. 15, 2025) https://www.eac.gov/about.

33.    The EAC conducts a biennial Election Administration and Voting Survey ("EAVS"), "an analysis of state-by-state data that covers various topics related to the administration of federal elections[,]" including voter registration and list maintenance. *Id.* The EAC's most recent report, "Election Administration and Voting Survey 2024 Comprehensive Report: A Report from the U.S. Election Assistance Commission to the 119th Congress" ("2024 EAVS Report"), explains that as part of the 2024 EAVS, the states "reported data on their efforts to keep voter registration lists current and accurate, known as list maintenance[,]" such as the number of confirmation notices states sent "to verify continued eligibility from registered voters[,]" and the number of voter registration records that state removed from their voter lists. EAC (Sept. 15, 2025), 2024 EAVS Report, https://www.eac.gov/sites/default/files/2025-07/2024_EAVS_Report_508.pdf, at 7.

34.    The July 24 Letter asked questions regarding Maine's compliance with the NVRA, based on the Justice Department's review of the EAVS Report. The period for the inquiries was the close of registration for the November 2022 general election through the close of registration for the November 2024 general election.

35.    The Department's July 24 letter asked Maine to produce the requested information and records by encrypted email or via the Department's secure file-sharing system, Justice Enterprise File Sharing (JEFS). Ex. 1 at 3.

36.    In response, on August 8, 2025, Secretary Bellows sent a letter refusing to provide Maine's SVRL, stating "Under Maine law, data contained within the [SVRL] is confidential and

may not be disclosed except as specified by statute. 21-A M.R.S.A. § 196-A(l[)]." Exhibit 2 at 3, Letter from Secretary Bellows to the Justice Department (August 8, 2025). Secretary Bellows then asked the Justice Department's intentions for Maine's voter registration database and how voters' personally identifying information would be protected, including complying with the Privacy Act of 1974, 5 U.S.C. § 552a. *See* Ex. 2 at 4.

37.    Although Secretary Bellows provided responses to the United States' questions regarding the issues it identified in the EAVS report, these answers did not provide sufficient details for the United States to evaluate compliance with HAVA and the NVRA. Ex. 2.

38.    For example, the Justice Department noted that Maine has nearly as many active registered voters as Maine's citizen voting age population, with a registration rate in 2024 of 92.4 percent of the citizen voting age population. The Department asked Maine to explain what actions it is taking to ensure that ineligible voters are being removed.

39.    Secretary Bellows responded, "Your first question suggests that Maine's rate of registered voters as a percentage of citizen voting age population is somehow too high. I reject the premise of DOJ's question. Maine's rate of 92.4 percent (as calculated by the EAC) is entirely consistent with Maine's longstanding high rates of civic engagement and voter participation…" Ex. 2 at 4.

40.    Likewise, in response to Question A3d, Maine indicated it had 11,011 voters (3.5 percent of registrations received during the EAVS Report period) with duplicate registrations, almost four times fewer than the nationwide average of 12.7 percent. In response to the same question for the 2022 EAVS Report, Maine indicated it had 3,638 duplicate registrations (2 percent of registrations received during the EAVS Report period). In addition, no data was provided for Question 13a, regarding which records were merged or linked with another record.

11

The Justice Department asked Maine to explain what actions it is taking to identify duplicate registrations and to remove those duplicates from the voter registration list. It also requested Maine provide a list of all duplicate registrants who were removed from the statewide voter registration list, and if records were merged, please provide that information.

41.     In response, Secretary Bellows stated that "According to the 2024 EAVS survey, Maine's rate of transactions is well within the norm, with no more than half of states that submitted data reporting a lower percentage." Ex. 2 at 4. She then described the processes Maine has in place "to ensure that duplicate applications do not result in duplicate voter registration records" in Maine's voter list. Ex. 2 at 5.

42.     The Justice Department also noted that according to Footnote 9 in the Confirmation Notice section of the EAVS Report, the "Maine elections division conducts mass confirmation notice mailings in compliance with NVRA. The last one was completed more than 90 days before the November 2022 general election. The next one is planned for 2025." Therefore, Confirmation Notice data was missing for Questions A10a through A10f of the EAVS Report. The Department asked Maine to explain how it determines who receives a confirmation notice and the confirmation notices that have been sent out.  If so, the Department requested to know the results of the confirmation notices using the same category of results used in Questions 10b-f of the EAVS report (*e.g.,* confirming registration, registrations should be invalidated, undeliverable, etc.).

43.     In addition, Maine provided no data for Question A12e, regarding persons who were removed after receiving a confirmation notice and then failed to vote in two consecutive federal elections. The July 24 letter requested that Maine explain its process for sending and

tracking confirmation notices and removing persons who have received confirmation notices and failed to vote in two consecutive federal elections.

