# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 1:25-cv-468-KFW |
| SHENNA BELLOWS, in her ) | |
| official capacity as Secretary of the ) | |
| State of Maine, and the STATE OF ) | |
| MAINE, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OF LAW IN SUPPORT OF ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE COMPELLED TO PRODUCE RECORDS DEMANDED PURSUANT TO THE CIVIL RIGHTS ACT OF 1960**

Federal law requires States to provide voting records to the Attorney General upon her request. Under the National Voter Registration Act ("NVRA"), each State must retain for two years "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters" and make those records "available for public inspection." 52 U.S.C. § 20507(i)(1). The Help America Vote Act vests enforcement in the Attorney General, including bringing suit, under certain circumstances, against States that fail to maintain accurate and current voter registration lists. 52 U.S.C. § 21111. And under the Civil Rights Act of 1960, each State must "retain and preserve … all records and papers relating to any … act requisite to voting in [a federal] election," 52 U.S.C. § 20701, and provide those records and papers to the Attorney General following her "demand in writing." 52 U.S.C. § 20703.

1

Pursuant to these statutes, the United States requested a "copy of Maine's computerized statewide voter registration list" in order "to ensure that the state's list maintenance program has been properly carried out in full compliance with the NVRA." Ex. 1 at 1, Letter from Justice Department to Maine Secretary of State Shenna Bellows (August 18, 2025). Secretary Bellows refused to provide the list. Ex. 2, Letter from Secretary Bellows to Justice Department (September 8, 2025).

This Court should order Defendants to show cause why they should not be compelled to produce the documents requested by the United States.

## I. Background

**A. Statutory Overview**

In order to safeguard federal elections against the dual threats of wrongful abridgment of citizens' right to vote and wrongful dilution of citizens' right to vote—as respectively reflected by underinclusive and overinclusive voter rolls—Congress enacted the NVRA, 52 U.S.C. § 20501, *et. seq.*, and HAVA, 52 U.S.C. § 20901, *et. seq.* Both statutes contain provisions designed to help the federal government ensure that States are overseeing federal elections in a fair and honest manner and "to protect the integrity of the electoral process." 52 U.S.C. § 20501(b)(3).

Congress passed the NVRA "to establish procedures that will increase the number of eligible citizens who register to vote in elections" while "…ensur[ing] that accurate and current voter registration rolls are maintained." 52 U.S.C. §§ 20501(b)(1) and (4). The NVRA requires each state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of the death of the registrant or a change in the residence of the registrant[.]" 52 U.S.C. § 20507(a)(4)(A)-(B). A State may not remove "the name of a registrant from the official list of eligible voters in elections for Federal

2

office on the ground that the registrant has changed residence," unless the registrant first "confirms in writing that the registrant has changed residence" or "has failed to respond" to a confirmation notice sent by the State and "has not voted or appeared to vote" in a recent election. 52 U.S.C. § 20507(d)(1)(A)-(B).

The NVRA also contains recordkeeping and records-disclosure provisions. "Each State shall maintain for at least 2 years and shall make available for public inspection … all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters[.]" 52 U.S.C. § 20507(i)(1). These records include "lists of the names and addresses of all persons to whom [confirmation] notices … are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made." *Id.*

Like the NVRA, the purpose of HAVA "can be stated very simply—it is to improve our country's election system." H.R. Rep. 107-329(I) at 31 (2001)[1]. HAVA accordingly requires all states to ensure their registration lists are current and include only eligible voters. States must implement "in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level that contains the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State." 52 U.S.C. § 21083(a)(1)(A). States also are forbidden from processing voter-registration applications without the applicant's driver's license number, the last four digits of the applicant's Social Security number, or a state-assigned unique identifying number. 52 U.S.C. § 21083(a)(5)(A).

---

[1] House Report No. 107-329, *Help America Vote Act of 2001*, 107th Cong., 1st Sess. (2001), available at GovInfo.gov (House Report 107-329), https://www.govinfo.gov/content/pkg/CRPT-107hrpt329/html/CRPT-107hrpt329-pt1.htm

3

These requirements are an integral measure to ensure that States' voter-registration lists are accurate and do not contain the "names of ineligible voters." 52 U.S.C. § 21083(a)(2)(A)(ii).

