# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:25-CV-468-KFW |
| ) | |
| SHENNA BELLOWS, in her official capacity ) | |
| as the Secretary of the State of Maine, and the ) | |
| STATE OF MAINE, ) | |
| ) | |
| Defendants. ) | |
| ) | |

### JOHN SCHNECK AND MARPHEEN CHANN'S MOTION TO INTERVENE AS DEFENDANTS AND MEMORANDUM IN SUPPORT

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................ 1

BACKGROUND ............................................................................................................................. 2

LEGAL STANDARD ..................................................................................................................... 6

ARGUMENT .................................................................................................................................. 7

I.  Proposed Intervenors are entitled to intervene as of right under Rule 24(a)(2) ...................... 7

   A.  The motion is timely ...................................................................................................... 7

   B.  Proposed Intervenors have an interest in protecting their sensitive and personal information from improper disclosure to DOJ .................................................................. 7

   C.  The existing parties do not adequately represent Proposed Intervenors. ............................ 8

II. Alternatively, Proposed Intervenors should be granted permissive intervention. ................. 10

CONCLUSION ............................................................................................................................. 10

## INTRODUCTION

The U.S. Department of Justice ("DOJ") recently embarked on an unprecedented nationwide campaign to compile sensitive personal information on voters in a centralized database. In connection with this effort, DOJ sued Maine on September 16, seeking to compel the state to turn over all the information it has on all voters in the state. This assault intrudes not only upon Maine's constitutional prerogative to maintain and protect its own voter registration list; it directly intrudes upon the privacy rights of individual Mainers who have good reason to fear their personal information being handed over to the federal government. This includes John Schneck and Marpheen Chann ("Proposed Intervenors"), who now move to intervene to defend their privacy rights and prevent the improper disclosure of their sensitive and personal information to DOJ. Maine law guarantees voters that their information shall remain "confidential," with disclosure strictly restricted, particularly for driver's license numbers, partial security social security numbers, and full dates of birth. *See* 21-A M.R.S. § 196-A(1). DOJ's requested relief would run roughshod over Maine's privacy protections, which Proposed Intervenors seek to preserve.

Proposed Intervenors are entitled to intervene as of right because they have an interest in ensuring the continued privacy of their personal information, that interest is directly threatened and could be severely impaired by this action, and the existing parties do not adequately represent that interest. *See* Fed. R. Civ. P. 24(a). While Defendants have thus far resisted disclosure, as governmental defendants, they must consider the "broader public-policy implications" of the issues presented in this suit, unlike Proposed Intervenors, who are solely concerned with protecting their privacy, "full stop." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 195–96 (2022) (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). Federal courts routinely grant intervention as of right to intervenors like these in similar actions. Alternatively,

Proposed Intervenors should be granted permissive intervention under Rule 24(b) to ensure that Maine voters have a voice in this case concerning the disclosure of their personal information. Proposed Intervenors have conferred with the existing parties. Secretary Bellows and Maine consent to the motion; DOJ opposes.

## BACKGROUND

**I.    Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers.**

The U.S. Constitution "invests the States with responsibility for the mechanics" of elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. Accordingly, as a default matter, the Constitution assigns states the responsibility for determining voter eligibility and maintaining lists of eligible voters. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013).

While Congress has enacted certain laws governing voter registration, these laws augment existing "state voter-registration systems," *id.* at 5, and confirm that states are the custodians of voter registration data. Congress in 1993 enacted the National Voter Registration Act ("NVRA") to serve "two main objectives: increasing voter registration and removing ineligible persons from the states' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018); *see also* 52 U.S.C. § 20501(b). But tellingly that law charges *states*—not the federal government—with the "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a), including as to maintaining voter lists (subject to strict procedural safeguards), *id.* § 20507(c)-(g). It similarly makes *states* the custodians of voter lists, *see Husted*, 584 U.S. at 761.

