# Exhibit C

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No. 1:25-CV-468-KFW |
| | ) |
| SHENNA BELLOWS, in her official capacity as the Secretary of the State of Maine, and the STATE OF MAINE, | ) |
| | ) |
| Defendants. | ) |

**DECLARATION OF MARPHEEN CHANN**

I, Marpheen Chann, declare as follows:

1. I am a U.S. citizen, over the age of 18, am competent to testify, and have personal knowledge of the facts and information set forth in this declaration.

2. I am a first-generation American born in California to parents who fled the Khmer Rouge in Cambodia. When I was a young child, my birth family relocated to Maine, where I was placed in foster care and ultimately adopted. I have continued to live in Maine ever since.

3. I have been a registered voter in Maine since I turned eighteen years old. Currently, I am registered to vote in Cumberland County, where I live.

4. I care deeply about Maine, the people who live here, and the laws and government policies that impact our lives. I not only grew up here in Maine, I went to school here and have degrees from both the University of Southern Maine and the University of Maine School of Law.

5. I understand that the Department of Justice's lawsuit against Secretary Bellows and the State of Maine seeks to compel Secretary Bellows and the State to turn over to the Department

1

of Justice the complete, unredacted voter registration history of all voters in the state, including driver's license numbers, partial social security numbers, and dates of birth.

6. If the Department of Justice is successful in obtaining this information, it will harm me personally as a Maine voter whose privacy rights will be invaded, and it will also harm my work with Khmer Maine, a community-based organization assisting Cambodians and Southeast Asians in the State of Maine, of which I am the Founder and Executive Director.

7. At Khmer Maine, I spearhead the organization's work providing counseling about the immigration process—including assisting immigrants in obtaining citizenship—and promoting civic engagement among Maine's Cambodian and Southeast Asian communities. Our civic engagement efforts include assisting recently naturalized citizens with the voter registration process, providing transportation assistance to polls, and offering language support, if needed. This work occurs over broad swathes of the State, as Maine's Cambodian population lives in both urban and rural areas.

8. Beyond my work for Khmer Maine, I am also civically engaged in my local community in Cumberland County in a wide variety of ways. Among them, in 2021, I became the first Cambodian American elected official in the State of Maine when I was elected an At-Large Commissioner for the City of Portland.

9. Through my political and civic engagement work, I am aware that Maine law provides extensive and strong protection for sensitive information contained in voter registration records. As a voter, Maine's longstanding commitment to the security and privacy of this information gives me confidence that my personal information is secure. This has become increasingly important to me both as a voter and a political activist in the current national climate, where persons in and aligned with the federal government have increasingly called for and even

moved to punish persons they see as political enemies.

10. In my experience, Maine's strong protections for voter information are also critical to being able to successfully promote and encourage voter registration, particularly among voters who are sensitive to disclosure of their personal information or who have faced a history of voter suppression in foreign countries. This is particularly true of voters among Maine's Cambodian and Southeast Asian immigrant populations, many of whom are extremely wary of having their personal information turned over to federal authorities. Those fears spring from Cambodia's longstanding history of authoritarianism, one-party politics, and state-sanctioned and politically driven violence.

11. The actions that the Department of Justice has taken to compel the production of sensitive personal information of Maine voters do not give me confidence that the Department will respect federal or state privacy laws or be a reliable custodian of my personal information or the personal information of the communities I work with in Maine. As a result, I am extremely concerned both about the disclosure of my own personal information to the Department of Justice as well as that of the community members who I work to enfranchise.

12. In addition to my fears about the disclosure itself, I am concerned that the threat of disclosure will deter qualified citizens in Maine from registering to vote. This is particularly true of naturalized citizens, many of whom are currently afraid of being targeted simply because they are immigrants, as persons in and aligned with the federal government engage in increasingly anti-immigrant rhetoric.

13. The threat that voters' personal information may be provided to the federal government will directly frustrate my own work with Khmer Maine. A major goal of our civic engagement work is to prepare community members for citizenship and to encourage them to

exercise their rights as American citizens, including by participating in the electoral process. That work will become significantly more difficult if community members believe they could be punished, scrutinized, or investigated simply for registering to vote.

14. Indeed, if they successfully register to vote, as recently naturalized citizens, these individuals face a substantially greater risk of being wrongly accused of being noncitizens and accordingly illegally registered to vote based on the misguided and error-prone efforts in database matching that appears to be at least part of the federal government's plan for the information that they seek to compel from Maine. In the face of all these threats, many naturalized citizens who are eligible to—and may deeply want to—exercise their newly granted right to the franchise will instead choose to opt out of the system for fear that they will be targeted and wrongfully accused.

15. Even though I am a natural born citizen of the United States, I share these fears in the current climate, where persons within and politically aligned with the Executive Branch of the federal government are increasingly calling for documentary proof of citizenship requirements for people to register to vote and arms of the government, including Immigration and Customs Enforcement, have been targeting not only non-citizens, but non-white *citizens*, as they enforce increasingly anti-immigrant policies.

16. Earlier this year, I lost my social security card and California birth certificate. Although I promptly requested both documents, many months later I am still waiting for California to send me my birth certificate.

17. On top of that, in 2018, I changed my surname to reflect my birth parents' family name, meaning that my legal name appears differently in various government records. For instance, my passport does not reflect my current surname. I am concerned that this increases the likelihood that I will be wrongly flagged as ineligible to vote, if the Department of Justice uses it to engage

in database matching on its quest to find and identify allegedly unlawful voters. Many Maine voters, particularly in the community I work with, face similar barriers and obstacles due to name changes and will also face burdens to "prove" their legitimacy as voters should they become ensnared in this political crossfire.

18. I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 9/23/2025

Marpheen Chann