# Exhibit D



**STATE OF MAINE**
DEPARTMENT
OF THE
**SECRETARY OF STATE**

SHENNA BELLOWS
SECRETARY OF STATE

September 8, 2025

**Via U.S. Mail & E-mail**

Maureen Riordan
Senior Counsel, Department of Justice
U.S. Department of Justice
Civil Rights Division, Voting Section
950 Pennsylvania Ave., NW – 4CON
Washington, DC 20530
maureen.riordan2@usdoj.gov

      Re:    Department of Justice (DOJ) correspondence of August 18, 2025

Dear Attorney Riordan:

    I write in response to the letter of Assistant Attorney General Harmeet Dhillon, dated August 18, 2025.  Per her instructions, I am directing this correspondence to you.

    I have carefully reviewed AAG Dhillon's letter and continue to have grave concerns about the appropriateness and legality of DOJ's request for personally identifying information (PII) concerning all of Maine's approximately 1 million voters, including such highly sensitive information as drivers' license numbers, partial social security numbers, and full dates of birth. As I noted in my previous letter of August 8, 2025, the Maine Legislature has expressly designated such PII as highly sensitive information within Maine's central voter registration system and the First Circuit Court of Appeals has expressly recognized that section 8(i) of the National Voter Registration Act (NVRA) does not require disclosure of such information.  *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024).

    I also requested in my August 8th letter that DOJ explain how its unprecedented request for sensitive PII on every Maine voter complies with the Privacy Act of 1974 and the e-Government Act of 2004.  It appears beyond debate that DOJ is compiling a system of records concerning individuals within the scope of the Privacy Act.  Yet we have been unable to identify any System of Records Notice (SORN) published by DOJ in the federal register explaining to the public how, among other things, voters' PII will be stored, accessed, and retained within DOJ systems.  Nor has DOJ pointed to any applicable SORN in its correspondence.  Rather, it has

responded with what appears to be a non sequitur, pointing to a provision in the Help America Vote Act (HAVA) that allows states to require certain voters to provide partial social security numbers to register to vote notwithstanding a provision of the Privacy Act that generally forbids such requirements. If anything, this HAVA exception allowing states to require voters to provide their partial social security numbers only underlines the importance of the Privacy Act's requirements that DOJ explain to the public how it plans protect their sensitive PII.

I have similar concerns about DOJ's compliance with the e-Government Act of 2004, Pub. L. No. 107–347, 116 Stat. 2899. Broadly speaking, under section 208 of that law, DOJ is required to conduct a privacy impact assessment before it either develops or procures information technology that collects, maintains, or disseminates PII or initiates any new collection of information using information technology that involves the PII of 10 or more persons. The privacy impact assessment must state, among other things, why the information is being collected, the intended use of the information, with whom the information will be shared, and how the information will be secured. Moreover, the privacy impact assessment must, in most cases, be made publicly available.

It is my understanding that DOJ intends to feed Maine's voter file into some sort of unidentified information technology system in an attempt to identify duplicate and other invalid registrations. Yet we have been unable to identify any privacy impact assessment applicable to DOJ's attempt to collect PII on hundreds of thousands of Maine voters (as well as millions more across the rest of the country) for this purpose. Moreover, DOJ's previous correspondence identifies no such assessment. I ask that DOJ please identify an applicable assessment or explain why DOJ contends that the e-Government Act does not apply to its requests for voter PII.

The requirements of the Privacy Act and the e-Government Act are no mere technicalities. Data breaches, including breaches of governmental systems, are an unfortunately regular occurrence. Moreover, there have been recent and alarming allegations of mishandling of sensitive PII by the federal government.[1] Mainers are entitled to know—and to provide input on—how their PII will be collected, stored, and used by the federal government.

DOJ's letter of August 18th also expands the legal basis for its request for Maine's unredacted voter file, citing section 401 of HAVA and section 301 of the Civil Rights Act of 1960 (CRA) in addition to the NVRA. We do not believe that these provisions are applicable to DOJ's request for voters' PII.

Section 401 of HAVA simply allows the Attorney General to bring a civil action to enforce provisions of HAVA. It does not grant the Attorney General any administrative subpoena authority or similar rights to obtain data or records from states outside the context of litigation. In any event, DOJ's correspondence has not set forth any facts or allegations suggesting that Maine is not in compliance with HAVA. To the contrary, my letter of August 8, 2025, demonstrates Maine's compliance with HAVA's list-maintenance requirements.

---

[1] Nicholas Nehamas, "DOGE Put Critical Social Security Data at Risk, Whistle-Blower Says," *New York Times* (Aug. 26, 2025), https://www.nytimes.com/2025/08/26/us/politics/doge-social-security-data.html.

While the CRA does contain a provision allowing the Attorney General to demand inspection or copying of certain records relating to voter registration, it requires the Attorney General's demand to contain a "statement of the basis and the purpose therefore." 52 U.S.C.A. § 20703. While DOJ's August 18th letter states an alleged "purpose" for the request of "ascertain[ing] Maine's compliance with the list maintenance requirements of the NVRA and HAVA," this stated purpose is unrelated to the purpose of the CRA, which is to allow DOJ to investigate questions concerning infringement or denial of constitutional voting rights in order to determine whether a suit under the CRA is appropriate. Nor does the August 18th letter explain the basis for making a sweeping request for voters' sensitive PII in order to determine the adequacy of Maine's procedures for conducting list maintenance. If there is any precedent for using the CRA's inspection provisions to review a state's list-maintenance practices—particularly in the absence of any allegation that the state's list-maintenance practices are in violation of the NVRA or HAVA—we ask that DOJ please provide it.

In any event, neither HAVA nor the CRA exempts DOJ from complying with the Privacy Act and the e-Government Act before collecting sensitive PII on all Maine voters.

Finally, DOJ's August 18th letter makes a new request for a copy of "all original and completed voter registration applications submitted to the State of Maine from December 1, 2023 through July 1, 2025." This new request raises many of the same issues discussed above concerning Maine's electronic voter registration list. Moreover, it is difficult to understand what possible legitimate investigative purpose could be served by such an undifferentiated request for all registration applications in a 19-month period. In any event, under Maine law, original voter registration applications are maintained by registrars in each of Maine's roughly 480 municipalities. 21-A M.R.S.A. § 172.

If DOJ is willing to provide additional information addressing my concerns above, I will carefully consider that information. At this time, however, I am unable to comply with the DOJ's requests for unredacted information concerning all Maine voters.

Sincerely,

*Shenna Bellows*

Shenna Bellows
Secretary of State