IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>SHENNA BELLOWS, in her official capacity as the Secretary of State of Maine, and the STATE OF MAINE<br><br>*Defendants*. | Case No. 1:25-CV-468-KFW |

# LEAGUE OF WOMEN VOTERS OF MAINE'S MOTION TO INTERVENE AS DEFENDANT AND MEMORANDUM IN SUPPORT

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND .....................................................................................................................2

    I.    Background and Procedural Posture..............................................................................2

    II.    The League of Women Voters of Maine .....................................................................3

LEGAL STANDARD ..............................................................................................................5

ARGUMENT............................................................................................................................5

    I.    LWVME is entitled to intervene as of right under Rule 24(a)(2) .................................5

        A.  This motion is timely ..............................................................................................5

        B.  LWVME has significantly protectable interests related to this litigation ................6

        C.  The litigation will impact LWVME's interests ........................................................7

        D.  LWVME's interests are not adequately represented by the current parties .............8

    II.    In the alternative, LWVME should be permitted to intervene under Rule 24(b) ..........9

CONCLUSION.......................................................................................................................10

## INTRODUCTION

Despite its limited role of enforcing federal election laws in elections, the U.S. Department of Justice ("USDOJ") has gone on an unprecedented fishing expedition, demanding expansive voter information from at least 35 states.[1] It now seeks to use the federal courts to require states to comply with those unlawful demands. In addition to this case, in which the federal government seeks access to data far beyond what the National Voter Registration Act (or state law) requires or permits without articulable basis, the United States has sued seven other states and their respective secretaries of state, in addition to at least one county.[2] But USDOJ is not investigating potential violations of the law. Rather, these lawsuits represent an extraordinary expansion of federal collection of state voter data, without adhering to state and federal protections for voters' data or respect for the state's primacy in election administration.

Proposed Intervenor-Defendant the League of Women Voters of Maine (the "League" or "LWVME") is one of Maine's oldest and most well-established pro-democracy organizations. LWVME works to encourage civic participation in the state and represents hundreds of members across Maine whose personal information now may be unlawfully shared depending on the outcome of this litigation. Because LWVME's interests are directly impacted by this litigation, LWVME has a right to intervene pursuant to Federal Rule of Civil Procedure 24(a)(2). In the alternative, LWVME seeks permissive intervention under Rule 24(b)(1).

---

[1] Kaylie Martinez-Ochoa, Eileen O'Connor, and Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Center (Aug. 28, 2025) (last updated Sep. 25, 2025), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information.

[2] *See United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. filed Sep. 25, 2025); *United States v. Benson*, No. 1:25-cv-01148 (W.D. Mich. filed Sep. 25, 2025); *United States v. Simon*, No. 0:25-cv-03761 (D. Minn. filed Sep. 25, 2025); *United States v. Bd. of Elections of the State of New York*, No. 1:25-cv-01338 (N.D.N.Y. filed Sep. 25, 2025); *United States v. Scanlan*, No. 1:25-cv-00371 (D.N.H. filed Sep. 25, 2025); *United States v. Pennsylvania*, No. 2:25-cv-01481 (W.D. Pa. filed Sep. 25, 2025).

## BACKGROUND

I.  **Background and Procedural Posture**

This case is about the federal government's transparent gambit to amass sensitive data on millions of Americans. Invoking only the National Voter Registration Act ("NVRA"), USDOJ sent a letter to Maine Secretary of State Shenna Bellows on July 24, 2025. Among other information, the letter requested "[t]he current electronic copy of Maine's computerized statewide voter registration list" including "all fields contained within the list." ECF No. 5-4 at 1. Secretary Bellows responded on August 8, requesting additional information from USDOJ, including information regarding compliance with statutory privacy protections. ECF No. 5-3 at 3–4. On August 18, USDOJ wrote again to Secretary Bellows and, in addition to the NVRA, invoked the Help America Vote Act ("HAVA") and Civil Rights Act ("CRA") as justifications for its demand for Maine's full voter file. ECF No. 5-2 at 1–2. This letter made clear that USDOJ's demand encompassed "all fields, including the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number." *Id.* at 1.

