**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-CV-468-LEW |
| | ) | |
| SHENNA BELLOWS, in her official capacity | ) | |
| as the Secretary of the State of Maine, and the | ) | |
| STATE OF MAINE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**JOHN SCHNECK AND MARPHEEN CHANN'S REPLY IN SUPPORT OF THEIR**
**MOTION TO INTERVENE AS DEFENDANTS**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................ 1

ARGUMENT ................................................................................................................... 1

I.   Proposed Intervenors are entitled to intervene as a matter of right. ....................... 1

    A.   Proposed Intervenors have but do not need a private right of action. ........................ 1

    B.   The threat to Proposed Intervenors' interests is concrete and particular. .................. 3

    C.   The State Defendants do not adequately represent Proposed Intervenors. .................. 5

II.  Proposed Intervenors should, alternatively, be granted permissive intervention. .................. 7

CONCLUSION ................................................................................................................ 7

# TABLE OF AUTHORITIES

**CASES**

**Page(s)**

*B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*,
    440 F.3d 541 (1st Cir. 2006)........................................................................... 3, 6

*Batts v. Gannett Co.*,
    No. 4:22-cv-10685, 2023 WL 3143695 (E.D. Mich. Mar. 30, 2023)................................ 3

*Berger v. N.C. State Conf. of the NAACP*,
    597 U.S. 179 (2022)......................................................................................... 6

*Brunner v. Ohio Republican Party*,
    555 U.S. 5 (2008)............................................................................................ 2

*Callahan v. Brookdale Senior Living Cmtys. Inc.*,
    42 F.4th 1013 (9th Cir. 2022) ........................................................................... 6

*Conservation L. Found. of New England, Inc. v. Mosbacher*,
    966 F.2d 39 (1st Cir. 1992)............................................................................ 6, 7

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ............................................................................ 3

*FEC v. Akins*,
    524 U.S. 11 (1998).......................................................................................... 4

*Jones v. Prince George's County*,
    348 F.3d 1014 (D.C. Cir. 2003).......................................................................... 1

*Kleissler v. U.S. Forest Serv.*,
    157 F.3d 964 (3d Cir. 1998).............................................................................. 6

*Providence J. Co. v. FBI*,
    460 F. Supp. 762 (D.R.I. 1978).......................................................................... 6

*Sakab Saudi Holding Co. v. Aljabri*,
    2021 No. 1:21-cv-10529-NMG, 2021 WL 8999588 (D. Mass. Oct. 26, 2021) ................ 3

*Trbovich v. United Mine Workers of Am.*,
    404 U.S. 528 (1972)..................................................................................... 2, 5

*United States v. Alabama*,
    No. 2:06-cv-392, 2006 WL 2290726 (M.D. Ala. Aug. 8, 2006) ...................................... 2

*United States v. N.Y. State Bd. of Elections*,
    312 Fed. App'x 353 (2d Cir. 2008)................................................................................. 2

*United States v. Oregon*,
    No. 6:25-cv-01666-MTK, 2025 WL 3496571 (D. Or. Dec. 5, 2025) ............................... 1

*Willis v. Firestone Bldg. Prods. Co.*,
    231 F.R.D. 447 (D. Conn. 2005)...................................................................................... 2

## FEDERAL STATUTES

31 U.S.C. § 3730(b)(5) ........................................................................................................... 2

52 U.S.C. § 20510(b) .............................................................................................................. 2

## STATE STATUTES

M.R.S. § 196-A ....................................................................................................................... 3

## OTHER AUTHORITIES

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y.
    Times (Nov. 16, 2025),
    https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-
    department-staff-attorneys.html....................................................................................... 4

Exec. Order No. 14,248, 90 Fed. Reg. 14005 (Mar. 25, 2025)....................................................... 7

Fed. R. Civ. P. 24(a)(2)............................................................................................................ 2

Fed. R. Civ. P. 24(b)(3)............................................................................................................ 7

Nick Corasaniti, *Election Officials Press Trump Administration Over Voter Data*,
    N.Y. Times (Nov. 18, 2025),
    https://www.nytimes.com/2025/11/18/us/politics/election-officials-trump-
    voter-data.html .............................................................................................................. 4

