# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHENNA BELLOWS in her official capacity as Secretary of the State of Maine and the STATE OF MAINE.<br><br>Defendants. | Case No. 1:25-CV-468-LEW |

## LEAGUE OF WOMEN VOTERS OF MAINE'S REPLY IN SUPPORT OF MOTION TO INTERVENE

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................. 1

    I.    LWVME has met Rule 24(a)'s intervention standard ...................................... 1

        a.  LWVME need only establish a significantly protectable interest that is impacted by the litigation to intervene, not Article III standing ............................... 2

        b.  HAVA and the CRA do not prevent LWVME from intervening as a Defendant ..... 3

        c.  Whether there is a private right of action has no bearing on the intervention standard ................................................................................................................ 5

    II.   LWVME has established a protectable interest ................................................. 6

        a.  LWVME has protectable interests in the confidentiality of its members' personal information and in civic participation ........................................................ 6

        b.  Plaintiff fails to rebut LWVME's interests in this litigation ..................................... 7

    III.  LWVME's interests are distinct from the State of Maine's ........................................... 10

    IV.  LWVME is entitled to permissive intervention ............................................. 11

CONCLUSION ............................................................................................................................ 12

## INTRODUCTION

The League of Women Voters of Maine (LWVME) satisfies the requirements for intervention as of right under Rule 24(a) because LWVME and its over 500 members have significant stakes in this case: protecting voters' data, including that of LWVME's members, and ensuring that Mainers do not fear registering to vote or participating in other political activities. In the alternative, permissive intervention is appropriate under Rule 24(b) because LWVME's motion is timely and its defenses share common questions of law and fact with Maine's defenses.

Plaintiff does not meaningfully dispute LWVME's interests. Instead, it mischaracterizes the standard. Given that its arguments are based on an incorrect standard, Plaintiff's opposition does not refute LWVME's interest in this litigation.

Plaintiff also glosses over the important interests that LWVME and its members have in this litigation by claiming that this dispute is only between the United States and Maine, and by promising to protect individual voters' data. Nothing in Plaintiff's arguments actually addresses LWVME's significant, protectable interests in safeguarding its members' data and ensuring civic participation. The Court should grant LWVME's motion to intervene, just as federal courts in Oregon and California have granted similar motions to intervene in nearly identical cases in the last three weeks. *See United States v. Oregon*, No. 6:25-cv-01666-MTK, 2025 WL 3496571 (D. Or. Dec. 5, 2025); Minute Order, *United States v. Weber*, No. 2:25-cv-09149-MFW-MAR (C.D. Cal. Nov. 19, 2025), ECF No. 70.

## ARGUMENT

**I.    LWVME has met Rule 24(a)'s intervention standard.**

LWVME has a right to intervene in this matter as a Defendant under Rule 24(a) of the Federal Rules of Civil Procedure because it timely moved to intervene, it has significant interests in the case that will be impacted by the outcome, and no existing party adequately represents those

1

interests. *See infra* Parts II and III; *see also* ECF No. 18 (Mot. to Intervene). Plaintiff's opposition is premised on three specious claims. *First*, Plaintiff confuses the proper inquiry—significantly protectable interest necessary for intervention as of right—with Article III standing. LWVME does not need to establish standing to intervene. *Second*, Plaintiff argues that LWVME is not a "valid defendant" in this matter, but actions that are necessarily filed against states do not preclude private party intervention. *Third*, Plaintiff argues that because HAVA and the CRA lack a private right of action, LWVME may not intervene, but the lack of a private right of action is not a barrier to LWVME's intervention as a Defendant. When the proper standard is applied, there is no question that LWVME has a right to intervene in this litigation under Rule 24(a).

### a. LWVME need only establish a significantly protectable interest that is impacted by the litigation to intervene, not Article III standing.

LWVME has a right to intervene in this litigation under Rule 24(a) because it has demonstrated that its over 500 individual members' interests and its own organizational interests related to civic participation are significantly impacted by this litigation. *See infra* Part II; *see also* Mot. to Intervene at 6-8. Plaintiff confuses the standard for intervention with that of Article III standing when it argues that LWVME must establish a legal right to defend the claim. ECF No. 39 (Opp. Br.) at 7-8 (citing *Diamond v. Charles*, 476 U.S. 54 (1986)).

