IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

SHENNA BELLOWS, in her official capacity as the Secretary of State of Maine, and the STATE OF MAINE,

*Defendants*,

JOHN SCHNECK and MARPHEEN CHANN,

*Defendant-Intervenors,*

LEAGUE OF WOMEN VOTERS OF MAINE

*Defendant-Intervenors*.

Case No. 1:25-CV-468-LEW

## LEAGUE OF WOMEN VOTERS OF MAINE'S OPPOSITION TO MOTION FOR ORDER TO SHOW CAUSE

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

ARGUMENT .......................................................................................................................1

    I.      The Motion is procedurally improper ..........................................................1

    II.     The NVRA's public disclosure provision does not authorize Plaintiff's demand for Maine's unredacted voter registration list ...................................................4

    III.    Plaintiff's authority under HAVA does not require Maine to provide the unredacted state voter file ..........................................................................5

    IV.    The Civil Rights Act does not authorize the Attorney General to demand records without an appropriate statement of basis and purpose ................................6

CONCLUSION ..................................................................................................................10

# INTRODUCTION

Plaintiff the United States seeks to use this Motion for an Order to Show Cause (Motion) to short-circuit this litigation by using an inappropriate procedural tool to satisfy its unwarranted demands for sensitive state voter data. As it has in 39 other states, Plaintiff, through the Attorney General, sought Maine's unredacted voter registration list along with answers to detailed questions about Maine's list-maintenance procedures. Maine refused to turn over the unredacted voter file, but fully answered, in considerable detail, the questions about its list-maintenance procedures. Plaintiff then filed this lawsuit, as it now has in 17 other states, followed shortly by the Motion. This Court should deny the Motion because it is procedurally improper, the United States has not demonstrated that it has the authority to demand this information under the National Voter Registration Act (NVRA), the Help America Vote Act (HAVA) or the Civil Rights Act (CRA), and available evidence suggests Plaintiff seeks this information for an improper purpose.

# ARGUMENT

## I.     The Motion is procedurally improper.

As a threshold matter, the Motion is not procedurally proper and should be denied on that basis alone. Orders to show cause are most frequently issued when a party fails to comply with a court rule or order. *See, e.g.*, *United States v. Anderson*, 752 F. Supp. 45, 46 (D. Me. 1990). Litigants also move for such orders to, for example, secure compliance with a subpoena. *See, e.g.*, *Campbell v. First Am. Title Ins. Co.*, No. 08-311-P-S, 2009 WL 4020429, at *1 (D. Me. Nov. 18, 2009). Many such procedures are specifically authorized by statute or rule. *See, e.g.*, Fed. R. Civ. P. 45(f-g) (enforcing subpoenas); 26 U.S.C. §§ 7604, 7609 (IRS summons enforcement); Fed. R. App. P. 4(a)(5)(A)(ii). There is no administrative order, court order, subpoena, or other procedural mechanism authorizing a Motion for an Order to Show Cause in this case.

Plaintiff relies on *Kennedy v. Lynd*, an out-of-circuit case from 1962, which contains a single line suggesting that the CRA authorizes a special statutory proceeding "*comparable to* the form of a traditional order to show cause, or to produce in aid of an order of an administrative agency." 306 F.2d 222, 225 (5th Cir. 1962) (emphasis added); *see* ECF No. 5-1 at 8. But *Lynd* does not suggest that even such a "comparable" proceeding is warranted in all CRA cases, including where there is no administrative order. *See id.* And *Lynd* was the product of a different era, shortly after the enactment of the CRA, during which "some southern officials, in order to hamper investigations by the Department of Justice and the Civil Rights Commission, had been destroying or impounding voting and registration records." Daniel M. Berman, *A Bill Becomes a Law: Congress Enacts Civil Rights Legislation* 9 (2d ed. 1966); *see also* Report of U.S. Comm'n on Civil Rights 1963, at 16. In the intervening 60 years, the Supreme Court has clarified that normal procedure attaches when a federal agency seeks to compel the production of records. *See Becker v. United States*, 451 U.S. 1306, 1308 (1981); *United States v. Powell*, 379 U.S. 48, 57-58 (1964); *see also, e.g.*, *United States v. Will*, 671 F.2d 963, 966 (6th Cir. 1982) (allowing summons recipient opportunity to rebut government's prima facie case). The text of the CRA directs the court to use "appropriate process," *see* 52 U.S.C. § 20705, which should be guided by current practice and the changes in context, rather than a single sentence in a nonbinding case from 1962.

