## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| v. | Case No. 1:25-CV-468-LEW |
| SHENNA BELLOWS, in her official capacity as the Secretary of State of Maine, and the STATE OF MAINE, | |
| *Defendants*, | |
| JOHN SCHNECK and MARPHEEN CHANN, | |
| *Defendant-Intervenors,* | |
| LEAGUE OF WOMEN VOTERS OF MAINE | |
| *Defendant-Intervenors*. | |

## LEAGUE OF WOMEN VOTERS OF MAINE'S
## MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................2

    I.       Procedural History ................................................................................................2

          A.  USDOJ demands access to voter data, first invoking the NVRA and HAVA, and later invoking the CRA ................................................................................2

          B.  Proceedings in this Court ..........................................................................3

    II.      Statutory Background ...........................................................................................4

          A.  NVRA .......................................................................................................4

          B.  HAVA .......................................................................................................5

          C.  CRA .........................................................................................................5

LEGAL STANDARD ........................................................................................................6

ARGUMENT ....................................................................................................................7

    I.       Summary of Argument ..........................................................................................7

    II.      Count I should be dismissed because the request for Maine's unredacted voter list exceeds the Attorney General's authority to investigate under the NVRA ..................7

          A.  The NVRA's public disclosure provision does not require disclosure of the requested information ...............................................................................8

          B.  Maine law prohibits Defendants from disclosing the requested records ...............10

          C.  The NVRA's enforcement provision does not include power to demand records ...............................................................................................11

          D.  Maine's unredacted voter registration list is not necessary to determine Maine's compliance with the NVRA's list-maintenance requirements ...............................12

    III.     Count II should be dismissed because HAVA does not compel Maine to disclose an unredacted voter list ................................................................................................13

    IV.     Count III should be dismissed because the request for Maine's unredacted voter registration list exceeds the Attorney General's authority under the Civil Rights Act ..............................................................................................15

CONCLUSION..................................................................................................................18

## INTRODUCTION

Plaintiff the United States has gone on an unprecedented fishing expedition for voters' sensitive data, demanding that the State of Maine produce its unredacted statewide voter registration list, including driver's license numbers, dates of birth, and partial social security numbers. Plaintiff cites three statutes in support of its demand—the National Voter Registration Act (NVRA), the Help America Vote Act (HAVA), and Title III of the Civil Rights Act of 1960 (CRA)—but none authorizes Plaintiff to require Maine to produce its unredacted voter file. The Complaint should therefore be dismissed.

Plaintiff's plans for this data, reflected nowhere in the Complaint, apparently have nothing to do with the statutes relied upon in the Complaint. According to public reporting, United States Department of Justice (USDOJ) employees "have been clear that they are interested in a central, federal database of voter information," including the voter data of more than 40 states. Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times, (Sep. 9, 2025), https://perma.cc/WEN9-3ERR.  And according to one USDOJ attorney, Civil Rights Division leadership has demanded that USDOJ obtain "states' voter rolls, by suing them if necessary" to "go through all the data and compare it to the Department of Homeland Security data and Social Security data" and search for "immigrants that have registered to vote" even though "[t]here was no pre-existing evidence" that unlawful immigrant voting is a problem.[1] Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times Mag. (Nov. 16, 2025), https://perma.cc/LN3G-WCE5. Plaintiff's demands for these voter data persist despite reports that its efforts to use the data for voter verification have resulted in erroneous removals of

---

[1] To the extent that the United States is engaged in data collection for any purpose other than an investigation, USDOJ must comply with the Paperwork Reduction Act, *see* 44 U.S.C. §§ 3506(c), 3507(a), and the Privacy Act, *see* 5 U.S.C. § 552a.

1

eligible U.S. citizens from state voter rolls. Jude Joffe-Block, *Trump's SAVE tool is looking for noncitizen voters. But it's flagging U.S. citizens too*, (Dec. 10, 2025), NPR, https://perma.cc/7DDE-T9ZV.

Neither the NVRA, HAVA, nor the CRA entitles the Attorney General to an unredacted version of Maine's voter file in this litigation. The Attorney General's only stated purpose for seeking the unredacted file is to ensure compliance with the list-maintenance provisions of the NVRA and HAVA—but driver's license numbers, dates of birth, and social security numbers are not necessary to ensure compliance with these statutes. As such, Plaintiff has failed to state a claim and the Court must dismiss the Complaint.

