## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 1:25-cv-468-LEW |
| v. | |
| SHENNA BELLOWS, in her official capacity as the Secretary of State of Maine, and the STATE OF MAINE., | |
| Defendants. | |

## INTERVENORS JOHN SCHNECK AND MARPHEEN CHANN'S OPPOSITION TO MOTION FOR ORDER TO SHOW CAUSE

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .......................................................................................................... 1

BACKGROUND ............................................................................................................ 2

ARGUMENT ................................................................................................................ 3

I.   The Federal Rules govern DOJ's claims, including under the Civil Rights Act. ..................... 3

II.  The pending motions to dismiss are the proper vehicle for resolving this case. ..................... 7

CONCLUSION ............................................................................................................. 10

## TABLE OF AUTHORITIES

**Pages**

**Cases**

*Beddall v. State St. Bank & Tr. Co.,*
    137 F.3d 12 (1st Cir. 1998) ................................................................. 8

*CFPB v. Accrediting Council for Indep. Colls. & Schs.,*
    854 F.3d 683 (D.C. Cir. 2017) ............................................................ 7

*CFPB v. Source for Pub. Data, L.P.,*
    903 F.3d 456 (5th Cir. 2018) .............................................................. 7

*Colon-Marrero v. Conty-Perez,*
    2015 WL 3508142 (D.P.R. June 4, 2015) .......................................... 4

*Correa-Martinez v. Arrillaga-Belendez,*
    903 F.2d 49 (1st Cir. 1990) ................................................................ 8

*Fitzpatrick v. Teleflex, Inc.,*
    630 F. Supp. 2d 91 (D. Me. 2009) ..................................................... 8

*Friday v. United Parcel Serv. of Am., Inc.,*
    2006 WL 648758 (N.D. Ga. Mar. 10, 2006) ................................... 10

*In re Admin. Subpoena No. 25-1431-019 ,*
    No. 1:25-MC-91324-MJJ, 2025 WL 2607784 (D. Mass. Sept. 9, 2025) ......................... 7

*In re Symka, Inc.,*
    518 B.R. 888 (Bankr. D. Colo. 2014) ................................................ 9

*In re Tracy,*
    106 F.2d 96 (2d Cir. 1939) ................................................................. 9

*Kennedy v. Lynd,*
    306 F.2d 222 (5th Cir. 1962) ........................................................ 5, 6

*Pub. Int. Legal Found., Inc. v. Bellows,*
    92 F.4th 36 (1st Cir. 2024) ........................................................... 4, 10

*Pub. Int. Legal Found., Inc. v. Bellows,*
    664 F. Supp. 3d 153 (D. Me. 2023) ................................................... 4

*Sommerfield v. City of Chicago,*
    252 F.R.D. 407 (N.D. Ill. 2008) ...................................................... 10

*Sugarloaf Funding, LLC v. U.S. Dep't of Treasury*,
    584 F.3d 340 (1st Cir. 2009) ........................................................................ 7

*U.S. SEC v. Hyatt*,
    621 F.3d 687 (7th Cir. 2010) ........................................................................ 9

*United States v. Powell*,
    379 U.S. 48 (1964) ................................................................................... 5, 6

*United States v. Rollnick*,
    33 F. Supp. 863 (M.D. Pa. 1940) .............................................................. 10

*Velez v. Awning Windows, Inc.*,
    375 F.3d 35 (1st Cir. 2004) ........................................................................ 8

**Statutes**

26 U.S.C. § 7604 .............................................................................................. 6

52 U.S.C. § 20507 ............................................................................................ 6

52 U.S.C. § 20510 ............................................................................................ 4

52 U.S.C. § 20705 ..................................................................................... 1, 5, 6

21-A M.R.S.A. § 196-A ................................................................................... 6

**Federal Rules**

Fed. R. Civ. P. 1 .......................................................................................... 1, 4

Fed. R. Civ. P. 12 ............................................................................................ 2

Fed. R. Civ. P. 81 ............................................................................................ 4

**INTRODUCTION**

The Federal Rules of Civil Procedure lay out the typical lifecycle of a civil action: start with Rule 12(b) motions and then—if Plaintiffs have stated a claim and established jurisdiction—proceed to discovery, summary judgment, and trial if necessary. Throughout that process, a defendant has multiple opportunities to test the legal and factual bases of the plaintiff's claims and to build any necessary record. The Federal Rules also provide familiar governing standards for courts to apply at each step, all with an eye toward the ordered and efficient resolution of disputes.

