# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>SHENNA BELLOWS, in her official capacity as the Secretary of State of Maine, and the STATE OF MAINE<br><br>    Defendants. | Case No. 1:25-CV-0468-LEW |

### *AMICUS CURIAE* BRIEF OF THE
### AMERICAN CIVIL LIBERTIES UNION OF MAINE

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................................... i
TABLE OF AUTHORITIES ............................................................................................................. ii
INTRODUCTION ............................................................................................................................. 1
INTERESTS OF *AMICUS CURIAE* ................................................................................................. 2
ARGUMENT ..................................................................................................................................... 3
   I.   THE UNITED STATES' DEMANDS EXCEED STATUTORY AUTHORITY AND ARE CONTRARY TO LAW .................................................................................................................. 3
      A.   The NVRA Allows for Redactions to Uphold the Fundamental Right to Vote and Harmonize State Privacy Laws ................................................................................................ 3
      B.   The United States' Claim Under the CRA Fails. ........................................................... 7
      C.   HAVA Does Not Provide for Data Disclosures. ......................................................... 12
CONCLUSION .............................................................................................................................. 13

## TABLE OF AUTHORITIES

**Cases**

*Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960) ......... 1

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) ..................... 6

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) ......................................... 8

*Coro, Inc. v. F.T.C.*, 338 F.2d 149 (1st Cir. 1964) ............................................ 9

*Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383 (2015) ............................. 12

*F.D.I.C. v. Wentz*, 55 F.3d 905 (3d Cir. 1995) .................................................. 9

*Gonzalez v. Arizona*, 677 F.3d 383 (9th Cir. 2012) .......................................... 7

*Greidinger v. Davis*, 988 F.2d 1344 (4th Cir. 1993) ........................................ 5

*In re Coleman*, 208 F. Supp. 199 (S.D. Miss. 1962) ........................................ 8

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) ............................................... 8, 11

*No Labels Party of Ariz. v. Fontes*, 142 F.4th 1226 (9th Cir. 2025) ................ 1

*Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022) .......................................... 6

*Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320 (N.D. Ga. 2016) ................ 5, 6

*Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012) ....... passim

*Pub. Int. Legal Found. v. Benson*, 136 F.4th 613 (6th Cir. 2025) .................... 10

*Pub. Int. Legal Found. v. Boockvar*, 431 F. Supp. 3d 553 (M.D. Pa. 2019) ... 5

*Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024) ............... 4, 5, 6, 11

*Pub. Int. Legal Found., Inc. v. Dahlstrom*, 673 F. Supp. 3d 1004 (D. Alaska 2023) ...... 4

*Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932 (C.D. Ill. 2022) ........... 4

*Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257 (4th Cir. 2021) ............. 4

*Sheetz v. Cnty. of El Dorado*, 601 U.S. 267 (2024) ......................................... 11

*Sugarloaf Funding, LLC v. U.S. Dep't of Treasury*, 584 F.3d 340 (1st Cir. 2009) ........ 9

*United States v. Powell*, 379 U.S. 48 (1964) .................................................... 9

*Yick Wo v. Hopkins*, 118 U.S. 356 (1886) ....................................................... 1

**Statutes**

52 U.S.C. § 20501 .............................................................................................. 1

52 U.S.C. § 20507 ................................................................................................................ 10

52 U.S.C. § 20507(a)(4) ............................................................................................... 7, 9, 10

52 U.S.C. § 20507(c)(1) .......................................................................................................... 9

52 U.S.C. § 20507(d)(1)(B) .................................................................................................. 10

52 U.S.C. § 20507(i) ............................................................................................... 3, 4, 6, 12

52 U.S.C. § 20701 .................................................................................................................. 1

52 U.S.C. § 20703 ..................................................................................................... 7, 8, 12

52 U.S.C. § 20901 .............................................................................................................. 1, 12

52 U.S.C. § 21083(a)(2)(A) .................................................................................................... 9

52 U.S.C. § 21083(a)(4)(A) .................................................................................................. 10

52 U.S.C. § 21085 ................................................................................................................ 10