44.    In response to this inquiry, Secretary Bellows referred the Justice Department to a narrative in the August 8 Letter regarding its confirmation notice process. That narrative states, among other things, that Maine conducts "periodic NVRA mailings to identify voters who are no longer eligible to vote at the address listed in [the registration list, and]…registrants are selected for address-confirmation mailings based on a lack of recent voter participation history." Ex. 2 at 2. The last of these mailings occurred in the summer of 2022, before the EAVS reporting period. *Id.*

45.    Finally, for Question A12b, Maine listed 101,771 voters (77.2 percent of the total voters Maine removed) for having moved outside the jurisdiction, which is more than twice the national average.  The Justice Department asked Maine to explain its process for removing individuals who move out of the jurisdiction. *Id.*

46.    In response to this question, Secretary Bellows wrote, "Maine did not remove voters for failure to return NVRA mailings – one of the three categories of removals tracked by EAVS - until after the close of the reporting period. As a result, zero removals in that category are reflected in the EAVS report, skewing the other two percentages relative to other states that did perform such cancellations during the reporting period." Ex. 2 at 5.

47.    On August 18, 2025 the Justice Department responded to Maine's August 8 Letter, reminding Secretary Bellows that the First Circuit Court of Appeals confirmed that "Maine's Voter File is a 'record[] concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters' and is thus subject to disclosure under Section 8(i)(1)." *Pub. Int. Legal Found., Inc. v.*

*Bellows*, 92 F.4th 36, 49 (1st Cir. 2024). Exhibit 4 at 1-2, Letter from Justice Department to Secretary Bellows (August 18, 2025) ("August 18 Letter"). In the same decision, the First Circuit found that a provision of Maine's state privacy law was preempted by the NVRA. *Id.* at 53 ("Maine may not 'condition [] [the right to vote] ... upon compliance with a rule ... [that] is inconsistent in both purpose and effect with the remedial objectives of the [NVRA].'"). *Id.*

48.     The Department's August 18 Letter stated that HAVA "provides authority for the Justice Department to seek the State's VRL via Section 401, which makes the Attorney General solely responsible for actions to enforce HAVA's computerized statewide voter registration list requirements."

49.     The August 18 Letter also noted that the CRA empowers the Attorney General to request records. *See* Ex. 3 at 2.  The Letter then demanded pursuant to the CRA, "an electronic copy of Maine's complete and current VRL. The purpose of the request is to ascertain Maine's compliance with the list maintenance requirements of the NVRA and HAVA."  The letter directed that the SVRL should contain "all fields, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number, or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA") to register individuals for federal elections. See 52 U.S.C. § 21083(a)(5)(A)(i)." (footnote omitted). Ex. 3 at 1-2.

50.     The August 18 letter explained to the Defendants "that HAVA specifies that the 'last 4 digits of a social security number . . . shall not be considered a social security number for purposes of section 7 of the Privacy Act of 1974'" (5 U.S.C. § 552a note); 52 U.S.C. § 21083(c)).  In addition, any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the

disclosure is for use by a government agency in carrying out the government agency's function to accomplish its enforcement authority as the Justice Department is now doing.

51.     On September 8, 2025, Secretary Bellows responded to the Justice Department's letter, again refusing to provide an unredacted computerized SVRL and requested additional information about how the Department complies with the Privacy Act.

52.     As explained in the August 18, 2025, letter to Maine, the Civil Rights Division is required to comply with the Privacy Act and has practices and procedures to ensure compliance with the Privacy Act.

53.     The information that the Justice Department collects pursuant to its request to Maine will be maintained consistent with Privacy Act protections as explained on the Justice Department's website at https://civilrights.justice.gov/privacy-policy#:~:text=Our%20Statutes-,Privacy%20Act%20Statement,the%20scope%20of%20our%20jurisdiction. The full list of routine uses for this collection of information can be found in the System of Records Notice ("SORN") titled, JUSTICE/CRT – 001, "Central Civil Rights Division Index File and Associated Records", 68 Fed. Reg. 47610-01, 611 (Aug. 11, 2003); 70 Fed. Reg. 43904-01 (July 29, 2005); and 82 Fed. Reg. 24147-01 (May 25, 2017). It should be noted that the statutes cited for routine use include NVRA, HAVA, and the CRA. The records in the SORN are kept under the authority of 44 U.S.C. § 3101 and in the ordinary course of fulfilling the responsibility assigned to the Civil Rights Division under the provisions of 28 C.F.R. §§ 0.50, 0.51.