The Attorney General of the United States is responsible for enforcing HAVA. 52 U.S.C. § 21111. She has sole authority to "bring a civil action against any State or jurisdiction in an appropriate United States District Court for such declaratory and injunctive relief . . . as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirement[.]" *Id.*

The Civil Rights Act of 1960 contains a similar enforcement provision. States must retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of 22 months after any federal general, special or primary election. *See* 52 U.S.C. § 20701. States must produce "all records and papers relating to any … act requisite to voting in [a federal] election" to the Attorney General upon her request. *Id.*

The DOJ is statutorily entitled to request such information pursuant to the Public Disclosure Provision of the National Voter Registration Act of 1993 ("NVRA"). 52 U.S.C. § 20507(i). The NVRA provides that each State shall make available for public disclosure "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and current of official lists of eligible voters." *Id*.

The plain text of the NVRA requires disclosure. *See id*. The phrase "all records" envisions an expansive application and includes the registration information of cancelled records and accompanying voter history. *Voter Reference Foundation, LLC v. Torrez*, 727 F.Supp.3d 1014, 1212 (D. N.M. 2024) (finding "all records" includes voter list). Similarly, "programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters" encompasses a broad range of state programs, including the removal of non-citizens from voter

4

rolls. *Id*. The capacious language of the Public Disclosure Provision has been found to "set[] a floor, not a ceiling" to the types of records that must be disclosed. *Public Interest Legal Foundation, Inc. v. Matthews*, 589 F.Supp.3d 932, 941 (C.D. Ill. 2022) (quoting *Project Vote/Voting for Am., Inc. v. Long,* 682 F.3d 331, 337 (4th Cir. 2012) (rejecting the argument that section 20507(i)(2) limits "all records" to voter removals)). As explained above, the phrase "all records," as used in the Public Disclosure Provision, necessarily includes the statewide voter registration list. The request for the statewide voter registration list sits firmly above that floor. Courts have continuously found that Section 8(i) requires the disclosure of voter registration records. *See, e.g.*, *Public Interest Legal Foundation v. Boockvar*, 431 F.Supp.3d 553 (M.D. Pa. 2019) (permitting disclosure of documents regarding "all registrants who were identified as potentially not satisfying the citizenship requirement"); *Project Vote*, 682 F.3d 331, 334 (4th Cir. 2012) (requiring disclosure of voter registration applications for *any individual* who timely completed an application) (emphasis added); *Project Vote, Inc. v. Kemp*, 208 F.Supp.3d 1320 (N.D. Ga. 2016) (holding that "Section 8(i) requires the disclosure of individual voter registration records.").

Congress passed the NVRA to "protect the integrity of the electoral process" and "ensure that accurate and current voter registration rolls are maintained." 52 U.S.C § 20501. This intention is achieved through the public disclosure provision, which Congress created to establish external checks on potential administrative oversights or inefficiencies regarding ineligible voters appearing on voter rolls. *See Project Vote*, 682 F.3d at 334-35. If the NVRA, a federal act, and state law "do not operate harmoniously in a single procedural scheme for federal voter registration, then Congress has exercised its power to 'alter' the state's regulation, and that regulation is superseded." *Gonzalez v. Arizona*, 677 F.3d 383, 394 (9th Cir. 2012) (en banc), *aff'd sub nom. Arizona v. Inter Tribal Council of Arizona, Inc.* ("*ITCA*"), 570 U.S. 1 (2013).

### B. Maine Refuses to Produce Voting Records.

On July 24, 2025, the United States sent a letter to Secretary Bellows, seeking information regarding Maine's compliance with the NVRA. Ex. 3, Letter from Justice Department to Secretary Bellows (July 24, 2025) ("July 24 Letter"). The letter requested, among other information and documents, a list of the election officials, who are responsible for implementing Maine's general program of voter registration list maintenance from November 2022 through receipt of the letter and a description of the steps that Maine has taken, and, when those steps were taken, to ensure that the state's list maintenance program has been properly carried out in full compliance with the NVRA. The July 24 letter also requested, pursuant to Section 8(i) of the NVRA, that Maine provide a current electronic copy of its computerized statewide voter registration list ("SVRL"), required by HAVA. *Id.* at 1.

In response, on August 8, 2025, Secretary Bellows sent a letter refusing to provide Maine's SVRL, stating, "Under Maine law, data contained within [SVRL] is confidential and may not be disclosed except as specified by statute." Ex. 2 at 3, Letter from Secretary Bellows to the Justice Department (August 8, 2025).