In the wake of the 2000 elections, Congress enacted the Help America Vote Act ("HAVA") "to improve voting systems and voter access." *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th Cir. 2024). Like the NVRA, HAVA regulates how *states*

2

maintain voter lists, requiring they create a "computerized statewide voter registration list" and "perform list maintenance." 52 U.S.C. § 21083(a)(1), (2)(A). HAVA is abundantly clear that this list is to be "defined, maintained, and administered at the State level." *Id.* § 21083(a)(1)(A).

II.  **The Department of Justice has embarked on an unprecedented nationwide campaign to collect personal voter registration data held by the states.**

This Spring, DOJ launched a campaign to demand broad and unprecedented access to state voter files, including personal information about each registered voter that Maine law designates as confidential. *See* 21-A M.R.S.A. § 196-A. To date, DOJ has sent demands to over thirty states, with plans to make similar demands on all fifty states.[1] It seeks to use the data to create a national voter database that will, in turn, be used to seek to substantiate President Trump's unfounded accusations that millions of non-citizens have voted illegally in recent elections.[2] The vast majority of states—including those led by Republican office holders—have refused to comply, appropriately declining to turn over sensitive personal information that is typically protected by state law.[3]

DOJ sent Maine a letter on July 24, 2025, demanding, among other things, Maine's "statewide voter registration list." (ECF No. 5-4). After Secretary of State Shenna Bellows responded by asking questions about DOJ's "intentions" in seeking Maine's voter registration database, (ECF No. 5-3 at 4), DOJ claimed that the "purpose of the request is to ascertain Maine's compliance with the list maintenance requirements of the NVRA and HAVA." (ECF No. 5-2 at 2). DOJ also demanded that Maine's production include voters' full dates of birth, driver's license

---

[1] *See* Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://perma.cc/8VP4-WRXD.
[2] *Id.*
[3] *See* Jonathan Shorman, *Some Republican states resist DOJ demand for private voter data*, Stateline (Sep. 18, 2025), https://stateline.org/2025/09/18/some-republican-states-resist-doj-demand-for-private-voter-data/ (reporting only one state—Indiana—has so far given DOJ everything it sought).

numbers, and partial social security numbers. (*Id.* at 1).

Secretary Bellows declined to produce an unredacted copy of Maine's voter registration list. (Ex. D (Sep. 8 Letter to DOJ) at 1). But she left the door open to producing the data in the future, emphasizing that while she was denying DOJ's request "[a]t this time," she would reevaluate and "carefully consider" any information DOJ might provide "addressing [her] concerns." (*Id.* at 3).

### III. The Department of Justice sues Maine to obtain its complete voter registration list.

DOJ filed this suit on September 16, seeking to compel Maine to provide its full statewide voter registration list. (ECF No. 1 at 18). DOJ cited three federal statutes to justify its claims: the NVRA, HAVA, and the Civil Rights Act of 1960. None support DOJ's sweeping demand.

*First*, though the NVRA requires states to permit public inspection of certain records, 52 U.S.C. § 20507(i)(1), courts have consistently held that "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in" those records, such as driver's license numbers, partial social security numbers, and dates of birth, *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (citations omitted ).

*Second*, unlike the NVRA, HAVA has no disclosure provisions at all, and DOJ's complaint and letters cite no case law or other authority for the radical proposition that the mere existence of DOJ's authority to enforce HAVA's "uniform and nondiscriminatory" requirements entitles it to unfettered access to state voter registration lists upon demand. 52 U.S.C. § 21111.