USDOJ has demanded copies of statewide voter lists—including sensitive personal data that is not part of the public voter file—from at least 35 states, including Maine, and started eight nearly identical lawsuits.[3] Reporting indicates that USDOJ's asserted motivations are pretextual: Instead of using the data to enforce federal law, USDOJ reportedly plans to share the data it collects with Homeland Security Investigations to facilitate criminal and immigration investigations.[4]

---

[3] *See supra* note 2; Martinez-Ochoa et al., *supra* note 1.

[4] Sarah N. Lynch, *US Justice Dept Considers Handing Over Voter Roll Data for Criminal Probes, Documents Show*, Reuters (Sep. 9, 2025), https://www.reuters.com/legal/government/us-justice-dept-considers-handing-over-voter-roll-data-criminal-probes-documents-2025-09-09/.

USDOJ filed its Complaint in this matter on September 16, bringing claims under the NVRA, HAVA, and CRA. ECF No. 1. Proposed Intervenor LWVME now seeks timely intervention as a defendant to vindicate its interests in this matter.

**II.     The League of Women Voters of Maine**

The League is a nonprofit, nonpartisan, grassroots membership social welfare organization that works to expand civic participation and give political voice to all Mainers. Ex. B, Declaration of Jill Ward ("Ward Dec."), ¶ 3. LWVME is the Maine affiliate of the League of Women Voters ("LWV"), which was founded in 1920 as an outgrowth of the struggle for voting rights for women. Ward Dec., ¶ 4. LWV has more than one million members and supporters and is organized in more than 750 communities in all 50 states and the District of Columbia. Ward Dec., ¶ 4. In Maine, LWVME and its members pursue their shared goal of expanding political participation by conducting nonpartisan voter registration drives, providing educational materials for voters, conducting outreach to high school and college students to encourage them to vote, and producing high-quality reports on issues of major importance in Maine. Ward Dec., ¶ 5. During the 2022 election cycle, LWVME registered at least 1,000 voters, canvassed in 15 towns (reaching 1,800 people), and printed and distributed 8,000 voter guides. Ward Dec., ¶ 6. LWVME continued its efforts during the 2024 cycle, again registering hundreds of voters and distributing approximately 50,000 voter guides. Ward Dec., ¶ 8. LWVME maintains an email subscription list with more than 5,600 recipients, where it provides updates and information around elections and public policy relating to a function democracy in Maine, as well as VOTE411.org, a comprehensive voter resource. Ward Dec., ¶ 8–9.

LWVME has worked tirelessly to protect, preserve, and expand the voting rights of its members and all Maine voters. This has included advocating for same-day registration, automatic

voter registration, ranked choice voting, Maine's National Popular Vote bill, and publicly financed elections. Ward Dec., ¶ 10. LWVME has staunchly opposed rollbacks of voter protections by opposing mandatory photo identification for all voters and felony disenfranchisement. In 2025, LWVME assessed and tracked 124 bills and testified on 51. Ward Dec., ¶ 11. LWVME is part of Democracy Maine, a collaboration between LWVME, Maine Citizens for Clean Elections, and Maine Students Vote, which partners on advocacy and education to support voting rights and civic participation. Ward Dec., ¶ 12. LWVME is also part of Mainers for Modern Elections coalition, which is committed to securing "equitable access to the ballot for every eligible Maine voter" and which advocates for "safe, secure, modern elections."[5] Ward Dec., ¶ 13. The League has continued to push the Secretary of State to fully implement pro-democracy measures. Ward Dec., ¶ 14.