## INTRODUCTION

The Court should grant intervention to John Schneck and Marpheen Chann, Maine voters whose privacy rights are directly at stake in this case. DOJ's opposing arguments miss the point entirely, run contrary to binding precedent, or both. For example, DOJ argues that two of the three statutes it is suing under do not include a private right of action—but that doesn't matter because Proposed Intervenors seek to *intervene* as *defendants*, just as Rule 24 contemplates. Further, DOJ does not dispute that its requested relief entails disclosure of Proposed Intervenors' sensitive personal information, and case law establishes that these harms are more than sufficient to meet Rule 24(a)'s requirements. DOJ is also wrong in arguing that State Defendants adequately represent Proposed Intervenors' interests. To the contrary, they instead have numerous competing interests that diverge from Proposed Intervenors' interests. Proposed Intervenors thus meet this prong of Rule 24(a), as well. Finally, intervention will not delay the matter, and the Court can alternatively grant permissive intervention to ensure voters' voices are heard in this litigation involving *their* personal information. Indeed, federal courts have recently granted intervention to individual voters and civic organizations in DOJ's near-identical suits for two other states' voter lists. *See United States v. Oregon*, No. 6:25-cv-01666-MTK, 2025 WL 3496571 (D. Or. Dec. 5, 2025) (granting intervention of right); Minutes of Mot. Hearing, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Nov. 19, 2025), ECF No. 70 (granting permissive intervention).

## ARGUMENT

I.    **Proposed Intervenors are entitled to intervene as a matter of right.**

A.    **Proposed Intervenors have but do not need a private right of action.**

As Rule 24(a)'s "plain text indicates, intervenors of right need only an 'interest' in the litigation, not a 'cause of action' or 'permission to sue.'" *Jones v. Prince George's County*, 348 F.3d 1014, 1018 (D.C. Cir. 2003). Rule 24(a) has thus long been understood to permit intervention

1

by parties that would not have been able to sue in the first instance. *See, e.g., Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 531 (1972) (finding intervention proper by union member even when the relevant statute prohibited union members from "initiating a private suit"); *Willis v. Firestone Bldg. Prods. Co.*, 231 F.R.D. 447, 449 (D. Conn. 2005) ("A party seeking to intervene, however, need not have an independent cause of action to be considered to have an interest within the scope of Rule 24(a)."). Further, Proposed Intervenors seek to intervene *as defendants*—and defendants never require a right of action.

DOJ cites nothing that supports its contrary claim. *Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008), does not involve intervention at all. And, while the court in *United States v. Alabama* opined in dicta that the Help America Vote Act ("HAVA") does not imply a private right of action, it did not suggest that *intervenors* must have such a right. *See* No. 2:06-cv-392, 2006 WL 2290726, at *4 (M.D. Ala. Aug. 8, 2006). Finally, impairment of interests was not in dispute in *United States v. New York State Board of Elections*, 312 Fed. App'x 353 (2d Cir. 2008).

DOJ's argument that HAVA and the Civil Rights Act do not contemplate private parties as defendants similarly fails. Congress knows how to prescribe statutory limits on intervention, *see, e.g.*, 31 U.S.C. § 3730(b)(5) ("When a person brings an action under [a section of the False Claims Act], *no person other than the Government may intervene*.") (emphasis added), but it did not do so for suits brought under HAVA or the Civil Rights Act. Rule 24 thus governs, and "anyone" who meets its requirements may intervene. Fed. R. Civ. P. 24(a)(2). Finally, DOJ conspicuously fails to acknowledge that the National Voter Registration Act—the basis for its second claim—does provide an express private right of action. 52 U.S.C. § 20510(b). In sum, DOJ's lead argument—that intervenors need a private right of action—should be rejected.

**B.      The threat to Proposed Intervenors' interests is concrete and particular.**

DOJ's argument that the harm to Proposed Intervenors' interests is "speculative" also misses the mark. Opp'n at 13–15, ECF No. 39. Intervenors need only show that the action "could result" in their interests being impaired. *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 545 (1st Cir. 2006). If DOJ prevails here, Proposed Intervenors' privacy rights would be harmed because DOJ would be given access to their sensitive information protected by state law. 21-A M.R.S. § 196-A(1). DOJ does not dispute that it intends to share this information across the federal government. Such unauthorized disclosure of private information supports intervention. *See, e.g., Sakab Saudi Holding Co. v. Aljabri*, No. 1:21-cv-10529-NMG, 2021 WL 8999588, at *2 (D. Mass. Oct. 26, 2021) (holding parties entitled to intervene of right when the action "could result in the disclosure of privileged information") (citation modified).