As a Proposed Defendant-Intervenor, LWVME does not invoke this Court's jurisdiction and therefore does not need to establish standing to intervene.[1] *See Melone v. Coit*, 100 F.4th 21, 29-30 (1st Cir. 2024) ("Melone contends that Vineyard Wind was required to establish independent Article III standing before intervening. But this is not so, given that Vineyard Wind simply seeks to defend the agency's position."); *see also Mid-Am. Milling Co. v. United States*

---

[1] Although LWVME need not establish Article III standing to intervene in this matter, it does not concede that it lacks Article III standing.

2

*Dep't of Transp.*, No. 3:23-CV-00072-GFVT-EBA, 2025 WL 1461818, at *4 (E.D. Ky. May 21, 2025) ("But where the putative intervenor seeks to intervene as a defendant, it need not independently demonstrate Article III standing.") (citing *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019)). In conflating the intervention standard with that for Article III standing, Plaintiff cites caselaw that applies only to appellate litigation.[2] True enough, courts have held that where an original party declines to appeal, an intervenor-appellant must have Article III standing. *Diamond v. Charles*, 476 U.S. 54, 68 (1986). But this case is not an appeal, and Defendants are still parties to the case, so LWVME has no obligation to establish Article III standing to intervene. As LWVME has demonstrated that it has a significantly protectable interest that is impacted by the litigation, it has established sufficient interest to intervene as of right.

> **b. HAVA and the CRA do not prevent LWVME from intervening as a Defendant.**

Plaintiff points to no persuasive legal authority to support the proposition that HAVA and the CRA limit the parties that can be defendants, and therefore intervene as defendants, because the statutes' duties expressly apply to election officials and the Attorney General. And it could not, because this argument conflicts with well-established law.

Under Plaintiff's logic, private litigants would never be able to intervene in any case in which the claim required the involvement of a government entity. But such a bar to intervention

---

[2] Plaintiff also cites *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991), for the proposition that proposed intervenors must "stand to gain or lose by the direct legal operation of the district court's judgment." Opp. Br. at 8. But the court in *Teague* did not find a standing requirement—in fact, it found that proposed intervenors stood to gain or lose where the outcome of the case could affect their ability to collect assets from a favorable judgment in another case. The word "standing" is nowhere in the opinion. And Plaintiff relies on the inapposite case *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977), where the court held that certain nonparties could not be added to the case via joinder but had to file a motion to intervene. In dicta about the standards for intervention, the court included "standing to raise relevant legal issues" as one of eight factors a court is "entitled to consider" in a Rule 24(b) analysis, not a dispositive standard under Rule 24(a). *Id.* Nor did that court indicate it means Article III standing. Neither of these out-of-circuit citations advances Plaintiff's arguments.

3

clearly does not exist. Indeed, two federal courts have granted private litigants' motions to intervene in nearly identical litigation in the last 19 days. *Oregon*, 2025 WL 3496571; Minute Order, *California*, No. 2:25-cv-09149-MFW-MAR, ECF No. 70.

Courts both within and outside this Circuit have granted intervention by interested private parties in cases brought against government actors, including in election suits. *See, e.g.*, *Cotter v. Mass. Ass'n of Minority L. Enf't Officers*, 219 F.3d 31 (1st Cir. 2000) (minority officers could intervene on behalf of city to defend affirmative action program); Endorsed Order Granting Motion to Intervene, *Quinn v. Menino*, No. 1:01-cv-10598 (D. Mass. July 30, 2001) (similar); *New Ga. Project v. Raffensperger*, No. 1:21-cv-1229, 2021 WL 2450647, at *2 (N.D. Ga. June 4, 2021) (granting political parties' motion to intervene in voting rights case brought under 42 U.S.C. § 1983); *Dinner Table Action v. Schneider*, No. 1:24-cv-00430-KFW, 2025 WL 604885, at *2 (D. Me. Feb. 25, 2025) (granting intervention to defend state's campaign finance law alongside state).