Nor do the NVRA or HAVA authorize such an expedited procedure, and cases involving both statutes follow the normal rules of civil procedure. *See Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 44 (1st Cir. 2024) (district court decided NVRA case on cross-motions for summary judgment); *see also Colon-Marrero v. Velez*, 813 F.3d 1, 4-5 (1st Cir. 2016) (case involving HAVA and NVRA). Motions for an Order to Show Cause cannot be used as an end-run around those rules. *League of Women Voters of Arizona v. Reagan*, No. CV-18-02620-PHX-JAT, 2018

WL 4467891, at *1 n.1 (D. Ariz. Sep. 18, 2018) ("Plaintiffs cannot shift their burden of showing they are entitled to a preliminary injunction to Defendant via a show cause request.").[1]

Even if the Court accepts Plaintiff's extraordinary procedural suggestion, it should exercise its judicial authority to ensure the request is proper and legally supported. Even *Lynd* recognized that under the CRA, a court "exercises judicial judgment. It does not confer or withhold a favor.'" *Lynd*, 306 F.2d at 225 (quoting *Tutun v. United States*, 270 U.S. 568, 578 (1926)). In the IRS summons context, the First Circuit instructed that it is the court's role to ensure that the government is using its authority "in good faith and in compliance with the law." *Sugarloaf Funding, LLC v. U.S. Dep't. of the Treasury*, 584 F.3d 340, 345 (1st Cir. 2009) (citing *United States v. Gertner,* 65 F.3d 963, 966 (1st Cir. 1995)). More generally, when considering a motion for an order to show cause for an alleged failure to produce documents, courts do not rubber-stamp the movant's request. *See, e.g.*, *In re Grand Jury Proceedings*, 173 F.R.D. 336, 338 (D. Mass. 1997) (denying motion for an order to show cause for failure to produce an affidavit based on Fifth Amendment); *In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, No. MDL 13-2419, 2017 WL 9324225, at *1 (D. Mass. 2017) (denying motion for an order to show cause based on common interest privilege). Courts instead analyze whether the Agency request was made for a proper purpose. *See United States v. Sturm, Ruger & Co.*, 84 F.3d 1, 4 (1st Cir. 1996). Evidence that the government is not acting in good faith demonstrates improper purpose. *See United States v. Westinghouse Elec. Corp.*, 788 F.2d 164, 166-67 (3d Cir. 1986) ("[I]f a subpoena is issued for an

---

[1] Plaintiff confoundingly asserts that the NVRA contains "materially identical language" to the CRA, and that NVRA cases must therefore also be subject to a "special statutory proceeding." ECF No. 5-1 at 8. But as noted, courts regularly hear NVRA cases under regular procedural rules, not special proceedings. *See*, *e.g*., *Pub. Int. Legal Found., Inc.* 92 F.4th at 44. Further, Plaintiff compares the wrong sections of the CRA and NVRA—if there were any basis for applying a special procedure to CRA claims, it would apply based on 52 U.S.C. § 20705, which provides that district courts "shall have jurisdiction by appropriate process to compel the production of" records, and which Plaintiff fails to cite. The NVRA's enforcement provision contains no similar language. *See* 52 U.S.C. § 20510(a).

improper purpose [], its enforcement constitutes an abuse of the court's process."); *see also infra* Section IV.

> II.   **The NVRA's public disclosure provision does not authorize Plaintiff's demand for Maine's unredacted voter registration list.**

Nothing in the NVRA authorizes Plaintiff to demand Maine's unredacted voter registration list, complete with dates of birth, driver's license numbers, and social security numbers, which is the sole relief requested in its motion. *See* Mem. in Supp. of Mot. For Order to Show Cause ¶ 4, ECF No. 5-1 (Pl. Br.). As discussed more fully in LWVME's Motion to Dismiss, courts considering claims under the public disclosure provision have consistently found that the law does not require the production of an unredacted voter file. *See* League of Women Voters of Maine's Mot. to Dismiss and Incorporated Mem. of Law (Mot. to Dismiss) at 8-11; *see also Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th at 36. Only two years ago, Plaintiff argued that Maine was not required to produce "'uniquely sensitive information' like voters' Social Security Numbers" in response to an NVRA request and that the law did not prohibit "redacting an even broader set of personal information in certain sensitive circumstances." Brief for the United States as Amicus Curiae at 27, *Pub. Int. Legal Found., Inc. v. Bellows*, No. 23-1361, 2023 WL 4882397 (1st Cir. July 25, 2023). The First Circuit agreed, finding that the NVRA did not require disclosure of that type of sensitive information. *Pub. Int. Legal Found., Inc.*, 92 F.4th at 56. Plaintiff, fully reversing its position, now demands this precise data under the same statutory provision.