## BACKGROUND

### I.    Procedural History

#### A.    USDOJ demands access to voter data, first invoking the NVRA and HAVA, and later invoking the CRA.

USDOJ's demands for access to Mainers' sensitive voter data began on July 24, 2025. *See* ECF No. 1-1. In its July 24 letter, USDOJ cited Section 20507(i) of the NVRA to request "[t]he current electronic copy of Maine's computerized statewide voter registration list," including "all fields contained within the list." ECF No. 1-1 at 1. USDOJ also referenced Maine's responses to the Election Assistance Commission's (EAC) Election Administration and Voting Survey (EAVS), requesting Maine further explain certain EAVS data and provide information about its voter registration, removal, and list-maintenance processes. ECF No. 1-1 at 2-3.

On August 8, Defendant Secretary of State Shenna Bellows responded via letter. She addressed each question concerning the EAVS data in the July 24 letter but explained that, under Maine law, certain "data contained within CVR [Maine's central voter registration system] is confidential and may not be disclosed except as specified by statute." ECF No. 1-2 at 3.2. Secretary

Bellows also expressed "grave concerns about the seemingly overbroad scope" of USDOJ's requests, which did not "appear to be correlated with legitimate investigatory needs," and asked how the data would be used. ECF No. 1-2 at 1-2.

On August 18, USDOJ responded to Secretary Bellows, again demanding access to Maine's unredacted voter registration list and making a new request for copies of "all original and completed voter registration applications submitted to the State of Maine from December 1, 2023, through July 1, 2025." ECF No. 1-3 at 2. In addition to the NVRA and HAVA, USDOJ's August 18 letter cited the CRA, claiming that "as required by Section 303 of the CRA, [USDOJ's] letter dated July 24, 2025, provided you with 'a statement of the basis and the purpose,'" for the requests. ECF No. 1-3 at 2. The July 24 letter, however, did not reference the CRA at all. *See* ECF No. 1-1.

Secretary Bellows responded to USDOJ's August 18 letter on September 8. She again declined to provide the sensitive voter data and voter registration applications, citing concerns about the lack of authority for and privacy issues raised by the requests. Ex. A, September 8, 2025 Letter; Compl. ¶ 51. Bellows explained that if USDOJ were "willing to provide additional information" addressing Maine's concerns about the purpose and legality of the requests for sensitive information, Maine would consider disclosure. Ex. A at 3.

## B. Proceedings in this Court

Despite receiving Maine's responses and detailed explanation of its list-maintenance programs, and without providing additional information to address Maine's concerns, Plaintiff filed suit on September 16, 2025, alleging violations of the NVRA, HAVA, and the CRA. ECF No. 1. The lawsuit is one of 20 similar cases Plaintiff filed against states or localities seeking unredacted voter lists. U.S. Dep't of Just., *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Election Laws*, (Dec. 12, 2025),

https://perma.cc/X87G-FGAF. Here, Plaintiff demands a voter registration list that includes "all fields, including each registrant's full name, date of birth, residential address, and either their state driver's license number, or the last four digits of their Social Security number." Compl. ¶ 65. The Complaint does not specify how the requested data will be used to evaluate Maine's compliance with the NVRA and HAVA. On September 18, Plaintiff filed a Motion for Order to Show Cause asking the Court to direct Defendants to show cause why they have not produced the demanded records and to produce the records immediately. ECF No. 5.

John Schneck and Marpheen Chann moved to intervene in this litigation as defendants on September 23, 2025. ECF No. 10. On September 29, the League of Women Voters of Maine (LWVME) moved to intervene as a defendant. ECF No. 18. The Motions to Intervene were granted on December 12, 2025. ECF Nos. 50 and 51.

## II.     Statutory Background

### A.  NVRA

Congress passed the NVRA in 1993 to establish "procedures that will increase the number of eligible citizens who register to vote in elections for Federal office," protecting "the integrity of the electoral process," and ensuring "that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b). Section 8 of the NVRA regulates the way that states update and maintain their voter registration lists and provides a disclosure mechanism by which any party may seek information regarding those lists. 52 U.S.C. § 20507(b). Section 8 requires States to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of . . . a change in the residence of the registrant." 52 U.S.C. § 20507(a)(4). Section 8 also requires "[p]ublic disclosure of voter registration activities." 52 U.S.C. § 20507(i).