The U.S. Department of Justice ("DOJ") asks this Court to sweep all that aside and to instead put the onus on the *Defendants* to show cause at the very start of the case as to why DOJ should not immediately get the relief it seeks. That is not how civil litigation works. Nothing in the Federal Rules or the statutes underlying DOJ's claims authorize this departure from the regular course of proceeding or permit DOJ to short-circuit the Rules for its own convenience. And contrary to DOJ's suggestion, Title III of the Civil Rights Act of 1960 does not "displace" the Rules or create a "special statutory proceeding" when DOJ demands voting records. Indeed, the term "special statutory proceeding" appears nowhere in the Civil Rights Act, which merely states that district courts "shall have jurisdiction by appropriate process" to grant relief under that law. 52 U.S.C. § 20705. The Federal Rules set forth that process. *See* Fed. R. Civ. P. 1. Finding nothing in the text of Title III to support this theory, DOJ relies instead on a lone, out-of-circuit case arising out of Mississippi in 1962—but that case is distinguishable many times over, is displaced by intervening Supreme Court authority, and, in any event, cannot trump the Federal Rules.

The Court should reject DOJ's effort to leapfrog the prescribed stages of litigation it apparently finds bothersome and allow the action to unfold as prescribed by the governing Federal Rules—starting by resolving the pending motions to dismiss.

### BACKGROUND[1]

DOJ filed this suit on September 16, seeking to compel Maine to turn over its full statewide voter registration list without redacting sensitive information protected from disclosure by state law. *See* ECF No. 1 at 18. DOJ cites three federal statutes in support: the NVRA, HAVA, and the Civil Rights Act of 1960. None support DOJ's sweeping and novel demand, as Intervenors explain more thoroughly in their motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Far from supporting DOJ's claims, the NVRA and HAVA confirm that *states*—not DOJ—are responsible for creating and maintaining such voter lists and have reasonable discretion in how they do so; neither law compels states to produce unredacted copies of those lists to anyone, including the federal government. *See* Mot. to Dismiss Background § I; Argument §§ I–II, ECF No. 61. And the Civil Rights Act does not apply to internally generated state voter lists at all. *Id.* Argument § III. Nor can it be used as a blank check to permit the federal government to broadly demand the private data of every voter in the state purportedly to "ascertain" the state's compliance, not with the Civil Rights Act at all (which DOJ does not even attempt to allege has been substantively violated), but the NVRA and HAVA—entirely different statutes. *Id.* The State Defendants and other intervenors have also moved to dismiss, ECF Nos. 53, 54, and the motions will be fully briefed by January 16 pursuant to a schedule previously agreed to by all parties, including DOJ. *See* ECF No. 38. At that time, the Court will have before it a host of dispositive arguments that can—and should—resolve this suit.

DOJ asks the Court to effectively disregard all of that (and the Federal Rules that govern civil litigation in federal court) and "enter an Order directing the State of Maine and Secretary

---

[1] Intervenors' Motion to Dismiss further explains the background of this litigation and DOJ's wide-ranging demands for sensitive voter information in Maine and throughout the country.

Bellows to show cause why they have failed to produce the requested records." Mem. in Supp. of Mot. for Order to Show Cause at 9 ("Mem."), ECF No. 5-1. In support, DOJ claims that "the Civil Rights Act of 1960 displaces the Federal Rules of Civil Procedure" and instead authorizes a "special statutory proceeding" in which "Maine must show cause why it is not required to produce the voter-registration lists requested by the United States." *Id.* at 8. It further claims that the NVRA also "creates the same 'special statutory proceeding'" because it uses "materially identical language in requiring States to provide the Attorney General with records and paper relating to their administration of Federal elections." *Id.* Should Defendants be unable to "show" sufficient "cause" at the outset of this proceeding, before any discovery or any of the other steps that the Federal Rules have in place to ensure that Defendants have an opportunity to actually defend themselves in federal civil litigation, DOJ appears to believe that it should be immediately entitled to the ultimate relief that it seeks. In other words, DOJ seeks to supplant the ordinary litigation process and jump right to dispositive relief. Intervenors oppose DOJ's motion.