52 U.S.C. § 21111 ................................................................................................................. 12

Me. Rev. Stat. Ann. tit. 21-A, § 196-a(1)(K) ........................................................................ 6

**Other Authorities**

Br. for the United States as Amicus Curiae, *Project Vote/Voting for Am., Inc. v. Long*,
   No. 11-1809 (4th Cir. Oct. 18, 2011) ................................................................................ 5

Br. for the United States as Amicus Curiae, *Pub. Int. Legal Found. v. Schmidt*,
   No. 23-1590 (3d Cir. Nov. 6, 2023) .................................................................................. 5

Br. for the United States as Amicus Curiae, *Pub. Int. Legal Found., Inc. v. Bellows*,
   No. 23-1361 (1st Cir. July 25, 2023) ............................................................................ 5, 7

H.R. Rep. No. 86-956 (1959) ............................................................................................ 1, 7

## INTRODUCTION

The right to vote is "of the most fundamental significance under our constitutional structure." *No Labels Party of Ariz. v. Fontes*, 142 F.4th 1226, 1231 (9th Cir. 2025). It is "preservative of all other rights" because it serves as a check against tyrannical rule while simultaneously ensuring the competition of ideas amongst our elected officials. *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886).

It is in this light that Congress has repeatedly legislated to protect the franchise, including through the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq*., the Help America Vote Act ("HAVA"), 52 U.S.C. § 20901 *et seq*., and the Civil Rights Act of 1960 ("CRA"), 52 U.S.C. § 20701 *et seq*. These statutes were all passed for the express purpose of ensuring that eligible Americans—especially racial minorities and voters with disabilities—have the opportunity to participate in free, fair, and secure elections. Congress designed the NVRA to limit "discriminatory and unfair registration laws and procedures" that restrict voter participation, particularly among racial minorities. 52 U.S.C. § 20501(a)(3). Similarly, HAVA was designed to help Americans vote by investing in election administration that would improve "accessibility and quantity of polling places" for those with disabilities and limited English proficiency. 52 U.S.C. § 20901(b)(1)(G). And the Department of Justice ("DOJ") itself explains that Title III of the CRA, its election records provision, was designed to "secure a more effective protection of the right to vote." U.S. Dep't of Justice, C.R. Div., *Federal Law Constraints on Post-Election "Audits"* (Jul. 28, 2021), https://perma.cc/74CP-58EH (citing *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960) and H.R. Rep. No. 86-956 (1959)).

The United States' demand for Maine's *unredacted* voter file—which contains sensitive personal information such as birth dates, driver's license numbers, and Social Security numbers from every voter in the state—undermines these statutes' core purposes and is contrary to law. To

1

be sure, the public disclosure of state voting records is important to ensure transparency and the accuracy of the voter rolls, especially by ensuring that citizens are not erroneously removed from the voter records. Yet releasing the State's voter records *without redaction* and for purposes far afield from protecting voter access would deter voter participation and undermine the right to vote. It would also compel the Maine Secretary of State to violate Maine's privacy law. As many courts have found, redacting sensitive personal information when releasing state voting records is essential to strike a balance between guaranteeing transparency in elections while also ensuring that voters have the assurance of confidentiality that they need to exercise their fundamental right to vote.

## INTERESTS OF *AMICUS CURIAE*

The American Civil Liberties Union is a nationwide, nonprofit organization that, since 1920, has sought to protect the civil liberties of all Americans, with 54 affiliates across the United States. The ACLU of Maine ("ACLU-ME") is the Maine affiliate. ACLU-ME has previously appeared in this Court, as both counsel and amicus, in cases raising significant questions about the meaning of the Constitution, its limitations on government power, and the breadth of rights it grants. ACLU-ME is committed to defending the Constitution and the Bill of Rights, and to extending their promises to all Mainers. With nearly 8,000 members across the state, ACLU-ME seeks to protect Maine voters whose rights would be infringed by the relief sought by the Plaintiff.

Amicus urges the Court to strike the required balance between transparency and voter privacy by dismissing the Complaint, which will allow the State to produce the appropriately redacted voter file.