54.     Maine is a member of the Electronic Registration Information Center (ERIC), an organization comprised of states whose stated mission "is to assist states in improving the accuracy of America's voter rolls and increasing access to voter registration for all eligible

citizens."[1]  ERIC is funded by its members, who pay a one-time membership fee and annual

dues.  *Id.*  ERIC's website explains that "[a]t least every 60 days, each member submits their

voter registration data and licensing and identification data from motor vehicle departments

(MVD) to ERIC."  *Id.*  ERIC's website states: **Members submit dates of birth, driver's**

**license/ID card numbers, and Social Security numbers to ERIC** after applying a

cryptographic one-way hash to these data points."  *Id.*

55.    Maine provides the identical information that the Department has requested to

ERIC, a private organization which lacks any enforcement authority, yet refuses to adhere to

federal law and provide that same information to the Attorney General of the United States.

## CAUSE OF ACTION

## COUNT I: NATIONAL VOTER REGISTRATION ACT, 52 U.S.C. § 20507(i)

56.    Plaintiff restates and incorporates herein the allegations in the foregoing

paragraphs of the Complaint.

57.    The Justice Department's July 24 Letter requested the information that Maine is

required to disclose pursuant to 52 U.S.C. § 20507(i).

58.    Maine has failed to provide sufficient responses to the Justice Department's

specific inquiries regarding its list maintenance procedures, despite the Attorney General's

enforcement authority of these requirements under both the NVRA and HAVA.  This

information is necessary for the Attorney General to determine if Maine is conducting "a general

program that makes a reasonable effort to remove the names of ineligible voters from the official

lists of eligible voters" as required by 52 U.S.C. § 20507(a)(4).

---

[1] *FAQ's*, ERIC, (Sept. 15, 2025) https://ericstates.org/faq/; *see id.*, "Which States Are Members of ERIC?" https://ericstates.org/about/.

## COUNT II: HELP AMERICA VOTE ACT, 52 U.S.C. § 21083

59.      Plaintiff restates and incorporates herein the allegations in the foregoing paragraphs of the Complaint.

60.      Defendants have failed to take the actions necessary for the State of Maine to comply with Section 303 of HAVA.

61.       Defendants' failure to provide sufficient information in response to requests made by the Justice Department's Civil Rights Division in its July 24 and August 18 letters prevent the Attorney General from evaluating Maine's compliance with HAVA, pursuant to the Attorney General's statutory enforcement authority under 52 U.S.C. § 21111.

62.      Defendants' refusal to provide sufficient information prevents the Attorney General from evaluating Maine's procedures that "ensure[] . . . duplicate names are eliminated from the computerized list" pursuant to 52 U.S.C. § 21083(a)(2)(B).

63.      Defendants' refusal to provide to the United States the current electronic copy of Maine's computerized statewide voter registration list, with all fields, including each registrant's full name, date of birth, residential address, and either their state driver's license number or the last four digits of their Social Security number prevents the Attorney General from determining Maine's compliance with the list maintenance requirements of HAVA. 52 U.S.C. § 21083(a)(5)(A).

## COUNT III: CIVIL RIGHTS ACT OF 1960, 52 U.S.C. § 20703

64.      On August 18, 2025, the Attorney General sent a written demand to Secretary Bellows for the production of specific election records, as authorized by 52 U.S.C. § 20703.

65.      Secretary Bellows' September 8, 2025, letter refused to provide the records requested.

17

Wherefore, the United States respectfully requests that this Court:

A. Declare that Defendants have failed to make available and provide to the United States "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered[,]" in violation of the NVRA. 52 U.S.C. § 20507(i)(1).

B. Declare that the Defendant's refusal to provide the requested records concerning the voter registration and maintenance records prevents the Attorney General from enforcing HAVA;

C. Declare that Defendants' refusal to provide registration records upon a demand by the Attorney General violates Title III of the Civil Rights Act as required by 52 U.S.C. § 20703;

D. Order Defendants to provide to the United States the current electronic copy of Maine's computerized statewide voter registration list, with all fields, including each registrant's full name, date of birth, residential address, and either their state driver's license number, or the last four digits of their Social Security number as required by 52 U.S.C. § 20703; and awards such additional relief as the interests of justice may require.

Dated: September 16, 2025

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

MICHAEL E. GATES
Deputy Assistant Attorney General
Civil Rights Division

/s/ David D. Vandenberg
MAUREEN S. RIORDAN
Acting Chief, Voting Section
Civil Rights Division
TIMOTHY F. MELLETT
DAVID D. VANDENBERG
Attorneys, Voting Section
Civil Rights Division
950 Pennsylvania Avenue 4CON
Washington, DC 20530
Maureen.Riordan2@usdoj.gov
Timothy.F.Mellett@usdoj.gov
David.Vandenberg@usdoj.gov
Tel. (202) 307-2767
Attorneys for the United States