## II.   ARGUMENT

Elections must be "fair and honest." *Storer v. Brown*, 415 U.S. 724 (1974). In a fair federal election, all lawfully registered adult citizens have the right to vote after complying with any applicable state procedures, such as providing photo identification. *See* U.S. Const. Amends. XV, XIX, XXIV, XXVI. But just as fair elections require that all eligible citizens have the opportunity to vote, they require that only eligible citizens have the right to vote. "[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Purcell v. Gonzales*, 549 U.S. 1, 4 (2006)

6

(quoting *Reynolds v. Sims,* 377 U.S. 533, 555 (1964)). By refusing to provide the Attorney General with information about its voter-registration lists and procedures, Maine has violated three federal statutes and is actively thwarting the Attorney General's performance of her duties to ensure that States fairly administer Federal Elections.

### A. Maine Has Violated the National Voter Registration Act and the Help America Vote Act.

Maine has refused to make a current electronic copy of its computerized statewide voter registration list available to the Attorney General. *See* Exhibit 2. NVRA's plain text requires States to publicize "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters…" 52 U.S.C. § 20507(i)(1). That includes the voter registration list, which tautologically must be used to ensure the accuracy of the official list of eligible voters, and is the end product of the State's voter list maintenance procedures. The First Circuit Court of Appeals agrees and has informed Secretary Bellows of her duties under the NVRA when it held that "Maine's Voter File is a 'record[] concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters' and is thereby subject to disclosure under Section 8(i)(1)." *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 49 (1st Cir. 2024). That includes the voter registration list, which tautologically must be used to ensure the accuracy of the official list of eligible voters. HAVA maintains a similar disclosure requirement. The Attorney General has the authority to "ensure[] . . . duplicate names are eliminated from the computerized list," pursuant to 52 U.S.C. § 21083(a)(2)(B). This authority would be meaningless were the Attorney General unable to acquire the list; the power to ensure that a list is accurate necessarily includes the power to acquire and review the list.

The United States requested the list from Maine pursuant to the CRA in its August 18 letter, *See* Ex. 1 at 1, and Secretary Bellows refused to provide the list. *See* Ex. 2. This overt refusal to provide the information that Maine is required to disclose violates NVRA and HAVA.

### B. Maine Has Violated the Civil Rights Act of 1960.

The Civil Rights Act of 1960 displaces the Federal Rules of Civil Procedure and creates a "special statutory proceeding" under which Maine must show cause as to why it is not required to produce the voter-registration lists requested by the United States. *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962) (interpreting the Civil Rights Act of 1960). The NVRA uses materially identical language in requiring States to provide the Attorney General with records and paper relating to their administration of Federal elections and likewise creates the same "special statutory proceeding." 52 U.S.C. §§ 20507 and 20510(a). Thus, "when Congress uses the same language in two statutes having similar purposes … it is appropriate to presume that Congress intended that text to have the same meaning in both statutes." *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) (plurality opinion); *compare* NVRA, 52 U.S.C. § 20507(i)(1) ("Each State shall … make available for public inspection and, where available, photocopying … all records…") *and* Civil Rights Act of 1960, 52 U.S.C. § 20703 ("Any record or paper … shall, upon demand in writing by the Attorney General … be made available for inspection, reproduction, and copying").

The "special statutory proceeding" of these statutes is "a summary proceeding." *Lynd*, 306 F.2d at 226. To institute this proceeding, the United States need only, as it has done here, file a "simple statement" describing its "written demand for inspection and papers" and explaining that Maine and Secretary Bellows have "failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Id.* The Court accordingly "should grant the relief sought or, if the

8

respondent-custodian opposes the grant of such relief, the matter should be set down without delay for suitable hearing on the matters open for determination." *Id.*

Because Secretary Bellows has rebuffed the United States's lawful demand that she produce Maine's SVRL, the United States respectfully requests the Court to issue an order to show cause directing the State of Maine and Secretary Bellows to appear before this Court and explain their noncompliance with federal law.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that this Court enter an Order directing the State of Maine and Secretary Bellows to show cause why they have failed to produce the requested records.

Dated: September 18, 2025

        Respectfully submitted,

        HARMEET K. DHILLON
        Assistant Attorney General
        Civil Rights Division

        MICHAEL E. GATES
        Deputy Assistant Attorney General
        Civil Rights Division

        /*s/ David D. Vandenberg*
        MAUREEN S. RIORDAN
        Acting Chief, Voting Section
        Civil Rights Division
        TIMOTHY F. MELLETT
        DAVID D. VANDENBERG
        Attorneys, Voting Section
        Civil Rights Division
        950 Pennsylvania Avenue 4CON
        Washington, DC 20530
        Maureen.Riordan2@usdoj.gov
        Timothy.F.Mellett@usdoj.gov
        David.Vandenberg@usdoj.gov
        Tel. (202) 307-2767
        Attorneys for the United States