*Third*, as a last-ditch effort, DOJ invokes Section 303 of the Civil Rights Act of 1960, a long dormant Civil Rights era law that permits DOJ to review certain voting records to investigate "question[s] concerning infringement or denial of [] constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962). Congress enacted the law to preserve "the right of all qualified citizens to vote without discrimination on account of race," and specifically to facilitate

4

"investigations" authorized under the Civil Rights Act of 1957. H.R. Rep. No. 86-956, at 1944, 86th Cong., 2nd Sess. (Aug. 20, 1959). But DOJ admits it is not seeking to enforce these laws or investigate the unconstitutional denial of the right to vote. Instead, DOJ claims to be evaluating Maine's list maintenance efforts under NVRA and HAVA—statutes with their own disclosure rules (under the NVRA specifically) and enforcement mechanisms. (ECF No. 5-2 at 2). Thus, Section 303 is inapplicable here.[4]

### IV. Intervenors' sensitive personal information is placed in jeopardy by DOJ's demands.

Proposed Intervenors are civically-engaged, registered voters in Maine whose confidential personal information—driver's license numbers, partial social security numbers, and full dates of birth—will be disclosed to DOJ if its efforts prevail. Maine law designates those specific categories of information as "highly sensitive personal information" barred from disclosure to anyone but Maine's municipal and state election officials. 21-A M.R.S. § 196-A(1).

***John Schneck.*** Mr. Schneck, a longtime Maine resident and Maine voter and former state legislator from Bangor, seeks to intervene to protect his personal data from becoming accessible to DOJ. A former Chair of Maine House's Veterans and Legal Affairs Committee, Mr. Schneck has dedicated his career to protecting civic engagement and voting rights in Maine. (Decl. of John Schneck ("Schneck Decl.") (**Exhibit B**) ¶¶ 3–6). Mr. Schneck fears the disclosure of his personal information to the federal government, particularly given his vocal advocacy for voting rights in Maine. (*Id.* ¶ 12). He also is concerned that DOJ's suit, and its effort to override Maine's state privacy protections, will discourage voter participation in Maine. (*Id.* ¶¶ 8–11).

***Marpheen Chann.*** Mr. Chann is a first-generation American born to Cambodian

---

[4] Even if Section 303 did apply, it does not prohibit states from redacting confidential and sensitive voter information that has nothing to do with investigating the denial of the right to vote, just as they may under the NVRA. *See Pub. Int. Legal Found.*, 92 F.4th at 56.

immigrants who seeks to intervene to protect his personal data from disclosure to DOJ and safeguard the personal data of the naturalized citizens in the immigrant communities he works to enfranchise. As the Founder and Executive Director of Khmer Maine, Mr. Chann regularly assists immigrants in obtaining naturalized citizenship and then registering to vote. (Decl. of Marpheen Chann ("Chann Decl.") (**Exhibit C**) ¶¶ 6–7). Mr. Chann is deeply concerned that DOJ's suit will frustrate his work by discouraging recently naturalized citizens from registering to vote—including those in the Cambodian-American community, for whom the possibility of retaliation against voters is particularly salient given the history of authoritarianism in Cambodia. (*Id.* ¶¶ 9–10). This concern is heightened by the federal government's recent anti-immigrant actions and rhetoric, which has sparked significant fear among immigrants in Maine, including among citizens. (*Id.* ¶¶ 12–14). Mr. Chann is also personally concerned about DOJ using his data to improperly identify him as a non-citizen because he currently lacks a copy of his birth certificate, and because his passport does not reflect his current surname, which he changed in 2018 to that of his adoptive family. (*Id.* ¶¶ 15–17).

## LEGAL STANDARD

A movant has a right to intervene where "(i) its motion is timely; (ii) it has an interest relating to the property or transaction that forms the foundation of the ongoing action; (iii) the disposition of the action threatens to impair or impede its ability to protect this interest; and (iv) no existing party adequately represents its interest." *Ungar v. Arafat*, 634 F.3d 46, 50 (1st Cir. 2011); *see also* Fed. R. Civ. P. 24(a)(2). Alternatively, the Court has discretion to grant intervention if the movant has "a claim or defense that shares with the main action a common

question of law or fact," Fed. R. Civ. P. 24(b)(1)(B), and intervention will not "unduly delay or prejudice the adjudication of the original parties' rights," *id.* § 24(b)(3).[5]

## ARGUMENT

I. **Proposed Intervenors are entitled to intervene as of right under Rule 24(a)(2).**

A. **The motion is timely.**

There can be no serious dispute that Proposed Intervenors' motion—filed a mere seven days after DOJ brought suit and before any case schedule has been set—is timely. *See Fiandaca v. Cunningham*, 827 F .2d 825, 834 (1st Cir. 1987).