LWVME has 574 members across the state, with local leagues in the Portland area, Bath/Brunswick, the Midcoast area, the Capital area, Hancock County, Piscataquis County, and in the greater Bangor area. Ward Dec., ¶ 15. In addition to its members, LWVME relies on the efforts of 601 volunteers to conduct its work, including efforts around voter registration. Ward Dec., ¶ 16. As politically active Mainers, the vast majority of the LWVME's members and volunteers are registered voters, who provided information to Defendants Bellows and the State of Maine to register. Ward Dec., ¶ 17; *see also* Me. Rev. Stat. Ann. tit. 21-A, §§ 122, 152. This includes their date of birth; driver's license number, nondriver identification card number, or the last four digits of their social security number, as well as their choice of political party or decision not to enroll in a political party. *Id.* § 152. LWVME members are concerned about this information being disclosed contrary to law. Ward Dec., ¶ 17. For example, Sarah Stadler and Patty Sprague, League members, both object to USDOJ's collection of their sensitive voter data and are concerned about

---

[5] *Mainers for Modern Elections*, LWVME, https://www.lwvme.org/MME (last visited Sep. 29, 2025).

4

the overall effects of that effort in Maine. *See* Ex. C, Declaration of Sarah Stadler ("Stadler Dec."), ¶¶ 11–13; Ex. D, Declaration of Patty Sprague ("Sprague Dec."), ¶¶ 9–11.

## LEGAL STANDARD

A nonparty is entitled to intervene in an action as a matter of right when: (1) the motion to intervene is timely filed; (2) the proposed intervenors have "an interest relating to" the subject matter of the action; (3) the proposed intervenors are "so situated that disposing of the action may, as a practical matter impair or impede [their] ability to protect [that] interest"; and (4) the proposed intervenors' interests are inadequately represented by the existing parties to the suit. Fed. R. Civ. P. 24(a)(2); *see also Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 190 (2022). Rule 24(a)(2) "should be applied with an eye toward the commonsense view of the overall litigation." *Ungar v. Arafat*, 634 F.3d 46, 51 (1st Cir. 2011) (internal quotation marks omitted). Even if a nonparty is not entitled to intervene as a matter of right, this Court may still grant permissive intervention when the movant has "a claim or defense that shares with the main action a common question of law or fact," and the intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b).

## ARGUMENT

**I.     LWVME is entitled to intervene as of right under Rule 24(a)(2).**

LWVME is entitled to intervene in this litigation because the motion is timely; the organization and its members have significant interests in the case; those interests will be impacted by the outcome; and no other existing party adequately represents those interests.

**A.  This motion is timely.**

LWVME has moved to intervene within two weeks of the filing of the Complaint, long before the case has "progressed beyond the initial stages[.]" *Geiger v. Foley Hoag LLP Retirement*

5

*Plan*, 521 F.3d 60, 64 (1st Cir. 2008) (motion to intervene was timely even though court had already granted motion for preliminary injunction). Defendants have not yet filed a responsive pleading, and the Court has not ruled on substantive motions. The first status report is not due until October 10. *See Ne. Patients Grp. v. Maine Dep't of Admin. & Fin. Servs.*, No. 1:20-CV-00468-NT, 2021 WL 1135019, at *3 (D. Me. Mar. 23, 2021) (intervention motion timely when filed about two months after complaint and two days after briefing schedule was set). As such, the motion is timely.

### B. LWVME has significantly protectable interests related to this litigation.

This litigation is closely tied to LWVME's organizational interests and the interests of the hundreds of individuals who comprise LWVME's membership. In evaluating this factor, courts must examine whether the proposed intervenor's interests "bear a sufficiently close relationship to the dispute between the original litigants," *Conservation L. Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 42 (1st Cir. 1992) (internal quotation marks omitted).

LWVME has two organizational interests that are closely related to this litigation. First, LWVME has a long-standing interest in civic participation, as demonstrated by their pro-democracy engagement in communities across Maine. Second, LWVME has a vested interest in the appropriate and lawful handling of election information in Maine, as evidenced by LWVME's 2025 testimony in favor the data privacy measures contained in LD 1822, Maine's Online Data Privacy Act. *See* Ward Dec., ¶ 19. LWVME believes that "[t]he abuse of our personal data and the resulting distortion of our public conversation was never anticipated by law or regulation and is now out of control." *See* Ward Dec., ¶ 19, Ex. A, Testimony of LWVME. These interests bear a close relationship to the litigation because this matter directly implicates the proper use of voters' data, Mainers' willingness and ability to register to vote, and the federal government's justification

6

for seeking this data, which appears to be outside the legal authority of USDOJ. Ward Dec., ¶ 18; *see infra* Section I.C; *but see* 52 U.S.C. § 20703 (requiring Attorney General to include "statement of the basis" and "purpose" for requesting voter information.).