DOJ gets the law wrong again when it claims that the harm to Proposed Intervenors is not sufficiently particularized. A violation of a person's privacy is inherently "particularized"—disclosure of private information affects each person in a "personal and individual way," even if many people are similarly affected. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)); *see also Batts v. Gannett Co.*, No. 4:22-cv-10685, 2023 WL 3143695, at *3 (E.D. Mich. Mar. 30, 2023) (noting "the nonconsensual dissemination of information" in violation of "a statutorily protected right to privacy" "inflicts harm in a concrete and particularized way." (quoting *Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp. 3d 666, 676–77 (E.D. Mich. 2022))).[1] Moreover, even the stricter

---

[1] DOJ claims that a North Carolina court recently found similar privacy concerns were "objectively . . . unfounded," Opp'n at 15, but this is not correct. The parties in that case—DOJ and a state board of elections—resolved the action via a *consent judgment*, without any findings about privacy, while leaving open the door to the state board raising such issues *if* DOJ sought confidential information. Consent J. at 3,  12, *United States v. N.C. State Bd. of Elections*, 5:25-

requirements of Article III standing are met when "large numbers of voters" suffer a "widely shared" injury. *FEC v. Akins*, 524 U.S. 11, 24 (1998).

DOJ also fails to rebut the particular threats posed to Proposed Intervenors here. Mr. Chann is a first-generation American who assists immigrants in obtaining citizenship and registering to vote through Khmer Maine; the disclosure of sensitive voter information would impair that work by deterring naturalized citizens from registering to vote, particularly in the Cambodian-American community, which is uniquely wary of privacy violations given past experience with authoritarianism, one-party politics, and state-sanctioned and politically driven violence. Mot. Intervene at 5–6; Chann Decl. ¶ 10, ECF No. 10-3. Mr. Chann is also deeply concerned on a personal level, as a visible political activist, with the federal government's efforts to access his personal data at the same time that the federal government has increasingly called for and even moved to punish persons perceived as political enemies. Chann Decl. ¶ 9. Widespread public reporting confirms that DOJ intends to share voter lists across the federal government and, despite its invocation of the NVRA and HAVA, will use the data for immigration enforcement and to cast doubt on the legitimacy of elections.[2] In light of this, DOJ's actions will also put Mr. Chann personally at risk of being targeted based on false claims that he is improperly registered to vote.

---

cv-00283 (E.D.N.C. Sept. 8, 2025), ECF No. 72 (noting parties "waive[d] a hearing and the entry of findings of fact and conclusions of law" and expressly reserving the state's right to seek a protective order if DOJ seeks "confidential records or data"). Parties that *would have* represented individual voters' privacy interests, moreover, had moved to intervene, but DOJ and state board moved to settle so quickly that the court denied those motions as moot. *Id.* at 12. Thus, not only does the consent judgment not stand for the proposition DOJ claims, it demonstrates how concerns about voters' privacy interests can go unrepresented *unless* voters can participate.

[2] *See, e.g.*, Nick Corasaniti, *Election Officials Press Trump Administration Over Voter Data*, N.Y. Times (Nov. 18, 2025), https://www.nytimes.com/2025/11/18/us/politics/election-officials-trump-voter-data.html; Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html.

Although a citizen, his birth name does not match his current surname, and he lacks a copy of his birth certificate. Mot. Intervene at 6. Mr. Schneck—a former state legislator—also personally fears the disclosure of his personal information to the federal government not only because it would violate his privacy, but also because it would undermine his life's work: promoting civic engagement in Maine. Mot. Intervene at 5. He knows directly from his service as a state legislator that Maine voters expect their personal information to be carefully guarded and that doing so promotes civic engagement and confidence in the election system. Schneck Decl. ¶ 11.

    **C.**     **The State Defendants do not adequately represent Proposed Intervenors.**

DOJ's assertion that the Court should presume that State Defendants adequately represent Proposed Intervenors' interests is also wrong as a matter of law. The Supreme Court has held that it "normally is *not enough* to trigger a presumption of adequate representation" when the intervenors' "interest is *similar to, but not identical with*, that of one of the parties." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 197 (2022) (emphasis added) (quoting *7C Wright & Miller's Federal Practice & Procedure* § 1909 (3d ed. Supp. 2022)). Proposed Intervenors are Maine voters who are focused on protecting their privacy and promoting voter engagement— including in particular among vulnerable communities—while State Defendants have numerous and competing interests at play, including in list maintenance, conserving state resources, and avoiding an escalating confrontation with the federal government. Since their interests are not *identical*, the Court should not presume adequate representation.