Plaintiff notably omits the NVRA from its argument that private parties may not intervene as defendants in litigation brought under statutes that apply only to government actors, likely because caselaw plainly establishes that private parties may intervene in such cases brought under the NVRA. *Pub. Int. Legal Found. v. Winfrey*, 463 F. Supp. 3d 795, 797 (E.D. Mich. 2020); *1789 Found. Inc. v. Fontes*, No. 24-cv-02987, 2025 WL 834919 (D. Ariz. Mar. 17, 2025); *Jud. Watch, Inc. v. Ill. State Bd. of Elections*, No. 24-cv-1867, 2024 WL 3454706 (N.D. Ill. July 18, 2024). This omission underscores the illogical nature of the argument. Like HAVA and the CRA, the NVRA does not create any mandates for private parties—it applies to states and state election officials. *See, e.g.*, 52 U.S.C. § 20503(a) ("[E]ach State shall establish procedures to register to vote in elections for Federal office."). Because the NVRA's application to state actors is not a bar to private party intervention, HAVA's and the CRA's application to state actors cannot be a bar to

4

private party intervention either. It would be absurd if the government could prevent LWVME from intervening in this case alleging a violation under the NVRA simply by adding HAVA and CRA claims.

> c. **Whether there is a private right of action has no bearing on the intervention standard.**

Plaintiff's argument that LWVME may not intervene as a defendant because there is no private right of action contravenes legal authority. Private parties have successfully intervened in federal actions brought against states under statutes without a private right of action. *See, e.g.*, *United States v. Miami Univ.*, 294 F.3d 797 (6th Cir. 2002) (newspaper permitted to intervene in case under Family Educational Rights and Privacy Act); Mem. Op., *League of United Latin Am. Citizens v. Exec. Off. of the President*, No. 1:25-cv-0946 (D.D.C. June 12, 2025), ECF No. 135 (partially granting RNC's motion to intervene to defend Executive Order 14,248, entitled "Preserving and Protecting the Integrity of American Elections."). The Court in *Oregon* rejected the same argument. 2025 WL 3496571, at *2.

Plaintiff's argument primarily relies on one unpublished case from the Middle District of Alabama that is nearly two decades old. *See* Opp. Br. at 13 (citing *United States v. Ala.*, No. 2:06-CV-392-WKW, 2006 WL 2290726, at *1 (M.D. Ala. Aug. 8, 2006)). But in that factually distinguishable case, the proposed intervenors claimed they had an interest in enforcing HAVA, which Proposed Intervenor in this case does not claim. *Ala.*, 2006 WL 2290726, at *4. The court rejected that enforcing HAVA was a legally protectable interest, not that HAVA prevents intervention for other reasons. Plaintiff's only other support is a case in which a county election board's motion for intervention was denied because it was unable to show that the state election board—the defendant in the case—could not represent its interests. *United States v. N.Y. State Bd. of Elections*, 312 F. App'x 353, 355 (2d Cir. 2008). The decision had nothing to do with which

5

entity had election responsibilities pursuant to HAVA. As such, LWVME is entitled to intervene in this action, regardless of whether HAVA and the CRA contain an explicit private right of action.[3] Further, courts in the First Circuit allow private parties to bring suits under HAVA through 42 U.S.C. § 1983. *Colon-Marrero v. Velez*, 813 F.3d 1, 16 (1st Cir. 2016). Thus, there would be no bar to intervention on the HAVA claims even if it were necessary to demonstrate a private right of action.

## II. LWVME has established a protectable interest.

Both LWVME and its members have particularized and protectable interests at stake in this case. While Plaintiff attempts to dismiss them as "speculative" and "alarmist," these interests are concrete, and the harms are immediate.

### a. LWVME has protectable interests in the confidentiality of its members' personal information and in civic participation.

Preventing the improper disclosure of sensitive personal data including social security numbers is a clear, protectable interest. *See Oregon*, 2025 WL 3496571, at *2-3. Congress recognized that intra-government sharing of personal data creates risks for individuals, which is why it passed the Privacy Act to bar such sharing except in certain circumstances. 5 U.S.C. § 552 *et seq.* ("The Congress finds that the privacy of an individual is directly affected by the collection, maintenance, use, and dissemination of personal information by Federal agencies . . . ." "[T]he right to privacy is a personal and fundamental right protected by the Constitution."). LWVME's members provided their data when registering to vote with the expectation that it would be safely stored and accessed only by those with legal authorization to access it. *See* Ward Decl., ECF. No. 18-2, ¶ 17. The government's promise that "it will protect voter information," Opp. Br. at 15, is

---

[3] Although it is not relevant to the intervention inquiry, the NVRA includes a private right of action. *See* 52 U.S.C § 20510(b).

irrelevant because it should not have access to that sensitive data in the first place. LWVME has an interest in ensuring that its members' information remains only in the hands of those authorized to have it.