Not only does the NVRA lack a requirement that Maine produce the unredacted voter roll Plaintiff demands, but Maine law prohibits such disclosure. As Secretary Bellows explained, Maine law restricts who may access its voter registration list, in what form, and for what purposes. 21-A M.R.S.A. § 196-A. That law designates voters' full dates of birth, social security numbers, tax identification numbers, and driver's license numbers—or any portions thereof—as "highly

4

sensitive personal information" that may not be included in a voter file to be disclosed. *Id.* § 196-A(1)(K)(2). Courts have recognized that the NVRA and state privacy laws operate together where such state privacy laws require minimal redaction of sensitive personal identifiers. *See Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339-40 (4th Cir. 2012) (explaining that states may remove social security numbers); *see also Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 265-66 (4th Cir. 2021). Because the statute does not mandate disclosure of the unredacted voter file, Plaintiff's NVRA arguments fail.

### III. Plaintiff's authority under HAVA does not require Maine to provide the unredacted state voter file.

HAVA does not grant the Attorney General authority to obtain an unredacted voter file. HAVA contains an enforcement provision without any reference to disclosure of the voter file, much less the voter file with driver's license numbers, dates of birth, and social security numbers. And HAVA contains *no* provision that requires states to provide the Attorney General election data. That is because no such legal authority exists: a basic enforcement provision does not implicitly include the authority to force production of records, especially those that must be kept private under law. *See* Mot. to Dismiss at 13-14.

Plaintiff misstates the law when asserting, without reference to any authority, that HAVA contains a disclosure requirement "similar" to the disclosure requirement in the NVRA. *See* Pl. Br. at 7. Unlike the NVRA, HAVA contains no provision through which the Attorney General or the public may request records; nor does it contain any provision to challenge nondisclosure. *See* Mot. to Dismiss at 15. As a result, no provision of HAVA requires Maine to produce the detailed voter information that the Attorney General has requested.

Plaintiff's argument that the power to enforce HAVA implies an ability to obtain the unredacted voter list is similarly unpersuasive. A static, unredacted copy of the Maine voter

5

registration list is not necessary—or even useful—to determine whether Maine is complying with HAVA's list-maintenance requirements, because a static list does not explain the procedures by which Maine maintains the list. Plaintiff claims that absent Maine's unredacted voter list, it is unable to evaluate (1) whether "duplicate names are eliminated from the computerized list pursuant to 52 U.S.C. § 21083(a)(2)(B)" and (2) whether the State is complying with Section 21083(a)(5)(A). Pl. Br. at 7. But Maine has already explained in detail its processes for determining duplicate registrations and for removing duplicate names from the voter file. *See* August 8, 2025 Letter, ECF No. 5-3 (describing in detail Maine's routine and periodic list-maintenance practices). And Section 21083(a)(5)(A) is not a list-maintenance provision but instead requires voter registration applications to request certain identifying information such as a driver's license or last four digits of a social security number. *See* 52 U.S.C. § 21083(a)(5)(A)(i). Maine's voter registration application is publicly available and requires submission of the requisite information. *See Maine Voter Registration Application*, https://www.maine.gov/sos/sites/maine.gov.sos/files/content/assets/Voter-20Registration-20Card-20--20Rev-201-25-20Fillable.pdf (last visited Dec. 5, 2025); *see also* Mot. to Dismiss at 14-15.

### IV. The Civil Rights Act does not authorize the Attorney General to demand records without an appropriate statement of basis and purpose.

The Attorney General has not provided Maine with an adequate basis and purpose for her exceptional demand for the unredacted voter file, notwithstanding Maine law protecting that information. Section 303 of the CRA requires "a statement of the basis and the purpose" for records demands. 52 U.S.C. § 20703. While the statute does not provide a definition of basis, the plain language suggests that "basis" is the statement supporting the Attorney General's belief that there is a violation of federal civil rights law, and the statement of "purpose" must explain how the

6

requested records would help determine if there is a violation of the law.