4

## B. HAVA

Against the backdrop of the NVRA and the Privacy Act, Congress enacted HAVA in 2002. Pub. L. No. 107-252, 116 Stat. 1666 (2002) (52 U.S.C. § 20901–21145). HAVA requires each state to maintain "a single, uniform, official, centralized, interactive computerized statewide voter registration list," which "shall serve as the single system for storing and managing the official list of registered voters throughout the State." 52 U.S.C. § 21083(a)(1)(A), (a)(1)(A)(i). It charges states with "conducting a general program of list maintenance that makes a reasonable effort to remove voters who become ineligible because of a change of address [or death]." *Bellitto v. Snipes*, 935 F.3d 1192, 1203 (11th Cir. 2019) (citation modified); *see also* 52 U.S.C. § 21083(a)(2)(A)(ii). HAVA also requires states to ensure that "duplicate names are eliminated from the computerized list" and requires states to collect certain information from registrants such as a driver's license number or the last four digits of a social security number. 52 U.S.C. § 21083(a)(2)(B)(iii), (a)(5)(A). While the statute repeatedly refers to other provisions of the NVRA, *see, e.g.*, 52 U.S.C. § 21083(a)(2)(A)(i), it neither contains nor incorporates a disclosure provision of any kind.

## C. CRA

The Civil Rights Act of 1960 was "designed to protect access to the ballot in jurisdictions with patterns or practices of denying [voting] access based on race[.]" *Allen v. Milligan*, 599 U.S. 1, 47 (2023) (citation modified). Prior to the CRA, some states engaged in a variety of techniques to prevent eligible Black voters from voting. "One of the many techniques used to keep Black voters from the polls was to reject would-be registrants for insignificant, hyper-technical errors in filling out application forms." *Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pa.*, 97 F.4th 120, 126 (3d Cir. 2024). These included rejecting "applicants for failing to calculate [their] age to the day" and "underlining Mr. when it should have been circled[.]" *Id.* (citation modified).

During this time, "some southern officials, in order to hamper investigations by the Department of Justice and the Civil Rights Commission, had been destroying or impounding voting and registration records." Daniel M. Berman, *A Bill Becomes a Law: Congress Enacts Civil Rights Legislation* 9 (2d ed. 1966); *see also* Rep. of U.S. Comm'n on Civil Rights 1963, at 16. Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of twenty-two months after any federal general, special, or primary election. 52 U.S.C. § 20701. Section 303 requires that a state must make any of these retained records available for inspection by the Attorney General "upon [a] demand in writing by the Attorney General" that contains "a statement of the basis and purpose therefor." 52 U.S.C. § 20703.

## LEGAL STANDARD

A court may dismiss a claim for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of the Civil Procedure. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 570 (2007). Thus, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court," on a motion to dismiss. *Id.* at 558 (cleaned up).

The First Circuit has set out a two-step approach to reviewing motions to dismiss: "[s]tep one: isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements" and "[s]tep two: take the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Schatz v. Republican State Leadership*

6

*Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (citations omitted). The First Circuit stated, "[p]lausible . . . means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job" that involves the consideration not only of the complaint but of the "implications from documents" attached or fairly incorporated into the complaint. *Id*.

## ARGUMENT

### I.  Summary of Argument

Plaintiff's Complaint fails to state any claim for relief because it does not include the requisite law or facts to establish that Plaintiff is entitled to the sole form of relief it seeks: production of Maine voters' sensitive private data. In Counts I and II, Plaintiff fails to state a claim because the plain language of the NVRA and HAVA do not require disclosure of the requested voter registration data.[2] Count III fails to allege the requisite basis and purpose to invoke the CRA, and the allegations do not explain how Maine's unredacted voter file containing driver's license numbers, dates of birth, and partial social security numbers are needed to evaluate compliance with the list-maintenance provisions of the NVRA or HAVA.  Moreover, Maine privacy statutes that are not preempted by any of the relevant federal statutes prevent such disclosure.

### II.  Count I should be dismissed because the request for Maine's unredacted voter list exceeds the Attorney General's authority to investigate under the NVRA.

The Complaint fails to state a claim under the NVRA because the NVRA does not require disclosure of the requested information and because the requested information is not necessary to enforce the NVRA's list-maintenance provision. Further, Maine voter protection law prohibits such disclosure. As such, Count I should be dismissed.

---

[2] The ten cases that Plaintiff has filed since December 1, 2025 are based on similar facts but invoke only the CRA, demonstrating the weakness of Plaintiff's NVRA and HAVA claims in this case. *See infra* note 8.

**A. The NVRA's public disclosure provision does not require disclosure of the requested information.**

The NVRA requires states to allow public inspection of "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). Courts have consistently held that provision does not require the disclosure of confidential information. Instead, they have determined the NVRA requires states to produce the public portions of voter registration lists and materials about how lists are created, updated, and maintained. *See Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (finding that efforts to maintain the statewide list qualify as a program subject to disclosure); *see also Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 266 (4th Cir. 2021) (finding that program to identify noncitizen registrants was subject to disclosure). States do not need to provide every "relevant record from any source whatsoever," and are not required to disclose sensitive data contained within records otherwise subject to disclosure. 996 F.3d at 264.