## ARGUMENT

The Federal Rules of Civil Procedure govern this civil action and provide a roadmap for how this case—just like nearly all other civil actions—must proceed. Nothing in the statutory text or Rules themselves support DOJ's contention that the Civil Rights Act "displaces" the Rules or authorizes a "special statutory proceeding." Nor does anything in the Rules authorize courts to award dispositive relief—and effectively final judgment—via show cause orders. The Court should thus deny DOJ's motion and permit this litigation to unfold under the normal course— starting with resolving the motions to dismiss DOJ's baseless claims.

## I.    The Federal Rules govern DOJ's claims, including under the Civil Rights Act.

The Court should reject DOJ's request to sweep aside the Federal Rules in this case. Those Rules "govern the procedure in *all civil actions and proceedings* in the United States district courts,

except as stated in Rule 81." Fed. R. Civ. P. 1 (emphasis added). This case is plainly just such an action. While Rule 81 sets out a narrow set of prescribed cases that are exempt from the ordinary rules—such as certain admiralty or bankruptcy actions—none involve the NVRA, HAVA, or Title III of the Civil Rights Act of 1960. *See* Fed. R. Civ. P. 81(a). Indeed, Rule 81(a)(5) affirms that the Federal Rules generally apply to actions involving a subpoena, "except as otherwise provided by statute, by local rule, or by court order in the proceedings"—a limited exception that does not apply here because the statutes underlying DOJ's claims do not authorize it to issue subpoenas for compliance. And, in any event, DOJ itself does not cite Rule 81(a)(5) in support of its motion for a show cause order. Accordingly, based on the plain text of Rule 1, this action must be governed by the Federal Rules of Civil Procedure, just like all other civil actions that lack special carveouts in statute or the Federal Rules themselves.

Nothing in the text of the NVRA, HAVA, or the Civil Rights Act of 1960 supports departing from the Federal Rules. The NVRA authorizes the Attorney General to "bring a civil action in an appropriate district court for such declaratory or injunctive relief as is necessary to carry out this chapter," 52 U.S.C. § 20510(a), but it makes no mention of exempting those actions from the Federal Rules. The same goes for HAVA. *See id.* § 21111 (authorizing the Attorney General to "bring a civil action against any State or jurisdiction in an appropriate United States District Court" for declaratory or injunctive relief under certain sections of HAVA). Indeed, district courts regularly hear NVRA and HAVA cases under the Federal Rules. *See, e.g.*, *Pub. Int. Legal Found., Inc. v. Bellows*, 664 F. Supp. 3d 153 (D. Me. 2023), *aff'd*, 92 F.4th 36 (1st Cir. 2024); *Colon-Marrero v. Conty-Perez*, No. 12-1749CCC, 2015 WL 3508142, at *1 (D.P.R. June 4, 2015), *aff'd sub nom. Colon-Marrero v. Velez*, 813 F.3d 1 (1st Cir. 2016). Despite the large volume of NVRA and HAVA cases in federal district courts, DOJ does not identify *any* that have

4

been resolved outside of the Federal Rules.[2] Intervenors are aware of none.

DOJ largely pins its request for a show cause order on the Civil Rights Act of 1960, claiming that statute "displaces" the Federal Rules and creates a "special statutory proceeding." Mem. at 8. But the Civil Rights Act similarly fails to justify departing from the Federal Rules. To the contrary, the statute merely assigns jurisdiction to hear Title III disputes to "[t]he United States district court for the district in which a demand is made," and provides that such courts may "by appropriate process" compel the production of covered records. 52 U.S.C. § 20705. Nothing in that unremarkable grant of jurisdiction says that Title III cases are exempt from the Federal Rules or immune from searching judicial review, as DOJ insists.