# ARGUMENT

## I. THE UNITED STATES' DEMANDS EXCEED STATUTORY AUTHORITY AND ARE CONTRARY TO LAW.

The United States' demand for Maine's full and unredacted electronic voter file exceeds its statutory authority. Each of the relevant statutes strikes the required constitutional balance between interests in transparency and the protection of individual citizens' right to vote. Likewise, they reflect the constitutional structure that places authority over elections in the hands of the states in the first instance. The NVRA allows for redactions to harmonize transparency in elections and Maine citizens' right to vote. The CRA's disclosure clause requires that the federal government provide a sufficient statement of the basis and the purpose for any request for records, which Plaintiff fails to provide. Finally, HAVA contains no subpoena authority or records request provision at all. Nothing in these statutes justifies the government's demands for sensitive personal information of voters.

### A. The NVRA Allows for Redactions to Uphold the Fundamental Right to Vote and Harmonize State Privacy Laws.

Section 8(i) of the NVRA requires states to provide "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters" upon request. 52 U.S.C. § 20507(i). Anyone—including individual voters, groups that protect the right to vote, and government officials—has the same right to records under the NVRA. Voting rights advocates have consistently relied on the NVRA to investigate infringements on the right to vote, including whether election officials have improperly denied or cancelled voter registrations. *See, e.g.*, *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 333 (4th Cir. 2012) (nonprofit investigating improper rejection of voter registrations submitted by students at a historically Black university).

3

However, the information required to be disclosed under the NVRA has limits. Courts have consistently permitted—and in some instances required—states to redact sensitive personal data when disclosing information under the NVRA. Failure to do so can violate the fundamental right to vote protected by the Constitution.

### 1. Courts consistently permit or require redaction under the NVRA.

Given that the NVRA is silent as to how sensitive personal information should be treated during disclosure, 52 U.S.C. § 20507(i)(1), the Court must interpret the statute in a manner that does not unconstitutionally burden the right to vote. Federal courts throughout the country have consistently struck this balance, interpreting the "all records concerning" language in Section 8(i) to permit—and even in some cases require—redaction and the protection of confidential materials. As the First Circuit has noted, "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File," and as such, "the proper redaction of certain personal information in the Voter File can further assuage the potential privacy risks implicated by the public release of the Voter File." *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024); *see also Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 266-68 (4th Cir. 2021) (holding that the potential connection to ongoing criminal investigations and the possibility of erroneously labeling a voter as a noncitizen and subjecting them to public harassment warrants maintaining confidentiality of records). Other courts have consistently recognized that the NVRA disclosure provisions do not compel the release of sensitive information that is otherwise protected by federal or state laws, such as Maine's privacy law that is applicable here. *See, e.g.*, *N.C. State Bd. of Elections*, 996 F.3d at 264; *Pub. Int. Legal Found., Inc. v. Dahlstrom*, 673 F. Supp. 3d 1004, 1015–16 (D. Alaska 2023); *Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022), *clarified on denial of reconsideration*, No. 20-CV-3190, 2022 WL 1174099 (C.D. Ill. Apr. 20, 2022); *Pub. Int. Legal Found. v. Boockvar*, 431

F. Supp. 3d 553, 561–63 (M.D. Pa. 2019); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344–45 (N.D. Ga. 2016).

Indeed, the Fourth Circuit has found that redaction may be affirmatively required to the extent the disclosure of such sensitive material would "create[] an intolerable burden on [the constitutional right to vote] as protected by the First and Fourteenth Amendments." *Long*, 682 F.3d at 339 (citing *Greidinger v. Davis*, 988 F.2d 1344 (4th Cir. 1993)). The Court in *Long*, even while granting access to a state's voter registration applications for inspection and photocopying, ensured the redaction of Social Security numbers, which it found are "uniquely sensitive and vulnerable to abuse." *Id.* In coming to this conclusion, the Court emphasized that the NVRA reflected Congress's view that the right to vote was "fundamental," and that the unredacted release of records risked deterring citizens from registering to vote and thus created an "intolerable burden" on this fundamental right. *Id.* at 334, 339. As such, the public disclosure provisions of the NVRA must be interpreted to avoid this unconstitutional burden. *See id.*; *Bellows*, 92 F.4th at 56.