B. **Proposed Intervenors have an interest in protecting their sensitive and personal information from improper disclosure to DOJ.**

Proposed Intervenors also satisfy Rule 24(a)(2)'s interest factors, because each has "interests, [which] as a practical matter, may be impaired by this litigation." *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 545 (1st Cir. 2006). Each is a registered Maine voter who fears the disclosure of their sensitive personal information to the federal government—precisely the outcome DOJ seeks. (*See supra* Background § IV). "[T]hat is all Rule 24 demands." *Sakab Saudi Holding Co. v. Aljabri*, No. CV 21-10529-NMG, 2021 WL 8999588, at *2 (D. Mass. Oct. 26, 2021) (finding Rule 24(a)(2) satisfied where the "plaintiff's claims 'could result' in the disclosure of privileged information" (quoting *B. Fernandez Hnos*, 440 F.3d at 545)).

Further still, each of the Proposed Intervenors has discrete interests stemming from their civic and voter engagement work in Maine. Mr. Schneck devoted his career in the state legislature to expanding access to voting. (*Id.* ¶ 6). He fears that DOJ's suit will deter Mainers from registering

---

[5] In compliance with Rule 24(c), Proposed Intervenors attach a proposed "pleading" to their motion. (*See* Ex. A). Proposed Intervenors reserve the right to file a Rule 12 motion ahead of any deadline set by the Court or the Federal Rules.

7

to vote and undermine Maine's high levels of voter participation. (*Id.* ¶¶ 8–11). That is all on top of his own sincere fear for the disclosure of his personal information to DOJ. (*Id.* ¶ 12).

Mr. Chann likewise has at least two significantly protectable interests at stake in this action. First, Mr. Chann's work at Khmer Maine assisting recently naturalized citizens in voting will be impaired by DOJ's efforts, which will discourage political participation by newly naturalized citizens, who justifiably fear the government will target those whom it misidentifies as non-citizens. (Chann Decl. ¶¶ 9–10, 13–14). Second, Mr. Chann's own difficulties obtaining documentary proof of his citizenship, coupled with his legal name change in 2018, make him uniquely susceptible to DOJ's targeting of suspected non-citizens. (*Id.* ¶¶ 15–17).

### C. The existing parties do not adequately represent Proposed Intervenors.

The existing parties do not adequately represent Mr. Schneck's and Mr. Chann's interests. DOJ plainly does not—it seeks to forcibly compel production of Proposed Intervenors' sensitive personal information against Proposed Intervenors' wishes and in violation of privacy laws.

While Maine and the Secretary oppose the action, they also do not adequately represent Proposed Intervenors. States under the NVRA must "balance competing objectives," including maintaining accurate voter rolls by removing ineligible voters, subject to procedural safeguards. *Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019); *see also* 52 U.S.C. § 21501(b)(4). Indeed, Secretary Bellows has not categorically ruled out turning over sensitive information to DOJ. (*See* Ex. D at 3 (denying requests "[a]t this time"). Proposed Intervenors do not have these competing interests or reliance on federal funds: they are focused entirely on maintaining the privacy of their sensitive personal information.

These distinct public and private interests have consistently been found to satisfy the "minimal" burden of showing inadequate representation. *Trbovich*, 404 U.S. at 538 n.10. Federal

8

courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors," *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003), because their interests are "necessarily colored by [their] view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it," *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) (explaining that the burden in these circumstances is "comparatively light"). The First Circuit has similarly recognized that "a governmental entity charged by law with representing the public interest of its citizens" will not necessarily "advance the narrower interest of a private entity." *Conservation L. Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992) (reversing denial of intervention). Proposed Intervenors, in contrast, are not "constrained" by competing public duties. *Id.*; *see also La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 309 (5th Cir. 2022) (explaining in election law case that "private interests are different in kind from the public interests of the State").