Additionally, LWVME's 574 members have protectable interests related to this litigation because they are registered Maine voters, and their personal, sensitive data is at stake. *See* Ward Dec., ¶¶ 15, 17–18; *see infra* Section I.C.

### C. The litigation will impact LWVME's interests.

This litigation directly impacts LWVME's organizational interests and the interests of its members. *See supra* Section I.B; *see Portland Cellular P'ship v. Inhabitants of the Town of Cape Elizabeth*, No. 2:14-cv-274, 2015 WL 12990147, at *2 (D. Me. Feb. 3, 2015) (when intervenor's interests are related, "[t]he third Rule 24(a)(2) factor requires little discussion."). USDOJ seeks virtually unlimited access to Maine's voter records in this litigation. As such, LWVME's interest will be impaired because voters will suffer the disclosure of their personal information to the federal government for murky reasons that could extend beyond USDOJ's legal authority. Ward Dec., ¶¶ 17–18. Additionally, LWVME's interest in engaging voters will be impaired because LWVME believes that Mainers will be less likely to register to vote for fear that their data will be released or used inappropriately beyond applicable federal and state-law protections, including Maine law, Me. Rev. Stat. Ann. tit 21-A, § 196-A, which safeguards Mainers' right to keep their highly personal information confidential. Ward Dec., ¶ 18; Sprague Dec., ¶¶ 10–11. And LWVME and its members believe this data may be used to intimidate or harass voters and suppress civil participation. Ward Dec., ¶ 18; Stadler Dec., ¶ 13; Sprague Dec., ¶¶ 10–11.

LWVME's individual members' interests will also be impaired if USDOJ receives access to this data, as these members fear disclosure of their information for unknown or pretextual

7

purposes. Stadler Dec., ¶ 12; Sprague Dec., ¶ 10. Further, LWVME members are deeply committed to civic engagement, and, like LWVME, they fear Mainers will be less likely to register to vote because of the possible disclosure of their data. Stadler Dec., ¶ 13; Sprague Dec., ¶ 11.

### D. LWVME's interests are not adequately represented by the current parties.

LWVME's interests are not adequately represented by the existing parties. The federal government seeks to access LWVME members' data in direct contradiction to LWVME's interests and those of its members. *See supra* Section I.C. Although there is a presumption of adequate representation when an intervenor has the "same ultimate goal" as a party, and when the intervenor intervenes on the same side as the government, the burden of overcoming that presumption "is not onerous—the intervenor need only show that the government's representation *may* be inadequate, not that it *is* inadequate." *McDonough v. City of Portland*, No. 2:15-cv-153-JDL, 2015 WL 3755289, at *3 (D. Me. June 16, 2015) (citing *Mosbacher*, 966 F.2d at 44) (emphasis in original). "One way for the intervenor to show inadequate representation is to demonstrate that its interests are sufficiently different in kind or degree from those of the named party." *Id.* (quoting *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 546 (1st Cir. 2006)).

LWVME's interests are different in kind and degree from those of Defendants because LWVME has a materially different stake in the outcome of this case in two ways. *First*, LWVME is comprised of individual members whose sensitive data could be turned over to USDOJ without their consent as a result of this litigation. In *McDonough*, this Court held that intervenors who have such a personal stake in the litigation have an interest sufficient to justify intervention alongside the government because the government has an abstracted, less personal stake in the litigation. 2015 WL 3755289, at *3–4 (granting intervention for taxi driver association when association's "livelihoods of its membership are at stake in the litigation, while what is at stake for Portland is

a change in its taxi licensing scheme"); *see also Berger*, 597 U.S. at 195–96 (government official's and intervenor's interests were "related" but not "identical" where individual sought to litigate his unique rights while government official had to consider "broader public-policy implications.").