This conclusion flows directly from precedent. In *Trbovich*, for example, the Supreme Court reviewed a union member's effort to intervene as plaintiff in a suit that the Secretary of Labor brought against his union. 404 U.S. at 539. As *Berger* summarized, "[a]t a high level of abstraction, the union member's interest and the Secretary's might have seemed closely aligned,"

5

but presuming adequate representation was not warranted because "the union member sought relief against his union, full stop," while the Secretary also had to "bear in mind broader public-policy implications." 597 U.S. at 196. DOJ cites three Ninth Circuit cases applying a presumption, *see* Opp'n at 18*,* but that court has more recently noted that *Berger* "calls into question whether the application of such a presumption is appropriate" when the interests at stake are not "identical." *Callahan v. Brookdale Senior Living Cmtys. Inc.*, 42 F.4th 1013, 1021 n.5 (9th Cir. 2022).

Even if the presumption did apply, Proposed Intervenors need only offer "an adequate explanation as to why it is not sufficiently represented by" State Defendants, which they can meet by showing their interests "are sufficiently distinct in kind or degree." *B. Fernandez & Hnos., Inc.*, 440 F.3d at 546 (citation modified). Here, Proposed Intervenors' interests diverge from State Defendants' interests several times over. For one, State Defendants do not share Proposed Intervenors' interests in protecting the privacy of their personal information, and "[n]o one can better assert an interest in personal privacy than the person whose privacy is at stake." *Providence J. Co. v. FBI*, 460 F. Supp. 762, 766 (D.R.I. 1978), *overruled on other grounds*, 602 F.2d 1010 (1st Cir. 1979). Nor do State Defendants share Proposed Intervenors' parochial interests in promoting voter engagement, particularly among the Cambodian-American community, which is particularly concerned about having their private information turned over to DOJ.

State Defendants' interests, by contrast, "are necessarily constrained by [their] view of the public welfare." *Conservation L. Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992) (reversing denial of intervention). They must reconcile "numerous complex and conflicting interests," *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 973 (3d Cir. 1998), including in election administration, budget management, coordination with federal agencies, and serving the electorate writ large. As noted, state defendants in North Carolina recently settled HAVA

6

litigation with DOJ, over the vociferous objections of the proposed intervenors there. *See* Opp'n at 15; *supra* note 1. And given that the President has already threatened to withhold election funding from States that defy his policy preferences, *see, e.g.,* Exec. Order No. 14,248, 90 Fed. Reg. 14005, §§ 5(b), 7(b) (Mar. 25, 2025), it is imperative to include private intervenors who face no competing incentives based on a threat to the state fisc. State Defendants' representation of Proposed Intervenors' interests therefore "*may be* inadequate," which is all Rule 24(a) requires. *Mosbacher*, 966 F.2d at 44 (emphasis added).

## II.    Proposed Intervenors should, alternatively, be granted permissive intervention.

Because DOJ concedes that Proposed Intervenors' motion is timely and raises a defense that shares a common question of law or fact with the main action, *see* Opp'n at 20, the only element of permissive intervention in dispute is whether their participation will unduly delay the litigation or prejudice the original parties' rights. Fed. R. Civ. P. 24(b)(3). But DOJ has no basis to argue delay. While DOJ has delayed this matter by moving to stay, ECF No. 29, and then waiting for nine days after the government shutdown ended to ask the Court to lift the stay, ECF No. 34, Proposed Intervenors have moved with haste: They moved to intervene just one week after DOJ sued and intend to file a proposed motion to dismiss by the State Defendants' response deadline— meaning intervention will not require altering any existing deadlines. In recognition of the valuable perspective voters bring to the table that differ from state defendants, a federal court recently granted permissive intervention to pro-voting groups in DOJ's nearly identical suit for California's voter list. Minutes of Motion Hearing, *Weber,* No. 2:25-cv-09149, ECF No. 70. This Court should similarly permit Proposed Intervenors to intervene so that Maine voters—whose personal information is the ultimate object of DOJ's demands—will have a voice in this litigation.

## CONCLUSION

Proposed Intervenors request that this Court grant their Motion to Intervene.

December 8, 2025

Respectfully submitted,

*/s/ Elisabeth C. Frost*
Elisabeth C. Frost*
Christopher D. Dodge*
Branden D. Lewiston*
Tori Shaw*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW
Suite 400
Washington, DC 20001
Telephone: (202) 968-4490
efrost@elias.law
cdodge@elias.law
blewiston@elias.law
tshaw@elias.law

James G. Monteleone
**BERNSTEIN SHUR**
100 Middle Street/PO Box 9729
Portland, Maine 04104-5029
jmonteleone@bernsteinshur.com

*Appearing Pro Hac Vice

*Counsel for Proposed Intervenors John Schneck and Marpheen Chann*

8