LWVME, like the *Oregon* intervenors, also has an organizational interest in civic participation and therefore an interest in the appropriate and lawful handling of election information. As part of its core work, LWVME expends significant resources on the development and distribution of voter registration and education materials and encourages eligible Maine residents to register to vote and participate in elections. Ward Decl., ¶¶ 5-10. LWVME is concerned that mission will be frustrated if its members' sensitive information is disclosed to the federal government, particularly to be used for improper purposes. *Id.*, ¶¶ 18-19.

Plaintiff cannot wish away these clear, protectable interests by asserting that there is no risk of improper disclosure in this action. To do so assumes that it will win its merits argument that it is entitled to the information it seeks. But that is not the question at the intervention stage.[4] The question before the Court is whether LWVME has an interest in preventing unnecessary disclosure of their members' confidential data to the federal government. The outcome of that question directly bears on the privacy and security of LWVME and its members.

b. **Plaintiff fails to rebut LWVME's interests in this litigation.**

Plaintiff's assertions that LWVME has not shown an interest sufficient for Rule 24(a) intervention are unavailing. *First*, it argues that federal agencies "routinely are provided and maintain the same data being sought in this action," including in tax filings, social security benefits applications, and the Medicaid and Medicare programs. Opp. Br. at 16. But just because other

---

[4] Moreover, recent reporting on the United States' purposes in acquiring this data suggest there is a severe risk of improper disclosure. *See* Part II(b), *infra*.

federal agencies may sometimes obtain sensitive data about some Americans does not mean that the Department of Justice is entitled to Maine voters' confidential information. Indeed, the Privacy Act imposes strict limitations on the agencies that store such data, recognizing that sharing personal information within the government presents a danger to affected individuals. *See* 5 U.S.C. § 552 *et seq.*; *League of Women Voters v. Dep't of Homeland Security*, No. 1:25-cv-03501-SLS, 2025 WL 3198970, at *1 (D.D.C. Nov. 17, 2025) (citing 5 U.S.C. § 552a(b)) ("The [Privacy] Act prohibits both inter-agency and extra-agency disclosure of government records except in limited circumstances.").

*Second*, Plaintiff claims that LWVME has no interest in this case unique from other eligible voters in Maine, but that argument ignores unrebutted evidence that fear of collection of voter data by the federal government is likely to impede LWVME's mission of registering, educating, and turning out voters. Mot. to Intervene at 3-5, 6-8. The lone case that Plaintiff cites to force this standard upon LWVME is inapposite. *See* Opp. Br. at 17 (citing *League of Women Voters of Va. v. Va. State Bd. of Elections*, 458 F. Supp. 3d 460, 465 (W.D. Va. 2020)). There, the Court rejected intervention where proposed intervenors argued that relaxing a witness requirement for mail ballots would "dilute" their vote by opening the election up to hypothetical voter fraud. *League of Women Voters of Va.*, 458 F. Supp. 3d at 465-66. LWVME offers no such unfounded theories.

*Third*, Plaintiff asserts that this case is limited only to the United States and Maine, and therefore does not concern private parties, Opp. Br. at 18, but if such a this-does-not-concern-you defense were enough to defeat a valid intervention claim, intervention would be impossible in all circumstances. The federal government also asserts it "is not seeking and will not be seeking any information from any individual Maine voter, nor will it be seeking more information than Maine voters have already voluntarily submitted to the State of Maine." *Id*. But the federal government

is affirmatively seeking information from *every* member of LWVME who is registered to vote in Maine. That those members will not be required to produce the information themselves has no bearing on whether they have an interest in keeping their data private.

There is nothing "speculative" or "alarmist" about LWVME's desire to protect confidential voter data from unlawful acquisition by the federal government, especially given recent issues the government has had with data security.[5] For example, a whistleblower report claimed that Department of Government Efficiency (DOGE) employees accessed sensitive information on unions, ongoing legal cases, and corporate secrets from the National Labor Relations Board (NLRB) with no authorization.[6] The DOGE employees reportedly requested their activities not be tracked, and an investigation was launched only after NLRB staffers detected suspicious log-in attempts from Russia.[7] Another whistleblower report claimed that DOGE staffers uploaded an entire Social Security Administration dataset—including individuals' SSNs, birth dates, and addresses—to an unsecure online storage system that did not meet agency requirements.[8] Again, the whistleblower accused DOGE of ignoring its "independent security monitoring" obligations.[9]