The basis and purpose requirements of the CRA are safeguards, so that the statute cannot be used as a fishing expedition to obtain records for reasons unrelated to the CRA's protection of the right to vote, or for no reason at all. *See State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960) ("Title III provides—if properly applied and enforced—an effective means whereby preliminary investigations of registration practices can be made in order to determine whether or not such practices conform to constitutional principles."), *aff'd sub nom.*, *Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961); *see also In re Gordon*, 218 F. Supp. 826, 827 (S.D. Miss. 1963) (finding that the CRA may not be used as unlimited discovery device).

The Motion alleges that the Attorney General made her demand for records under the CRA in her August 18 letter and explained the purpose of the request. *See* Mot. at 2, ECF No. 5. Plaintiff failed, however, to point to any statement of basis. That failure is fatal to Plaintiff's Motion, because the statute requires a statement of basis. *See* 52 U.S.C. § 20703.[2]

Further, the Attorney General's statement of purpose is pretextual and insufficient to support the Motion. Notably, the Attorney General's first letter, dated July 24, 2025, does not reference the CRA at all. *See* July 24, 2025 Letter, ECF No. 5-4. Confusingly, the second letter asserts that the statements of basis and purpose were contained in the July 24 letter and that the purpose of the demand is "to assist in [the] determination of whether Maine's list maintenance program complies with the NVRA." *See* August 18, 2025 Letter at 2, ECF No. 5-2. This purported

---

[2] In addition, it is not clear that the CRA authorizes the Attorney General to obtain sensitive information like social security numbers. *Cf. Lynd*, 306 F.2d at 231 ("We think two things are of great importance . . . First, we are not discussing confidential, private papers and effects. We are, rather dealing with public records which ought ordinarily to be open to legitimate reasonable inspection."). Maine law, and common sense, indicate that this information is highly confidential. *See Bellows*, 92 F.4th at 56 (holding that the NVRA public disclosure provision does not supersede state privacy laws that protect sensitive data on the state voter roll).

7

purpose is insufficient on its face: acquiring an unredacted voter file is not necessary to assess compliance with the NVRA. *See supra* Section II. Maine's detailed responses to USDOJ's questions provide far more insight into the State's list-maintenance processes than a static, unredacted copy of the voter file.

Plaintiff cannot rely on misleading descriptions of Maine's responses to the Election Administration and Voting Survey (EAVS) to satisfy the CRA's requirements. As Secretary Bellows explained, several of USDOJ's assertions are incorrect statements of the EAVS data. And this data can be misleading without appropriate context. For example, USDOJ incorrectly identified a question that Maine failed to answer and assumed list-maintenance issues where other explanations made more sense. *See, e.g.*, ECF No. 5-3 at 5 ("Your question further asserts that Maine did not provide a response to Question A12h in the EAVS survey. That is incorrect. As reflected in the 2024 EAVS Report, Maine reported to the EAC that it had removed 2,900 records."); *id.* at 4-5 (explaining that Maine's rate of duplicate transactions was below average only because a few states with "high rates of duplicate applications" skewed the average rate upwards). With these considerations in mind, the EAVS data only demonstrates that Maine has a higher-than-average voter registration rate, which cannot be the basis for such a broad-reaching data demand that is ostensibly intended to evaluate list-maintenance procedures.

Plaintiff's failure to provide the basis or an adequate purpose is unsurprising, because the real purpose of Plaintiff's demand is evidently *not* to evaluate compliance with the list-maintenance provisions of the NVRA or HAVA. First, it appears that USDOJ seeks to sweep up sensitive data of tens of millions of voters that can be used for any number of undisclosed and opaque purposes. According to an attorney in the Civil Rights Division, Civil Rights Division leadership demanded that USDOJ obtain "states' voter rolls, by suing them if necessary" to "go

8

through all the data and compare it to the Department of Homeland Security data and Social Security data" and search for "immigrants that have registered to vote" even though "[t]here was no pre-existing evidence" that unlawful immigrant voting is a problem. Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times Mag. (Nov. 16, 2025), https://perma.cc/LN3G-WCE5. Second, USDOJ's own documents demonstrate it seeks to use this data to engage in its own list-maintenance processes that will supplant the role of the states. *Compare* Ex. A, Colorado MOU at 5 (requiring states to remove supposedly ineligible voters individually identified by the Department of Justice within 45 days) *with* 52 U.S.C. § 20507(a) (directing states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters") *and* 52 U.S.C. § 21083 ("The appropriate State or local election official shall perform list maintenance with respect to the computerized list on a regular basis."). What USDOJ is actually doing—and not the pretextual explanation contained in its letters—explain why it needs sensitive voter data that is wholly outside the Attorney General's statutory authority and runs afoul of the Elections Clause, which grants only the States and Congress with the power to regulate elections. *See* U.S. Const. art. I, § 4, cl. 1.