In *Public Interest Legal Foundation, Inc. v. Bellows*, the First Circuit considered which data within Maine's voter file was subject to disclosure under the NVRA's public disclosure provision and whether Maine law restricting the use and publication of the file was preempted. The Court declined to compel Maine to produce its unredacted voter file, finding that "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in" such voter files. 92 F.4th 36 at 56. The First Circuit's holding is consistent with the amicus brief that Plaintiff itself filed in the litigation, urging the First Circuit to reach that result. Brief for the United States as Amicus Curiae at *27, *Pub. Int. Legal Found., Inc. v. Bellows*, No. 23-1361, 2023 WL 4882397 (1st Cir. July 25, 2023). In that same brief, Plaintiff argued that the NVRA does not prohibit states from "redacting an even broader set of personal information in

8

certain sensitive circumstances." *Id*. (citing *Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 267 (4th Cir. 2021)). These arguments are consistent with Plaintiff's position on the NVRA's public disclosure provision dating back more than a decade. *See* Brief for the United States as Amicus Curiae at *11, *25-26, *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 2011 WL 4947283 (4th Cir. Oct. 18, 2011) (No. 11-1809).

The First Circuit's decision is consistent with the holdings of other courts, which have repeatedly declined to require the disclosure of sensitive voter information such as driver's license numbers, dates of birth, and the last four digits of voters' social security numbers. *See, e.g.*, *Project Vote/Voting For Am., Inc. v. Long*, 752 F. Supp. 2d 697, 711 (E.D. Va. 2010) (holding the NVRA permits redacting social security numbers); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 736 (S.D. Miss. 2014) (public disclosure provision "does not, as a general proposition, prohibit a State from protecting voter registrants' SSNs and birthdates as highly personal and sensitive information" because forced disclosure of sensitive identifiers would make citizens hesitant to register to vote); *Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d at 265-66 (recognizing the NVRA's broad disclosure mandate while permitting limited redaction of sensitive identifiers); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344 (N.D. Ga. 2016) ("Section 8(i) requires the disclosure of individual voter registration records, but it does not require the disclosure of sensitive information that implicates special privacy concerns.").[3]

Plaintiff nonetheless asserts that the NVRA entitles it to Maine's unredacted voter registration list, including sensitive information that implicates privacy concerns and the right to

---

[3] These holdings harmonize the NVRA with the Privacy Act. Congress enacted the NVRA's public disclosure provision after the Privacy Act of 1974, which prevents intra-governmental data sharing, with limited exceptions. 5 U.S.C. § 552a(b). Congress implemented this limitation on data sharing in recognition that "the right to privacy is a personal and fundamental right protected by the Constitution of the United States" and "the privacy of an individual is directly affected by the collection, maintenance, use, and dissemination of personal information by Federal agencies." Pub. L. No. 93-579, § 2, 88 Stat. 1896 (1974).

vote without intimidation. Plaintiff's assertions find no support in the NVRA's public disclosure provision. As such, this Court should find that Plaintiff has failed to state a cognizable claim under the NVRA's public disclosure provision.

**B.  Maine law prohibits Defendants from disclosing the requested records.**

Moreover, state law prohibits Defendants from producing the unredacted voter file. Maine prohibits the disclosure of certain "highly sensitive personal information" contained in the voter file, including voters' dates of birth, social security numbers, tax identification numbers, and driver's license numbers. *See* 21-A M.R.S.A. § 196-A(1)(K). This law is not preempted because the information it protects is not subject to NVRA disclosure. *See supra* Argument II(A)(i).

The NVRA and state privacy laws operate together where state laws require minimal redaction of sensitive personal identifiers, while still permitting the requisite disclosure. *See Project Vote*, 682 F.3d at 339-40 (explaining that states may remove social security numbers and driver's license numbers while disclosing voter registration applications); *see also Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d at 265-66. The First Circuit has recognized that the NVRA does not require the disclosure of voters' sensitive identifiers—the exact information protected from disclosure under Maine's voter protection law. *Pub. Int. Legal Found., Inc.*, 92 F.4th 36, 56; 21-A M.R.S.A. § 196-A(1)(K) (prohibiting disclosure of "highly sensitive personal information"); *see also* Brief for the United States as Amicus Curiae at *28, *Pub. Int. Legal Found., Inc.*, 2023 WL 4882397 (1st Cir. July 25, 2023) (arguing that state law limits, such as those on voter information, are not preempted when they affect uses that "would not further the NVRA's purposes," including "bans on disseminating personal data"). As such, Maine's voter protection law is not preempted by the NVRA. *See* LWVME Opp'n Mot. Show Cause at 4 (detailing the NVRA's coexistence with state privacy laws).