Tellingly, DOJ never bothers to point to any statutory text to support its argument that Title III displaces the Federal Rules or limits district courts to rubber stamping Title III requests. DOJ relies solely on a Fifth Circuit opinion from 1962 that describes an action to enforce Title III of the Civil Rights Act of 1960 as a "special statutory proceeding" with minimal judicial involvement. Mem. at 8 (quoting *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962)). But *Lynd*'s conclusion on that score finds no support in the statutory text and is fundamentally out of step with modern jurisprudence. Just two years after *Lynd*, the Supreme Court squarely rejected the Fifth Circuit's reasoning in *United States v. Powell*, 379 U.S. 48, 57–58 (1964), which concerned a government request for a district court to enforce a tax subpoena under a statute similar to Title III. *See id.* The Supreme Court held that to invoke the powers of a federal court to enforce the subpoena, the government must show its investigation "will be conducted pursuant to a legitimate purpose" and that "the inquiry may be relevant to the purpose," notwithstanding broad statutory language

---

[2] Since courts hearing NVRA claims consistently apply the Federal Rules to such claims, DOJ's argument that the NVRA must be read in parallel with the Civil Rights Act of 1960, Mem. at 8, cuts *against* their request for a special statutory proceeding for their Civil Rights Act claim.

underlying the subpoena in that case. *See id.* As *Powell* explained, "[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." *Id.* at 58 (noting "an abuse would take place if the summons had been issued for an improper purpose"). *Lynd*'s refusal to engage in judicial review of government document requests is thus simply not the law.[3]

For the same reasons, *Powell* also rebuffed the government's attempt to depart from the Federal Rules, holding instead that because the statute at issue "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply." *Id.* at 58 n.18. The jurisdictional provision in the subpoena statute interpreted by *Powell* closely parallels the Civil Rights Act of 1960. *Compare* 26 U.S.C. § 7604(a) ("[T]he United States district court for the district in which such person resides or is found *shall have jurisdiction by appropriate process* to compel such attendance, testimony, or production of books, papers, records, or other data." (emphasis added)), *with* 52 U.S.C. § 20705 ("The United States

---

[3] The facts before *Lynd* also differ starkly from those here. To start, there was no reason in *Lynd* to doubt that DOJ invoked Title III for a valid purpose. As the court explained, Title III's "clearest purpose[]" is to permit investigations "concerning infringement or denial of . . . voting rights." 306 F.2d at 228. In *Lynd*, DOJ was doing just that: demanding voter records from counties in Mississippi based on evidence of racial discrimination "with respect to registration and voting within your jurisdiction." *id.* at 231 n.6. In stark contrast, here DOJ purports to invoke Title III to "ascertain" whether Maine has complied with voter list maintenance obligations *under the NVRA and HAVA*, ECF No. 5-2 at 2—an unprecedented theory that has little to do with the concerns animating the Civil Rights Act. Indeed, DOJ seeks to jury-rig Title III to enforce statutes that were passed long after the Civil Rights Act, that have nothing to do with the denial of the right to vote based on race, and (as to the NVRA) have their own distinct disclosure rules enacted by Congress. *See* 52 U.SC. § 20507(i). Also unlike here, *Lynd* involved no question that the records sought fell within the scope of Title III. *See* Mot. Dismiss, Argument § III. Even *Lynd* acknowledged that if there *were* a "genuine dispute" about whether records sought fell under Title III, *then* the court must "be open for its determination." 306 F.2d at 226. And *Lynd* emphasized that DOJ in the case before it did *not* seek "confidential, private" records, *id.* at 231, whereas DOJ here demands sensitive voter information deemed "confidential" and protected from disclosure under Maine law. 21-A M.R.S.A. § 196-A(1).

district court for the district in which a demand is made . . .or in which a record or paper so demanded is located, *shall have jurisdiction by appropriate process* to compel the production of such record or paper." (emphasis added)). Even so, the Supreme Court made clear that claimants could not evade the Federal Rules under such a provision. The reasoning of *Powell*—which, unlike *Lynd*, binds this Court—forecloses any notion that Title III's simple jurisdictional grant and reference to "appropriate process" requires departing from the Federal Rules.