Plaintiff itself has stated—on multiple occasions—that the NVRA does not prohibit the States from redacting "uniquely sensitive information" when disclosing voting records. *See, e.g.*, Br. for the United States as Amicus Curiae, *Pub. Int. Legal Found., Inc. v. Bellows* ("United States Amicus Brief"), No. 23-1361 (1st Cir. July 25, 2023), 2023 WL 4882397 at *27–28; Br. for the United States as Amicus Curiae at 28, *Pub. Int. Legal Found. v. Schmidt*, No. 23-1590 (3d Cir. Nov. 6, 2023), https://perma.cc/3BQ9-36UJ ("States may redact certain information before disclosing Section 8(i) records."); Br. for the United States as Amicus Curiae, *Project Vote/Voting for Am., Inc. v. Long*, No. 11-1809 (4th Cir. Oct. 18, 2011), 2011 WL 4947283, at *11, 25–26.

As with any requester of records under the NVRA, the United States should be afforded access to the voting records contemplated under Section 8(i) of the NVRA. But federal court

5

precedent is clear that this access is not unfettered and instead must always be balanced against privacy protections that are vital to ensuring citizens retain their fundamental right to vote.

### 2. The NVRA does not preempt Maine law.

Contrary to the United States' about-face on this issue, there is no conflict between the NVRA and Maine's privacy law. Federal laws like the NVRA preempt state election laws only when there is an actual conflict, such that the two sets of law cannot be read consistently with one another. *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 9 (2013) (holding that the NVRA preempts state election law insofar as the two are inconsistent). *Nothing* in the NVRA requires that disclosed records be unredacted and/or include sensitive personal information like Social Security numbers, dates of birth, or driver's license numbers. The NVRA does not address how sensitive personal information should be treated when disclosing records, 52 U.S.C. § 20507(i)(1), but Maine law mandates that certain "highly sensitive personal information" is not to be disclosed. Me. Rev. Stat. Ann. tit. 21-A, § 196-a(1)(K); *see also generally Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022) ("The Supremacy Clause cannot be deployed to elevate abstract and unenacted legislative desires above state law.") (internal quotation marks omitted). As noted *supra*, Maine's privacy law is on all fours with the governing federal case law, which has both consistently found that redactions are appropriate to accommodate and harmonize state privacy laws while disclosing required documents under the NVRA, *see, e.g.*, *Kemp*, 208 F. Supp. 3d at 1344–45, and that redactions and preserving confidential information may even be required to protect the constitutional right to vote, *see, e.g.*, *Long*, 632 F.3d at 339; *Bellows*, 92 F.4th at 56.

Here, Plaintiff alleges that the information it seeks is "necessary for the Attorney General to determine if Maine" is complying with section 20507(a)(4). Compl. ¶ 58, Dkt. No. 1. But it does not allege why the extensive personal information—beyond what is ordinarily accessible under the NVRA—is necessary to determine whether Maine has made a reasonable effort to remove

6

ineligible voters by reason of death or change in residence. That explanation is critical given that the NVRA mandates only a "reasonable effort" in conducting list maintenance, 52 U.S.C. § 20507(a)(4), not that specific individual voters must be removed from Maine's voter lists.

Maine's privacy law and the NVRA should be read as part of a "single procedural scheme." *Gonzalez v. Arizona*, 677 F.3d 383, 394 (9th Cir. 2012). If Plaintiff is permitted to engineer a false conflict between the two, it will force the Secretary of State to violate Maine law and potentially the federal Constitution, all while exceeding both the purpose of and statutory authority provided by the NVRA. *See* United States Amicus Brief, 2023 WL 4882397 at *27–28 (arguing Section 20507(i) does not compel production of unredacted social security numbers and driver's license numbers as state limits on voter information are not preempted when they impact uses that "would not further the NVRA's purposes").