The Supreme Court recently emphasized these discrete interests, noting that public officials must "bear in mind broader public-policy implications," whereas private litigants—like Proposed Intervenors—seek to vindicate their own rights "full stop." *Berger*, 597 U.S. at 195–96 (quoting *Trbovich*, 404 U.S. at 538 n.10). Because state officials do not share "identical" interests with private parties, private parties bear only a "minimal" burden in showing inadequate representation. *Id.* The First Circuit has similarly held that this "minimal" showing is satisfied where movants explain how their interests are "different in kind . . . from those of the named party." *B. Fernandez & Hnos.*, 440 F.3d at 546 (reversing finding of adequate representation and granting intervention). That burden is met here, where Proposed Intervenors do not share Defendants' competing public duties or objectives; their interests rest exclusively in protecting their personal data—full stop.

9

## II.  Alternatively, Proposed Intervenors should be granted permissive intervention.

This Court should alternatively exercise its discretion to grant permissive intervention. Rule 24(b) "should be construed liberally" in favor of intervention, *Animal Prot. Inst. v. Martin*, 241 F.R.D. 66, 68 (D. Me. 2007) (quotation and citation omitted), and here it is readily satisfied: Proposed Intervenors assert a "claim or defense that shares with the main action a common question of law or fact," (*see* Ex. A), and granting intervention would not "unduly delay or prejudice the adjudication" of the matter. Fed. R. Civ. P. 24(b). Proposed Intervenors agree to abide by any schedule entered by the Court or previously agreed to by the parties.

Courts regularly grant permissive intervention to ensure actual voters (or organizations representing them) have a say in litigation concerning their rights as voters.[6] Here, in particular, intervention is strongly justified. Proposed Intervenors indisputably have "confidentiality and/or privacy interest[s]" at stake in this case, which alone "warrants an opportunity to permissively intervene to protect that interest." *In re Exch. Union Co.*, No. 24-MC-91645-ADB, 2025 WL 894652, at *3 (D. Mass. Mar. 24, 2025). Moreover, they will add a uniquely—and critically important—voter perspective to this case that will not otherwise be represented in the case. *See T-Mobile Ne. LLC v. Town of Barnstable*, 969 F.3d 33, 41 (1st Cir. 2020). These factors, in addition to the clear satisfaction of Rule 24(b), strongly weigh in favor of permissive intervention.

## CONCLUSION

Mr. Schneck and Mr. Chann respectfully request the Court grant them intervention as Defendants to allow them to protect their sensitive personal information from disclosure.

---

[6] *See, e.g., RNC v. Aguilar*, No. 2:24-CV-00518-CDSMDC, 2024 WL 3409860, at *3 (D. Nev. July 12, 2024); *Ariz. All. for Retired Ams. v. Hobbs*, No. CV-22-01374, 2022 WL 4448320, at *2 (D. Ariz. Sep. 23, 2022); *PILF v. Winfrey*, 463 F. Supp. 3d 795, 802 (E.D. Mich. 2020).

September 23, 2025

Respectfully submitted,

*/s/ James G. Monteleone*
James G. Monteleone
**BERNSTEIN SHUR**
100 Middle Street/PO Box 9729
Portland, Maine 04104-5029
jmonteleone@bernsteinshur.com

Elisabeth C. Frost*
Christopher D. Dodge*
Branden D. Lewiston*
Tori Shaw*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW
Suite 400
Washington, DC 20001
Telephone: (202) 968-4490
efrost@elias.law
cdodge@elias.law
blewiston@elias.law
tshaw@elias.law

*Pro Hac Vice Applications Forthcoming

*Counsel for Proposed Intervenors John Schneck and Marpheen Chann*

11