*Second*, like the City in *McDonough*, Defendants "face[] internal and external institutional and political pressure that could influence how [they] litigate [this] case, and not necessarily in ways that protect the interest of" LWVME and its members. 2015 WL 3755289, at *3. This is particularly true in this litigation where Defendants have statutorily imposed objectives and obligations that diverge from those of LWVME and its members. In this case, the NVRA instructs that Defendants must "balance competing objectives," including maintaining accurate voter rolls by removing ineligible voters, subject to procedural safeguards. *Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019). LWVME has no competing objectives. Rather, LWVME is interested in protecting Maine voters and encouraging Mainers to participate politically. *See supra* Section I.B.[6]

## II.    In the alternative, LWVME should be permitted to intervene under Rule 24(b).

Should the Court find LWVME does not have a right to intervene under Rule 24(a), it should permit intervention under Rule 24(b) because LWVME's defenses share common questions of law and fact with this matter, LWVME will help fully develop the facts of the case, and LWVME's intervention will not unduly delay or prejudice the litigation.

LWVME's defenses present common questions of law and fact because its statutory defenses concerning the privacy of its members data are directly related to USDOJ's lawsuit. *See* Ex. A, LWVME's Proposed Answer. LWVME is well-situated to apprise the Court of these

---

[6] LWVME is aware that two individual voters—John Schneck and Marpheen Chann—have also sought to intervene as defendants. ECF No. 10. As these voters are not yet parties, they cannot adequately represent LWVME's interests. Moreover, as an organization dedicated to expanding civic participating and representing over 574 members, LWVME has distinct interests.

overlapping questions, given its decades of experience working to safeguard Maine's democracy, previous work concerning elections and data privacy, and access to the viewpoints of hundreds of individual members impacted by this litigation. Rule 24(b) counsels in favor of permissive intervention in circumstances like these when "the applicants may be helpful in fully developing the case[.]" *Dagget v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 113 (1st Cir. 1999). Given that "Rule 24(b) should be construed liberally," the Court should permit LWVME's voice to be heard in this matter. *Animal Protection Inst. v. Martin*, 241 F.R.D. 66, 68 (D. Me. 2007). LWVME will neither delay nor prejudice the litigation. As a longtime stakeholder in Maine, LWVME has litigated before and will abide by the schedule set by the Court.

## CONCLUSION

For the reasons stated, this Court should grant the League of Women Voters of Maine's motion to intervene as a matter of right under Federal Rule of Civil Procedure 24(a) or, in the alternative, should grant permissive intervention under Rule 24(b).[7]

September 29, 2025

Respectfully submitted,

/s/ Allan K. Townsend

---

[7] Should this Court determine intervention is not warranted, LWVME respectfully requests permission to participate as a nonparty *amicus curiae*, including leave to file a brief in opposition to Plaintiff's pending Motion for Order to Show Cause and the opportunity to argue before the Court in any dispositive hearings on the Order. ECF No. 5.

Allan K. Townsend, Esq. (he/him)
Johnson & Webbert, LLP
1 Bowdoin Mill Island, Suite 300
Topsham, ME 04086
Tel: (207) 623-5110
Fax: (207) 622-4160
allan@work.law

Sejal Jhaveri*
Brent Ferguson*
Daniel S. Lenz*
Alexis Grady*
Renata O'Donnell*
Heather Szilagyi*
Kate Hamilton*
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
Tel: (202) 736-2200
Fax: (202) 736-2222
sjhaveri@campaignlegalcenter.org
bferguson@campaignlegalcenter.org
dlenz@campaignlegalcenter.org
agrady@campaignlegalcenter.org
rodonnell@campaignlegalcenter.org
hszilagyi@campaignlegalcenter.org
khamilton@campaignlegalcenter.org

*Pro Hac Vice Applications Forthcoming*

Counsel for Proposed Intervenor League of Women Voters of Maine

## CERTIFICATE OF SERVICE

      I, Allan Townsend, do hereby certify that on this 29th day of September, 2025, I caused a true and correct copy of the foregoing document to be served upon all counsel of record registered with the Court's ECF system, by electronic service via the Court's ECF transmission facilities.


Date: September 29, 2025                                               Signature :  /s/Allan Townsend