---

[5] Plaintiff relies on a recent consent decree in *United States v. N.C. State Bd. of Elections*, for proof that "[s]imilar alarmist arguments" of proposed intervenors "objectively proved to be unfounded." Opp. Br. at 14-15. This is untrue. First, that case was about whether the State had to undertake a plan to collect information required under federal law from registered voters. Compl., *United States v. N.C. State Bd. of Elec.*, 5:25-cv-00283-M-RJ (E.D.N.C. May 27, 2025), ECF No. 1. Second, the parties proposed a consent order that contained only one reference to the proposed intervenors: "the court finds that all interests are adequately represented by the parties in this enforcement action, and the matters raised in the action are fully and finally settled. Therefore, the motions to intervene [DE 7, 34, and 39] are DENIED AS MOOT." Consent Order and Judgment at 12, *United States v. N.C. State Bd. of Elec.*, 5:25-cv-00283-M-RJ (E.D.N.C. Sep. 8, 2025), ECF No. 72. The court signed this order but made no independent finding about whether proposed intervenors would have succeeded. In any event, there is no proof that the interests they claimed "objectively proved to be unfounded."
[6] Jenna McLaughlin, *A whistleblower's disclosure details how DOGE may have taken sensitive labor data*, National Public Radio (April 15, 2025), https://www.npr.org/2025/04/15/nx-s1-5355896/doge-nlrb-elon-musk-spacex-security.
[7] *Id.*
[8] Nicholas Nehamas, *Republican Senator Asks Social Security Agency About Whistle-Blower's Claims*, New York Times (Sep. 10, 2025), https://www.nytimes.com/2025/09/10/us/politics/doge-social-security-republicans.html.
[9] *Id.*

9

Several weeks ago, a lawyer in the Department of Justice's Civil Rights Division—the same entity representing the United States in this case—reported that personnel received orders to obtain "states' voter rolls, by suing them if necessary" to "go through all the data and compare it to the Department of Homeland Security data and Social Security data" and search for "immigrants that have registered to vote" even though "[t]here was no pre-existing evidence" that unlawful immigrant voting is a problem.[10] Plaintiff acknowledges but does not deny or explain in any way a similar report that Proposed Intervenor referenced in its opening brief. Opp. Br. at 12. The failure to deny or clarify this reporting only increases the concern that the federal government will improperly share voters' personal data and underscores the hollowness of Plaintiff's claims that these concerns are speculative.

### III. LWVME's interests are distinct from the State of Maine's.

LWVME and the State do not have the same interests in this case. LWVME's members, not the State of Maine, have their information at risk. Even if LWVME and the State share the ultimate objective of ensuring these voters' confidential data remains protected, they still have interests adverse to each other.

Plaintiff contends that the standard to overcome the presumption of adequacy of representation is "adversity of interest, collusion, or nonfeasance." Opp. Br. at 19 (quoting *Moosehead Sanitary Dist. v. S. G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir. 1979)). However, subsequent First Circuit decisions have explained that the *Moosehead* court "did not intend this to be an exclusive list." *Daggett v. Comm'n on Gov't Ethics and Election Practices*, 172 F.3d 104, 111 (1st Cir. 1999). The *Daggett* court explained that "the wide variety of cases that come to the

---

[10] Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times Mag. (Nov. 16, 2025) https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html.

courts would make it unlikely that there are three and only three circumstances that would make representation inadequate." *Id.* (internal citation omitted). *See also B. Fernandez & Hnos, Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 546 (1st Cir. 2006) ("We have explained that this trilogy of grounds for rebutting the adequate representation presumption is only illustrative . . . . [A]nd have discouraged district courts from identifying only a limited number of 'cubbyholes' for inadequate representation claims."). To the contrary, a proposed intervenor "need only offer an 'adequate explanation as to why' it is not sufficiently represented by the named party." *Id.*, at 546.

In this case, Maine's other interests may outweigh the need to protect voters' confidential information. *See* Mot. to Intervene at 8-9. LWVME, on the other hand, is focused entirely on maintaining the security of its members' information and ensuring that Mainers are not dissuaded from civic participation due to fears about the privacy of their personal information. This is a significant difference in motivation that may lead to a stark difference from the State in what outcomes should be pursued in this litigation. These differences are akin to those in *B. Fernandez*, where the Court granted intervention as of right because it was the intervenors, not the existing defendant, who would be "harmed by" the relief sought in the case, creating "sufficient doubt about the adequacy of representation to warrant intervention." *B. Fernandez*, at 547. The *Oregon* court came to the same conclusion in its recent decision. *Oregon*, 2025 WL 3496571, at *2 ("Proposed Intervenors have specific interests in protecting their privacy . . . and in increasing voter participation . . . that existing Defendants do not share.").