In stark contrast to previous, targeted demands under the CRA, USDOJ has made the same request for sensitive voter data to at least 40 states, and Plaintiff has thus far sued 18 states and two counties that did not immediately comply with its full demands. *See* Mot. to Dismiss at 17-18. And USDOJ has not shown it believes all 40 states are violating the NVRA's and HAVA's list-maintenance provisions, demonstrating that USDOJ improperly seeks to use the CRA as an unlimited tool to compile and consolidate voter data, rather than to protect the right to vote. *Cf. In re Gordon*, 218 F. Supp. at 827 ("[T]his Act merely provides for a limited exploration and discovery as to the validity of the election processes."). Given the evidence that Plaintiff is not

9

acting in good faith or at least that its stated purposes are not its true purposes, this Court should closely examine Plaintiff's demands. *In re Admin. Subpoena No. 25-1431-019*, No. 1:25-mc-91324, 2025 WL 2607784, at *5 (D. Mass. Sep. 9, 2025) ("Evidence of bad faith is relevant to whether an investigation is being pursued for an improper purpose"); *Cf. In re Coleman*, 208 F. Supp. 199, 201 (S.D. Miss. 1962), *aff'd sub nom.*, *Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) ("He is presumed to be acting in good faith and in the proper pursuit of his official duties unless otherwise shown."). Plaintiff's improper purpose is an appropriate subject of this Court's inquiry, as the Court must ascertain whether Plaintiff has asserted a proper purpose and whether that purpose falls within the bounds of the CRA. *See In re Admin. Subpoena No. 25-1431-019*, 2025 WL 2607784, at *5; *see also In re Gordon*, 218 F. Supp. at 827 ("It is [likewise] a mistaken view to assume that such investigation of such records is an unlimited discovery device which may be employed and used without restraint."). The evidence demonstrates that these requests do not meet this standard, so the Motion should be denied. Should this Court deem more information necessary, the parties should be allowed to conduct limited discovery into the purpose of the records request to assess Plaintiff's true purpose in gathering sensitive information on all American voters.

## CONCLUSION

This Court should deny Plaintiff's Motion for an Order to Show Cause because the Attorney General lacks the authority under the NVRA and HAVA to obtain the requested records. In addition, Plaintiff has failed to make the necessary showing under the CRA. If, however, the Court finds that additional information regarding Plaintiff's purpose in making these requests is necessary, Defendant and Intervenors should be allowed to take limited discovery on that issue.

December 12, 2025

Respectfully submitted,

/s/ *Sejal Jhaveri*

Allan K. Townsend, Esq. (he/him)
Johnson & Webbert, LLP
1 Bowdoin Mill Island, Suite 300
Topsham, ME 04086
Tel: (207) 623-5110
Fax: (207) 622-4160
allan@work.law

Brent Ferguson
Daniel S. Lenz
Sejal Jhaveri
Renata O'Donnell
Heather Szilagyi
Alexis Grady
Kate Hamilton
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
Tel: (202) 736-2200
Fax: (202) 736-2222
bferguson@campaignlegalcenter.org
dlenz@campaignlegalcenter.org
sjhaveri@campaignlegalcenter.org
rodonnell@campaignlegalcenter.org
hszilagyi@campaignlegalcenter.org
agrady@campaignlegalcenter.org
khamilton@campaignlegalcenter.org

Maura Eileen O'Connor
Brennan Center for Justice
at NYU School of Law
777 6th St. NW, Ste. 1100
Washington, DC 20001
Tel: (202) 249-7190
oconnore@brennan.law.nyu.edu

Andrew B. Garber
Brennan Center for Justice
at NYU School of Law
120 Broadway, Suite 1750
Tel: (646) 292-8310
Fax: (212) 463-7308

11

garbera@brennan.law.nyu.edu

Counsel for Intervenor League of Women Voters of Maine

## CERTIFICATE OF SERVICE

      I, Sejal Jhaveri, do hereby certify that on this 12th day of December, 2025, I caused a true and correct copy of the foregoing document to be served upon all counsel of record registered with the Court's ECF system, by electronic service via the Court's ECF transmission facilities.

Date: December 12, 2025                                      Signature: /s/ *Sejal Jhaveri*