### C.  The NVRA's enforcement provision does not include power to demand records.

Count I cannot survive simply because the Attorney General has the authority to enforce the NVRA, given that the statute does not authorize the Attorney General to seek records beyond the requirements of the public disclosure provision.

Although Count I of the Complaint relies solely on the NVRA's public disclosure provision, *see* Compl. at 16 ("Count I: [NVRA], 52 U.S.C. § 20507(i)"), the Complaint also makes passing reference to "the Attorney General's enforcement authority." *Id*. ¶ 58. But the NVRA's provision granting the Attorney General enforcement authority only allows the Attorney General to "bring a civil action in an appropriate district court for such declaratory or injunctive relief as is necessary to carry out this chapter." *See* 52 U.S.C. § 20510(a). Neither that provision nor any part of the NVRA grants the Attorney General independent subpoena or administrative investigatory powers.[4] *See* 52 U.S.C. § 20510(a). A general grant of enforcement authority does not create an implied right to force states to provide data to the federal government. *See Consumer Fin. Prot. Bureau v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 691 (D.C. Cir. 2017) (agency's ability to define the scope of its investigation broadly "does not afford it unfettered authority to cast about for potential wrongdoing").

The NVRA has a public disclosure provision, but no other records-collection authority for the Attorney General. If Plaintiff has evidence that Maine has failed to comply with the NVRA, it may file a civil suit alleging those violations and take discovery in that suit. *See* 52 U.S.C. § 20510(a). Plaintiff did not follow any of these steps. Instead, Plaintiff has demanded that Maine provide nearly a million voters' driver's license numbers, dates of birth, and social security

---

[4] Instead, Congress authorized parallel enforcement by private plaintiffs and the Attorney General to ensure broad compliance with the NVRA's goals. 52 U.S.C. § 20510(a) & (b); *ACORN v. Miller*, 129 F.3d 833, 836 (6th Cir. 1997) (explaining that when a state fails to comply with the NVRA, either the Attorney General or a private individual may bring suit).

numbers so that it can amass huge amounts of data. Plaintiff's enforcement authority does not entitle it to this relief in this case because this is not an enforcement action, it is (at most) a public disclosure action.

### D. Maine's unredacted voter registration list is not necessary to determine Maine's compliance with the NVRA's list-maintenance requirements.

Even if the NVRA provided some mechanism for the Attorney General to obtain records based on an alleged violation, Count I would nonetheless fail. The facts alleged do not indicate that Maine has violated the NVRA and, even if the Complaint alleged investigable violations, sensitive personal data is not necessary to assess Maine's compliance with the NVRA's list-maintenance requirements. The NVRA requires states to implement "a *general program* that makes a *reasonable effort* to remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(a)(4) (emphasis added). Courts evaluating NVRA list-maintenance compliance have focused on whether a state follows the statute's required procedures, rather than on the examination of voters' personal data. *Pub. Int. Legal Found. v. Benson*, 136 F. 4th 613, 627-28 (6th Cir. 2025) (noting that whether a state "makes a reasonable effort can also be demonstrated through basic statistical evidence").

Plaintiff does not explain why it needs access to driver's license numbers, dates of birth, and social security numbers to conduct the thorough evaluation of Maine's list-maintenance procedures that others, including courts, regularly conduct through reference to data that actually describes such programs.[5] And more importantly, Defendants have already provided Plaintiff with responses to its questions about the EAVS data and other pertinent information regarding Maine's

---

[5] In her initial requests for this data, the Attorney General alleged inadequacies in Maine's EAVS responses, but her description of the EAVS data was not accurate and her letter did not explain how sensitive voter data would address her purported concerns. *See* LWVME Opp'n Mot. Show Cause at 8 (detailing USDOJ's reliance on Maine's EAVS data).

NVRA compliance. Compl. ¶ 36-43, 51; Ex. A. Because driver's license numbers, birth dates, and social security numbers are irrelevant to determining whether Maine has satisfied the NVRA's requirements that it conducts a reasonable, general program of list-maintenance, Count I fails and should be dismissed.

### III.    Count II should be dismissed because HAVA does not compel Maine to disclose an unredacted voter list.

The Complaint fails to state a claim under Count II because HAVA does not afford Plaintiff access to Maine's unredacted voter file. Just like the NVRA, HAVA contains an enforcement provision without any reference to disclosure of the voter file, much less a voter file complete with driver's license numbers, dates of birth, and partial social security numbers. And HAVA contains *no* provision that requires states to provide Plaintiff, or anyone else, election data.