Since *Powell*, courts—including the circuit court that issued *Lynd*—have regularly engaged in meaningful judicial review of government document requests under the Rules. *E.g.*, *Sugarloaf Funding, LLC v. U.S. Dep't of Treasury*, 584 F.3d 340, 347–50 (1st Cir. 2009) (allowing summons recipient opportunity to rebut government's case); *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458–60 (5th Cir. 2018) (reversing order to enforce civil investigative demand after inquiry into the sufficiency of the purpose and basis of demand); *CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 690 (D.C. Cir. 2017) (rejecting "perfunctory" statement of purpose for civil investigative demand, reasoning agencies are "not afforded unfettered authority to cast about for potential wrongdoing" (internal quotation marks and citation omitted)); *In re Admin. Subpoena No. 25-1431-019*, No. 1:25-MC-91324-MJJ, 2025 WL 2607784, at *5 (D. Mass. Sept. 9, 2025) (quashing subpoena when DOJ "failed to show proper purpose" and rejecting notion that "the Government's self-proclaimed say-so" is sufficient to "preclude any form of judicial review"). Since nothing in its text exempts Title III enforcement actions from judicial review or the Federal Rules, there is no reason why Title III should be treated differently. The Court should reject DOJ's suggestion that Title III "displaces the Federal Rules of Civil Procedure." Mem. at 8.

## II.     The pending motions to dismiss are the proper vehicle for resolving this case.

Consistent with the above, the Court can and should resolve this case via the pending motions to dismiss, not through an improper show cause order. The Federal Rules provide for

motions to dismiss for a simple and sound reason: to "test[] the legal sufficiency of the complaint." *Fitzpatrick v. Teleflex, Inc.*, 630 F. Supp. 2d 91, 100 (D. Me. 2009). Motions to dismiss thus serve a crucial gatekeeping function: they are "the tiger patrolling the courthouse gate[]," guarding against legally defective claims. *Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 52 (1st Cir. 1990), *overruled in part on other grounds by Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61 (1st Cir. 2004). Accordingly, "the drafters of the Civil Rules" "envisioned Rule 12(b)(6) motions as a swift, uncomplicated way to weed out plainly unmeritorious cases." *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998).

Following these Rules, Intervenors and the State Defendants have each timely moved to dismiss DOJ's complaint for failure to state a claim under Rule 12(b)(6). As explained more fully in those motions, DOJ asserts novel authority to compel the production of an unredacted copy of Maine's statewide voter registration list, without any valid statutory basis to do so. *See* Mot. Dismiss Argument § I. In light of the fatal legal deficiencies in DOJ's complaint, resolving its motion to show cause first would get things backwards, depriving the Intervenors and State Defendants of their opportunity to test the legal sufficiency of DOJ's claims at the outset, as the Rules envision. The motions to dismiss are thus the proper mechanism to resolve DOJ's claims.[4]

In contrast, DOJ's request for a show cause order that effectively grants its requested relief in this lawsuit is simply not authorized by the Federal Rules. In fact, the Federal Rules of Civil Procedure were enacted in part to *supplant* proceeding by show cause orders. Though such orders

---

[4] Even if the Court denied the motions to dismiss in whole or in part, the next step would be to permit discovery on DOJ's claims, including its assertions regarding its intended uses of the data it seeks—which are contradicted by public reporting, *see* Mot. to Dismiss, Background § II–III— and its dubious allegation that it would abide by federal privacy laws. Granting DOJ the final relief it seeks before discovery occurs would be premature. *See Velez v. Awning Windows, Inc.*, 375 F.3d 35, 39 (1st Cir. 2004) ("[T]rial courts should refrain from entertaining summary judgment motions until after the parties have had a sufficient opportunity to conduct necessary discovery.").