### B. The United States' Claim Under the CRA Fails.

Congress enacted the public records provisions in Title III of the CRA to facilitate investigations of civil rights violations preventing eligible citizens from voting due to discrimination. H.R. Rep. No. 86-956 at 7 (1959) (indicating "the purpose of Title III is to provide a more effective protection of the right of all qualified citizens to vote without discrimination on account of race"). Yet, as under the NVRA, the Attorney General's access to these records is not unbounded. If the Attorney General makes a demand for records, she must provide "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703.

Plaintiff's request here is contrary to the CRA for at least two distinct reasons. *First*, the United States fails to offer a statutorily sufficient statement in support of its records requests because it provides no basis to conclude that unredacted records are needed to undertake an assessment of Maine's compliance with the list maintenance provisions of the NVRA or HAVA. *Second*, to the extent Plaintiff is entitled to any records under the CRA, those records must

7

similarly be redacted—as they must be for requests under the NVRA—to vindicate the privacy and constitutional rights of Maine voters.

### 1. Plaintiff's demand for records fails to meet the requisite statutory requirements.

Plaintiff's requests to Maine fail to provide "a statement of the basis and the purpose," 52 U.S.C. § 20703, sufficient to support disclosure of the unredacted voter file. The United States alleges that the "purpose of [its] request" to the state seeking "an electronic copy of Maine's complete and current VRL" was to "ascertain Maine's compliance with the list maintenance requirements of the NVRA and HAVA." Compl. ¶ 49. Neither the Complaint nor the DOJ letter that invoked Title III supply a sufficient basis or purpose for supporting the records request.

"Basis" and "purpose" under Title III have consistently been treated as distinct concepts. *Kennedy v. Lynd*, 306 F.2d 222, 229 n.6 (5th Cir. 1962) (showing that basis was the underlying information providing the grounds for the complaint); *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962) (same), *aff'd sub nom.*, *Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963). The United States' failure to articulate both a sufficient basis and purpose underlying its request for the unredacted voter file is enough to invalidate the CRA claim. Contemporaneous case law immediately following the enactment of Title III shows that "basis" is the statement for why the Attorney General believes there is a violation of federal civil rights law and the "purpose" explains how the requested records would help determine if there is a violation of the law. *Lynd*, 306 F.2d at 229 n.6. The basis and purpose requirements under the CRA are critical safeguards, so that the statute cannot be used as a fishing expedition to obtain records for either speculative or unrelated reasons. The statutory basis and purpose requirements are not perfunctory but require a specific statement as to reason for requesting the information and how that information will aid in the investigatory analysis.

In the context of administrative subpoenas, an analogous power by which federal agencies obtain records in service of investigations, courts have found that the test of judicial enforcement of such subpoenas includes an evaluation of whether the investigation is "conducted pursuant to a legitimate purpose," *Sugarloaf Funding, LLC v. U.S. Dep't of Treasury*, 584 F.3d 340, 345 (1st Cir. 2009) (citing *United States v. Powell*, 379 U.S. 48, 57 (1964)), and that such subpoenas "are not licenses for extended fishing expeditions," *Coro, Inc. v. F.T.C.*, 338 F.2d 149, 153 (1st Cir. 1964). Indeed, courts have explained that such a purpose requirement ensures that the information sought is relevant to the inquiry and not unduly burdensome. *See, e.g.*, *F.D.I.C. v. Wentz*, 55 F.3d 905, 908 (3d Cir. 1995) (reciting requirements for investigation pursuant to an administrative subpoena). As such, even if some portion of the voter file were necessary to investigate "Maine's compliance with the list maintenance requirements of the NVRA and HAVA," Compl. ¶ 49, the United States has provided an insufficient basis to support the assertion that the full unredacted voter file is necessary to carry out this purpose.