IV. **LWVME is entitled to permissive intervention.**

Plaintiff does not contest that LWVME's motion was timely and that there is at least one common question of law or fact, but merely pleads that permissive intervention might lead to undue delay of the litigation. *See* Fed. R. Civ. P. 24(b); Opp. Br. at 19-20. However, there is no cause to believe LWVME's participation in this case would cause undue delay; the government

11

relies fully on conjecture. If the mere possibility of an additional brief or conflict of litigation strategy warranted denying intervention, Rule 24(b)'s exception would swallow it whole. Plaintiff offers no explanation of how or why LWVME would cause undue delay, instead repeating that it believes LWVME lacks standing, which is irrelevant to the question of permissive intervention and even more irrelevant to the possibility of undue delay. Plaintiff cites no authority in support of this argument.[11] Indeed, just this year a court in this district rejected a similar undue delay argument and granted permissive intervention to proposed intervenor-defendants in a case against state actors where the intervenors would be "helpful in fully developing the case" because they had "a unique perspective from the Defendants." *Dinner Table Action*, 2025 WL 604885, at *2; *see also Melone*, 100 F.4th at 29 (permissive intervention was appropriate on behalf of government defendant where intervenor shared a common question of fact with the litigation and intervention did not prejudice the plaintiff's rights). LWVME's rationales for permissive intervention outweigh the lone undercutting factor that its presence in the case could, at some hypothetical point in some hypothetical way, slow it down.

## **CONCLUSION**

For the reasons stated, this Court should grant the League of Women Voters of Maine's motion to intervene as a matter of right under Federal Rule of Civil Procedure 24(a) or, in the alternative, should grant permissive intervention under Rule 24(b).

---

[11] The lone case Plaintiff cites on this point discusses how filing an *amicus curiae* brief is an option for denied intervenors. *Stuart v. Huff*, 706 F.3d 345, 355 (4th Cir. 2013). This citation is tangential at best and does not address that Proposed Intervenor established the criteria for permissive intervention.

<div style="display: flex; justify-content: space-between;">
<div>Dated: December 8, 2025</div>
<div>Respectfully submitted,</div>
</div>

/s/ Allan K. Townsend

Allan K. Townsend, Esq. (he/him)
Johnson & Webbert, LLP
1 Bowdoin Mill Island, Suite 300
Topsham, Maine 04086
Tel: (207) 623-5110
Fax: (207) 624-4160
allan@work.law

Brent Ferguson (NY4890620)
Daniel S. Lenz (WI1082058)
Sejal Jhaveri (NY5396304)
Renata O'Donnell (NY5767561)
Heather Szilagyi (DC90006787)
Alexis Grady (DC90017620)
Kate Hamilton (DC90006168)
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
Tel: (202) 736-2200
Fax: (202) 736-2222

bferguson@campaignlegalcenter.org
dlenz@campaignlegalcenter.org
sjhaveri@campaignlegalcenter.org
rodonnell@campaignlegalcenter.org
hszilagyi@campaignlegalcenter.org
agrady@campaignlegalcenter.org
khamilton@campaignlegalcenter.org

Maura Eileen O'Connor
Brennan Center for Justice
at NYU School of Law
777 6th St., NW, Ste. 1100
Washington, DC 20001
Tel: (202) 249-7190
oconnore@brennan.law.nyu.edu

Andrew B. Garber (NY5684147)
Brennan Center for Justice
at NYU School of Law
120 Broadway, Suite 1750
Tel: (646) 292-8310
Fax: (212) 463-7308
garbera@brennan.law.nyu.edu

Counsel for Proposed Intervenor-Defendant League of Women Voters of Maine

## CERTIFICATE OF SERVICE

    I, Allan Townsend, do hereby certify that on this 8th day of December, 2025, I caused a true and correct copy of the foregoing document to be served upon all counsel of record registered with the Court's ECF system, by electronic service via the Court's ECF transmission facilities.

Dated: December 8, 2025                                          Signature:  /s/ Allan K. Townsend