Section 21111 of HAVA authorizes the Attorney General to "bring a civil action against any State . . . as may be necessary" for the limited purpose of "carry[ing] out the uniform and nondiscriminatory election technology and administration requirements" set forth in certain sections of HAVA, including the list-maintenance requirements detailed in 52 U.S.C. § 21083(a). 52 U.S.C. § 21111. Plaintiff alleges that it is unable to "determine[] Maine's compliance with the list maintenance requirements of HAVA" absent "the current electronic copy of Maine's computerized statewide voter registration list, with all fields, including each registrant's full name, date of birth, residential address, and either their state driver's license number or the last four digits of their Social Security number." Compl. ¶ 63. But Plaintiff cannot point to any part of HAVA— or any legal authority—that gives it the power to demand the full, unredacted voter file from states before even initiating an enforcement suit.[6] No such authority exists: a basic enforcement provision

---

[6] LWVME does not concede that an unredacted voter file is necessarily within the scope of discovery for a HAVA enforcement action, nor that even if an unredacted file were to be produced, that it should not be subject to a protective order or other similar mechanism.

does not implicitly include the authority to force production of records, especially those that must be kept private under law. *See supra* Background II(B); 52 U.S.C. §§ 20701, 20703.

Moreover, a static, unredacted copy of the Maine voter registration list is not necessary—or even useful—to determine whether Maine is complying with HAVA's list-maintenance requirements because a snapshot does not demonstrate the procedures by which Maine maintains the list. Plaintiff articulates two reasons why it needs the static voter list to ensure that Maine is complying with HAVA, but neither holds water. *First*, Plaintiff claims that, absent Maine's unredacted voter file, it is unable to evaluate whether "duplicate names are eliminated from the computerized list pursuant to 52 U.S.C. § 21083(a)(2)(B)," Compl. ¶¶ 62-63 (internal quotations omitted), but Maine has already explained in detail its processes for determining whether a registration is a duplicate and for removing duplicate names from the Qualified Voter File. *See* ECF No. 1-2. *Second*, Plaintiff argues that it needs the list to evaluate whether the Maine is in compliance with 52 U.S.C. § 21083(a)(5)(A). Although Plaintiff characterizes Section 21083(a)(5)(A) as containing "list maintenance requirements," Compl. ¶ 63, it does not. Section 21083(a)(5)(A) instead requires voter registration applications to request certain identifying information such as a driver's license number or last four digits of a social security number. *See* 52 U.S.C. § 21083(a)(5)(A)(i). Maine's voter registration application is publicly available and requires submission of the requisite information. *See Maine Voter Registration Application*, https://www.maine.gov/sos/sites/maine.gov.sos/files/content/assets/Voter-20Registration-20Card-20--20Rev-201-25-20Fillable.pdf (last visited Dec. 5, 2025). Plaintiff does not explain why it needs access to individual voter data to determine whether Maine is complying with these requirements or why the information that Maine has already provided is insufficient to demonstrate its compliance. Because Maine's voter registration application complies with Section

21083(a)(5)(A), that provision cannot form the basis for Plaintiff's demand.

No other provision of HAVA requires disclosure of Maine's unredacted voter file. Unlike the NVRA, HAVA contains no provision under which Plaintiff (or the public) may request records. The NVRA was already in place when Congress passed HAVA, *see supra* Background II(B), and HAVA's repeated invocation of the NVRA demonstrates that "Congress knew how to reference the NVRA." *Bellito*, 935 F.3d at 1202. Congress chose not to incorporate the NVRA's disclosure provision or to craft one specific to HAVA. As a result, no provision of HAVA requires Maine to produce the detailed voter information that Plaintiff has requested.

## IV. Count III should be dismissed because the request for Maine's unredacted voter registration list exceeds the Attorney General's authority under the Civil Rights Act.

This Court should dismiss Count III of the Complaint because Plaintiff fails to state a claim for records under the CRA. The Complaint is devoid of factual allegations that explain how driver's license numbers, dates of birth, and partial social security numbers will help serve the Attorney General's purported goal: to determine Maine's compliance with the list-maintenance processes outlined in the NVRA and HAVA. *Supra* Argument Sections II-III.