were once a common feature of federal practice, the Federal Rules explicitly "declined to incorporate" such "burdensome" show cause procedures into the "modern procedural code." *U.S. SEC v. Hyatt*, 621 F.3d 687, 696 (7th Cir. 2010). For good reason: Show cause orders tended to have the effect of "shifting the burden" to the "target" of the order and "create[d] the appearance that the Court has evaluated allegations made by the applicant—without an opportunity for input from the other party—and adopt[ed] the applicant's position that a basis exists to require the target of the order to appear and explain himself to the Court." *In re Symka, Inc.*, 518 B.R. 888, 889–90 (Bankr. D. Colo. 2014). That is precisely what DOJ seeks here. But as one of the drafters of the Federal Rules explained, show cause orders gave an "unnecessary appearance of irregularity," and the Rules sought to "limit to a minimum these unnecessary formalities which take up the time of judges and add nothing of value to the proceedings." *In re Tracy*, 106 F.2d 96, 98 (2d Cir. 1939) (Clark, J., concurring); *see also* 5 Wright & Miller's Federal Practice & Procedure Civil § 1195 (4th ed.) ("Orders to show cause . . . are not generally provided for in the Federal Rules of Civil Procedure."). The Rules thus replaced show cause orders with now-familiar motions practice.

The limited exceptions where show cause orders remain in use under the Federal Rules plainly do not apply here. "Despite its obsolescence," the show cause procedure at times is used in civil contempt proceedings and other circumstances involving compliance with court orders. *Hyatt*, 621 F.3d at 695–96; *see also Symka*, 518 B.R. at 890 ("[B]ecause the entry of an order to show cause is an official act of the Court, it is most appropriately used to compel compliance with Court orders or procedures."). But "[w]here a party seeks to vindicate a private right, it will rarely be appropriate for the Court to insert itself into a private dispute at a preliminary stage by issuing an order to show cause." *Symka*, 518 B.R. at 890. Since that is just what DOJ seeks to do here, the "far better" course is to proceed under the ordinary Federal Rules. *Id.* DOJ's motion for an order

to show cause should therefore be not merely deferred pending resolution of the motions to dismiss, but denied outright as improper. *See Sommerfield v. City of Chicago*, 252 F.R.D. 407, 412 (N.D. Ill. 2008) (denying motion for show cause order, explaining "the motion neither cites nor refers to any of the Federal Rules of Civil Procedure"); *Friday v. United Parcel Serv. of Am., Inc.*, No. 1:04-CV-1351-TWT, 2006 WL 648758, at *2 (N.D. Ga. Mar. 10, 2006) (explaining "neither the Federal Rules of Civil Procedure nor this Court's Local Rules provide for 'show cause' hearings on dispositive motions"); *United States v. Rollnick*, 33 F. Supp. 863, 865 (M.D. Pa. 1940) ("[S]ince the effective date of the New Rules of Civil Procedure, rules to show cause have not been properly a part of civil practice.").

DOJ cannot argue that its desire to move quickly justifies proceeding via a show cause order. To start, a party's desire to move fast does not mean it gets to sweep aside the Federal Rules. Nor is there any greater need for speed here than in any other action seeking state voting records— a common subject of dispute in federal litigation. *E.g.*, *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024). Further, DOJ's actions belie any claimed need to move quickly. Shortly after filing the case, DOJ moved for a stay based on the lapse in federal appropriations. ECF No. 29. Once funding was restored on November 12, DOJ waited nine days—until November 21—to notify the Court and ask it to lift the stay. ECF No. 34. Then it moved for a briefing schedule under which Defendants' motion to dismiss would not be fully briefed until January 16, four months after DOJ sued. ECF No. 35. In fact, while the parties initially agreed to a quicker schedule, counsel for DOJ subsequently requested later deadlines. Accordingly, DOJ appears to want to proceed via a show cause order not for speed but rather to avoid litigation hurdles and discovery provided by the Federal Rules. The Court should not countenance such efforts.

## CONCLUSION

Intervenors request that the Court deny DOJ's motion for a show cause order.

December 12, 2025

Respectfully submitted,

*/s/ Elisabeth C. Frost*
Elisabeth C. Frost*
Christopher D. Dodge*
Branden D. Lewiston*
Tori Shaw*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW
Suite 400
Washington, DC 20001
Telephone: (202) 968-4490
efrost@elias.law
cdodge@elias.law
blewiston@elias.law
tshaw@elias.law

James G. Monteleone
**BERNSTEIN SHUR**
100 Middle Street/PO Box 9729
Portland, Maine 04104-5029
jmonteleone@bernsteinshur.com

*Appearing Pro Hac Vice

*Counsel for Intervenors John Schneck and Marpheen Chann*