Plaintiff has provided no basis why it believes Maine's list maintenance procedures violate the NVRA or HAVA. Moreover, even if it had provided a proper "basis" for its demand, Plaintiff fails to explain any connection between its purported "purpose" and the vast scope of its records request here, seeking the full and unredacted Maine statewide voter file. It does not attempt to explain why unredacted voter files are necessary to determine whether Maine has undertaken a "reasonable effort to remove the names of ineligible voters," 52 U.S.C. § 20507(a)(4), likely because those files are not in fact necessary. A single snapshot of a state's voter list does not provide enough information to determine if the state has made a "reasonable effort" to remove ineligible voters. The NVRA and HAVA both leave the mechanisms for conducting list maintenance within the discretion of the State. *See id.* § 20507(a)(4); (c)(1); § 21083(a)(2)(A). The

9

procedures carried out by a state or locality establish its compliance; the unredacted voter file does not. Even were Plaintiff to identify voters who had moved or died on Maine's voter list, it does not explain how this would amount to Maine failing to comply with the reasonable efforts required by the NVRA or HAVA. *See, e.g.*, *Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 624–27 (6th Cir. 2025).

Further, compliance with the NVRA and HAVA also cannot provide the true basis and purpose for the data requests at issue here based on the United States' own more recent statements to States in connection with the requests. In particular, the United States represented in a December 4 hearing in the Central District of California in *United States v. Weber*, No. 25-cv-09149, that it has recently sought for a number of States to sign a memorandum of understanding ("MOU") regarding its requests for statewide voter files. And far from ensuring compliance with the NVRA and HAVA, this MOU insisted upon by the United States runs afoul of those statutes. *See* Ex. A, U.S. Dep't of Just., Civ. Div., Confidential Mem. of Understanding ("MOU").

As noted, the NVRA and HAVA require a state to conduct a "reasonable effort" to remove ineligible voters from the rolls, 52 U.S.C. § 20507(a)(4); § 21083(a)(4)(A), and indeed the NVRA itself is structured so that potentially ineligible voters must necessarily stay on the rolls for two election cycles so as to limit the likelihood of a state removing eligible voters by mistake, *id*. § 20507(d)(1)(B). But the MOU indicates multiple contemplated violations of those statutory requirements. First, the United States seeks to place authority to identify supposed ineligible voters in the hands of the federal government, directly contrary to statutory text, 52 U.S.C. § 21085 (methods of complying with HAVA "left to the discretion of the State"). Ex. A at 2, 5. Second, its substantive terms seek to compel states to remove supposedly ineligible voters "within forty-five (45) days," Ex. A at 5, in a manner that would violate multiple protections of the NVRA, 52 U.S.C.

10

§ 20507. This now-public memorandum, which was apparently made public by officials from the State of Colorado, demonstrates that Plaintiffs' supposed purpose is not compliance with federal law but aggrandizing authority to a federal agency that is contrary to federal statutes.

Plaintiff's invocation of Title III of the CRA does not provide a sufficient "statement of the basis and the purpose therefor," and thus does not comply with the CRA.

### 2. Any records disclosed under the CRA should be redacted to protect the constitutional rights of the voter

Even had the United States provided a valid basis and purpose sufficient to support its demands—which it did not—any sensitive personal voter information would still be subject to redaction. Just like the NVRA, the text of Title III does not prohibit redactions to ensure compliance with both state law and the Constitution. *See supra* Part A; *Long*, 682 F.3d at 339; *Bellows*, 92 F.4th at 56. Indeed, the limited case law considering records requests under the CRA expressly acknowledged that courts retain the "power and duty to issue protective orders," *Lynd*, 306 F.2d at 230, such as the redaction of sensitive fields that courts have consistently determined are entitled to protection from disclosure. The same privacy and constitutional concerns that federal courts have found warrant redactions under NVRA records requests apply equally to requests for the same records under the CRA. *Cf. Sheetz v. Cnty. of El Dorado*, 601 U.S. 267, 281–82 (2024) (Gorsuch, J., concurring) ("[O]ur Constitution deals in substance, not form. However the government chooses to act . . . it must follow the same constitutional rules."). Thus, even were Plaintiff entitled to records under Title III, the birth month and day, Social Security number, and driver's license number should similarly be redacted. No matter the statutory mechanism, conditioning the right to vote on the release of voters' sensitive private information "creates an intolerable burden on that right." *Long*, 682 F.3d at 339.