Section 303 of the CRA requires the Attorney General to provide "a statement of the basis and the purpose" for records she demands. 52 U.S.C. § 20703. While the statute does not provide a definition of basis, the plain language suggests that "basis" is the statement describing the Attorney General's belief that federal civil rights law has been violated, and the statement of "purpose" must explain how the requested record would help determine if a violation occurred.[7]

---

[7] While *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), is not binding on this Court, the case properly recognizes that a statement of basis and purpose is required under the CRA. *Kennedy*'s assessment that the Attorney General must provide a "statement of basis and purpose" accurately reflects the language of the CRA, but the case's discussion of the proper procedure to enforce such a demand is likely no longer good law and, in any event, not binding on this Court. *See* LWVME Opp'n Mot. Show Cause at Section I.

The basis and purpose requirements of the CRA are safeguards that protect against an unjustified fishing expedition for voter data. *See State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960) ("Title III provides—if properly applied and enforced—an effective means whereby preliminary investigations of registration practices can be made in order to determine whether or not such practices conform to constitutional principles."), *aff'd sub nom.*, *Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961); *see also In re Gordon*, 218 F. Supp. 826, 827 (S.D. Miss. 1963) ("[T]his Act merely provides for a limited exploration and discovery as to the validity of the election processes employed and pursued in such Federal elections after May 6, 1960."). For example, the United States would not be able to use the CRA to obtain voting records because it wanted to verify taxpayer addresses.

These safeguards also accord with those applied in analogous situations. In the related context of administrative subpoenas, courts have found that the test of judicial enforcement of an administrative subpoena includes an evaluation of whether the subpoena is issued for a proper purpose and that the information sought is relevant to that purpose. *See United States v. Sturm, Ruger & Co., Inc.*, 84 F.3d 1, 4 (1st Cir. 1996).

Here, Plaintiff's Complaint fails to plausibly establish that the Attorney General has provided an adequate statement of the basis and purpose for her demands. The Complaint contains a single barebones paragraph to address the statutory requirements necessary to obtain certain records under the CRA. That paragraph alleges that USDOJ's "August 18 Letter also noted that the CRA empowers the Attorney General to request records" and "demanded pursuant to the CRA, 'an electronic copy of Maine's complete and current VRL. The purpose of the request is to ascertain Maine's compliance with the list maintenance requirements of the NVRA and HAVA.'" *See* Compl. ¶ 49. The Complaint, like the letters the Attorney General previously sent Maine, fails

to provide any "basis" for why the Attorney General believes that Maine has not complied with the list-maintenance requirements of the NVRA and HAVA.

Further, nowhere in the Complaint does the Attorney General explain the "purpose" of seeking the unredacted information here—i.e., why driver's license numbers, dates of birth, and partial social security numbers are necessary for the Attorney General to determine compliance with the NVRA and HAVA's list-maintenance requirements. In fact, as explained above, driver's license numbers, dates of birth, and social security numbers are not necessary for that analysis. *See* LWVME Opp'n Mot. Show Cause at 7-8 (detailing the pretextual and insufficient nature of the Attorney General's purported purpose for seeking sensitive records). The Attorney General cannot have a legally recognizable purpose for this information because it will not help her achieve her purported goal of assessing NVRA and HAVA compliance.[8]

Plaintiff's failure to provide an adequate basis and purpose is unsurprising, because its purpose is plainly not to evaluate compliance with the list-maintenance provisions of the NVRA or HAVA, but to sweep up sensitive data of tens of millions of voters from Maine and other states that can be used for any number of undisclosed and opaque purposes. In stark contrast to previous, targeted demands under the CRA, the Attorney General has made the same request for sensitive voter data to at least 40 states, and thus far sued 18 states and two counties that have not complied with its full demands.[9] Demonstrating the overbreadth of its efforts, she has even demanded

---

[8] It is not clear that the CRA's authority reaches this private, sensitive information, and Maine also protects this information and removes it from the public voter roll under state law. *See Kennedy*, 306 F.2d at 231 ("We think two things are of great importance in dealing with this problem. First, we are not discussing confidential, private papers and effects. We are, rather dealing with public records which ought ordinarily to be open to legitimate reasonable inspection."); *Pub. Int. Legal Found., Inc.*, 92 F.4th at 56 (the NVRA public disclosure provision does not supersede state laws that protect sensitive data on the state voter roll).