11

### C. HAVA Does Not Provide for Data Disclosures.

Unlike the NVRA and CRA, HAVA does not have a disclosure provision. *Compare* 52 U.S.C. § 20507(i)(1) (NVRA requiring states to make certain voting records available for public inspection), *and* 52 U.S.C. § 20703 (CRA authorizing the Attorney General to inspect, reproduce, or copy election records for enforcement purposes), *with* 52 U.S.C. § 20901 *et seq.* (HAVA containing no comparable provision). This alone ends the inquiry: Maine cannot be legally required to disclose records pursuant to a statute that does not authorize the disclosure of the records Plaintiff demands.

The United States nonetheless contends that the mere existence of HAVA's civil enforcement mechanism allows for unredacted access to all of Maine's voting records. Compl. ¶ 61; *see* 52 U.S.C. § 21111 (permitting the Attorney General to enforce "the uniform and nondiscriminatory election technology and administration requirements under sections 21081, 21082, 21083 [Section 303], and 21083a."). Not so. HAVA does not provide authority to access state records. Rather, 52 U.S.C. § 21111 merely provides the Attorney General with the authority to bring a civil action to ensure that a state has implemented a HAVA-compliant system. And none of the personal identifiers that Plaintiff seeks are necessary to ensure that Maine's system complies with HAVA. Indeed, the fact that other voting-related statutes that also include civil enforcement mechanisms, such as the NVRA and the CRA, contain records provisions when HAVA does not underscores the point that HAVA does not provide Plaintiff with its claimed authority. *See, e.g.*, *Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 392 (2015) (courts must assume "that Congress acts intentionally when it omits language included elsewhere").

## CONCLUSION

In exercising its legislative authority in enacting elections laws, Congress has struck a careful balance between transparency and protecting individuals' fundamental, constitutional right to vote. Never has Congress concluded that the privacy of sensitive personal information must give way in order for individuals to access voter registration. And indeed, it would not have done so as conditioning the right to vote on the release of private information "creates an intolerable burden on that right." *Long*, 682 F.3d at 339. For these reasons, Plaintiff's request for Maine's full and unredacted electronic voter file should be denied and the Complaint dismissed.

Dated: December 16, 2025

Respectfully submitted,

/s/ Carol Garvan
Carol Garvan
American Civil Liberties Union of Maine Foundation
P.O. Box 7860
Portland, Maine 04112
(207) 619-8687
cgarvan@aclumaine.org

/s/ Zachary L. Heiden
Zachary L. Heiden
American Civil Liberties Union of Maine Foundation
P.O. Box 7861
Portland, Maine 04112
(207) 619-6224
heiden@aclumaine.org

Theresa J. Lee*
Jonathan Topaz*
Sophia Lin Lakin*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
tlee@aclu.org
jtopaz@aclu.org
slakin@aclu.org

Patricia Yan*
American Civil Liberties Union Foundation
915 15th Street NW
Washington, DC 20005
(202) 457-0800
pyan@aclu.org

*admitted *pro hac vice*

## CERTIFICATE OF SERVICE

      I hereby certify that on the date below, I electronically filed the foregoing document, Amicus Curiae Brief of American Civil Liberties Union of Maine, via the Court's CM/ECF system, which will provide notice to all counsel of record.


Dated: December 16, 2025　　　　　　　　　/s/ Zachary L. Heiden
　　　　　　　　　　　　　　　　　　　　　Zachary L. Heiden
　　　　　　　　　　　　　　　　　　　　　American Civil Liberties Union of Maine
　　　　　　　　　　　　　　　　　　　　　Foundation
　　　　　　　　　　　　　　　　　　　　　P.O. Box 7861
　　　　　　　　　　　　　　　　　　　　　Portland, Maine 04112
　　　　　　　　　　　　　　　　　　　　　(207) 619-6224
　　　　　　　　　　　　　　　　　　　　　heiden@aclumaine.org