[9] Kaylie Martinez-Ochoa et al., *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. (Aug. 28, 2025), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information; *United States v. Oregon*, No. 6:25-cv-01666 (D. Or. filed Sep. 16, 2025); *United States v. Benson*, No. 1:25-cv-01148 (W.D. Mich. filed Sep. 25, 2025); *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. filed Sep. 25, 2025); *United States v. Simon*, No. 0:25-cv-03761 (D. Minn. filed Sep. 25, 2025); *United States v. Scanlan*, No. 1:25-

Wyoming's unredacted file under the NVRA, even though Wyoming is exempt from the NVRA.[10]

Nor has Plaintiff attempted to show that it believes all 40 states are violating the NVRA's and

HAVA's list-maintenance provisions. Plaintiff improperly seeks to use the CRA as an unlimited

tool to compile and consolidate voter data, rather than to protect the right to vote. *See In re Gordon*,

218 F. Supp. at 827 (CRA is not an "unlimited discovery device which may be employed and used

without restraint"). Because the Complaint does not include sufficient factual allegations to

plausibly assert that Maine has violated the CRA, Count III must be dismissed.

## CONCLUSION

For the reasons stated above, Intervenor League of Women Voters of Maine asks that the

Court grants this motion to dismiss all counts of the Complaint.

December 12, 2025                          Respectfully submitted,

                                          /s/ *Alexis Grady*

                                          Allan K. Townsend
                                          Johnson & Webbert, LLP
                                          1 Bowdoin Mill Island, Suite 300
                                          Topsham, ME 04086
                                          Tel: (207) 623-5110
                                          Fax: (207) 622-4160
                                          allan@work.law

---

cv-00371 (D.N.H. filed Sep. 25, 2025); *United States v. Pennsylvania*, No. 2:25-cv-01481 (W.D. Pa. filed Sep. 25, 2025); *United States v. Page*, No. 8:25-cv-01370-DOC-ADS (C.D. Cal. filed June 25, 2025); *United States v. Bd. of Elections of the State of New York*, No. 1:25-cv-01338 (N.D.N.Y. filed Sep. 25, 2025); *United States v. Demarinis*, No. 1:25-cv-03934 (D. Md. filed Dec. 1, 2025); *United States v. Copeland Hanzas*, No. 2:25-cv-00903 (D. Vt. filed Dec. 1, 2025); *United States v. Albence*, No. 1:25-cv-01453 (D. Del. filed Dec. 2, 2025); *United States v. Toulouse Oliver*, No. 1:25-cv-01193 (D.N.M. filed Dec. 2, 2025); *United States v. Amore*, No. 1:25-cv-639 (D.R.I. filed Dec. 2, 2025); *United States v. Hobbs*, No. 3:25-cv-06078 (W.D. Wash. filed Dec. 2, 2025); *United States v. Nago*, 1:25-cv-00522 (D. Haw. Dec. 11, 2025); *United States v. Griswold*, 1:25-cv-03967 (D. Colo. Dec. 11, 2025).

[10] Letter from Harmeet K. Dhillon to the Hon. Chuck Gray (Aug. 14, 2025), https://www.brennancenter.org/media/14549/download/wyoming_08.14.2025_doj%20letter_0.pdf?inline=1 ("We have requested Wyoming's VRL to assess your state's compliance with the statewide VRL maintenance provisions of the National Voter Registration Act ('NVRA'), 52 U.S.C. § 20501, *et seq*."); *but see* The National Voter Registration Act of 1993 (NVRA), U.S. Dep't of Justice, Civil Rights Division (updated Nov. 1, 2024), https://www.justice.gov/crt/national-voter-registration-act-1993-nvra.

Brent Ferguson
Daniel S. Lenz
Sejal Jhaveri
Renata O'Donnell
Heather Szilagyi
Alexis Grady
Kate Hamilton
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
Tel: (202) 736-2200
Fax: (202) 736-2222
bferguson@campaignlegalcenter.org
dlenz@campaignlegalcenter.org
sjhaveri@campaignlegalcenter.org
rodonnell@campaignlegalcenter.org
hszilagyi@campaignlegalcenter.org
agrady@campaignlegalcenter.org
khamilton@campaignlegalcenter.org

Maura Eileen O'Connor
Brennan Center for Justice
at NYU School of Law
777 6th St. NW, Ste. 1100
Washington, DC 20001
Tel: (202) 249-7190
oconnore@brennan.law.nyu.edu

Andrew B. Garber
Brennan Center for Justice
at NYU School of Law
120 Broadway, Suite 1750
Tel: (646) 292-8310
Fax: (212) 463-7308
garbera@brennan.law.nyu.edu

*Counsel for Intervenor League of Women Voters of Maine*

19

**CERTIFICATE OF SERVICE**

I, Alexis Grady, do hereby certify that on this 12th day of December, 2025, I caused a true and correct copy of the foregoing document to be served upon all counsel of record registered with the Court's ECF system, by electronic service via the Court's ECF transmission facilities.

Date: December 12, 2025                    Signature: /s/*Alexis Grady*