UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

UNITED STATES OF AMERICA,

       Plaintiff,

  v.                                                    Case No. 1:25-CV-468-LEW-KFW

SHENNA BELLOWS, in her official                        Hon. Lance E. Walker
capacity as Secretary of the State of MAINE
and the STATE OF MAINE.


       Defendants.

_____

## UNITED STATES' OPPOSITION AND MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1

# TABLE OF CONTENTS

BACKGROUND ........................................................................................................................ 5

LEGAL STANDARDS .......................................................................................................... 6

ARGUMENT ........................................................................................................................... 6

I.     The United States has a valid legal claim under the Civil Rights Act of 1960 ............................ 7

   A.   The language of the Civil Rights Act of 1960 unambiguously permits the requests .................... 7

   B.   The United States has sufficiently pled a claim for relief under Title III of the Civil Rights Act… ............................................................................................................................. 9

   C.   The United States is entitled to unredacted "copying" and "reproduction" of Defendants' electronic federal election records ..................................................................................... 12

   D.   Statewide voter rolls are within the scope of the Civil Rights Act of 1960 ................................ 14

II.    The United States has a valid legal claim under the NVRA ...................................................... 14

III.   The United States has a valid legal claim under HAVA .......................................................... 15

IV.    The United States is complying with applicable privacy laws ................................................. 17

   A.   The United States is complying with the Privacy Act ............................................................. 17

   B.   The First Amendment does not prohibit NVRA and HAVA enforcement ................................. 18

   C.   The E-Government Act does not bar claims by the United States .......................................... 20

   D.   Federal preemption bars state law claims ........................................................................... 21

CONCLUSION ...................................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960)....................................................9

*Arizona v. InterTribal Council of Ariz., Inc.*, 570 U.S. 1 (2013)........................................................20, 22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................................7

*Brunner v. Ohio Republican Party*, 555 U.S. 5 (2008)............................................................................17

*Coal. for Open Democracy v. Scanlan*, No. 24-CV-312-SE, 2025 WL 1503937 (D.N.H. May 27, 2025)……….....................................................................................................................................14

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) ..............................................................9, 12, 13, 14

*Colón-Marrero v. Vélez*, 813 F.3d 1 (1st Cir. 2016) ................................................................................16

*Crook v. S.C. Election Comm'n*, No. 2025-CP-40-06539 (Richland Cty. Comm. Pleas Oct. 1, 2025) ....15

*Ebert v. Poston*, 266 U.S. 548 (1925) .....................................................................................................10

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962)................................................................................passim

*Massachusetts Fin. Servs., Inc. v. Sec. Inv. Prot. Corp.*, 545 F.2d 754 (1st Cir. 1976)...........................10

*McKee v. Cosby*, 874 F.3d 54 (1st Cir. 2017) ...........................................................................................7

*Mi Familia Vota v. Fontes,* 129 F.4th 691 (9th Cir. 2025) ......................................................................20

*Pub. Int. Leg. Found., Inc. v. Bellows*, 94 F.4th 36 (1st Cir. 2024) ........................................................22

*Stand with U.S. Ctr. for Legal Just. v. Mass. Inst. of Tech.*, 158 F.4th 1 (1st Cir. 2025)...........................7

*United States v. Ass'n of Citizens Councils of La.*, 187 F. Supp. 846, (W.D. La. 1960) ........................17

*United States v. Great Northern Ry.*, 343 U.S. 562 (1952).....................................................................10

*United States v. Missouri Pac. R.R. Co.*, 278 U.S. 269 (1929)...........................................................9, 10

**Statutes**

44 U.S.C. § 3101 .......................................................................................................................................19

52 U.S.C. § 20507 ...........................................................................................................................14, 16, 20

52 U.S.C. § 20701 ...............................................................................................................................passim

52 U.S.C. § 20703 ...................................................................................................... passim

52 U.S.C. § 20701-6 .......................................................................................................... 8

52 U.S.C. § 21083 ...................................................................................................... passim

52 U.S.C. § 21111 ............................................................................................................ 16

Pub. L. No. 86-449, 74 Stat. 86 (1960) ............................................................................. 7

**Regulations**

28 CFR §§ 0.50 ............................................................................................................... 18

28 CFR §§ 0.51 ............................................................................................................... 18

64 Fed. Reg. 73585-02 (Dec. 30, 1999) ........................................................................ 18

66 Fed. Reg. 8425-02 (Jan. 31, 2001) ........................................................................... 18

68 Fed. Reg. 47610-01 (Aug. 11, 2003) ........................................................................ 17

70 Fed. Reg. 43904-01 (July 29, 2005) .......................................................................... 17

74 Fed. Reg. 57194 (Nov. 4, 2009) ................................................................................ 18

82 Fed. Reg. 24147-01 (May 25, 2017) .................................................................... 17, 18

**Legislative Materials**

106 Cong. Rec. 7767 ................................................................................................... 8, 12

148 Cong. Rec. S10512 (daily ed. Oct. 16, 2002) ......................................................... 16

H.R. Rep. 86-956 (1960) ................................................................................................... 8

H.R. Rep. 107-329(I) (2001) ................................................................. 1**Error! Bookmark not defined.**

**Secondary Materials**

ERIC Overview, https://ericstates.org/ ........................................................................... 19

## BACKGROUND

The Attorney General of the United States brought this straightforward case to enforce the requirements of three complimentary federal statutes. Those laws, the Civil Rights Act of 1960 ("CRA"), the Help America Vote Act ("HAVA"), and the National Voter Registration Act ("NVRA"), govern voter registration and voting records pertaining to federal elections.[1]

As applicable here, the CRA requires (1) election officials or a designated custodian to (2) retain and preserve, (3) "all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election," (4) for a period of twenty-two months from the date of "any general, special, or primary election of which candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives." 52 U.S.C. § 20701. The CRA then allows that, (5) upon demand in writing by the Attorney General or her representative (6) containing a statement of the basis and the purpose therefore, (7) the custodian shall make any record required to be preserved by 52 U.S.C. 20701 available for inspection, reproduction and copying. 52 U.S.C. § 20703.

Both Defendants and Intervenors do not contest Elements (1), (2), (4), (5), and (7) are met here. Intervenors alone challenge Element (3), arguing that election officials do not "come into possession" of voter rolls because they are allegedly "internal records generated by election officials." *See* Intervenors' Mot. To Dismiss, ECF No. 61, p. 19. Both Intervenors and Defendants contest that Element (6) has been met, arguing that the Attorney General's stated basis and purpose is both insufficient and noncompliant with an alleged need to be directed at racial discrimination in election practices. *See* Defs.' Mot. to Dismiss, ECF No. 54, p. 15; Intervenors' Mot. To Dismiss,

---

[1] The United States has set out a detailed background of this litigation previously. *See* Plaintiff's Response to Motion to Intervene as Defendants and Memorandum in Support.  ECF No. 30 at 3-6.

ECF No. 61, p. 14.

Neither argument has merit. Defendants and Intervenors ask the Court to decide this case on the merits at the pleading stage after rewriting the CRA to encompass requirements omitted by Congress. This Court should decline Defendants' invitation and deny their motion to dismiss.

## LEGAL STANDARDS

When considering a motion to dismiss, a court must accept all material allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court is to determine whether the plaintiff's complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Stand with U.S. Ctr. for Legal Just. v. Mass. Inst. of Tech.*, 158 F.4th 1, 55 (1st Cir. 2025) (quoting *Iqbal*, 556 U.S. at 678). A plausible claim, in turn, is one where plaintiffs "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In assessing whether plaintiffs have stated a facially plausible claim to relief, the court will accept as true the complaint's well-pleaded factual allegations and draw all reasonable factual inferences in plaintiffs' favor. *Stand*, 158 F.4th at 55 (citing *McKee v. Cosby*, 874 F.3d 54, 58 (1st Cir. 2017)).

## ARGUMENT

The three claims brought by the United States each offer overlapping and complimentary statutory authority for obtaining records from Defendants to enforce federal voter list maintenance requirements. Defendants seek dismissal of these claims ostensibly because, they argue, none of them have a plausible basis. To arrive at that conclusion, Defendants ask the Court to: (1) disregard the plain language of the statutes by injecting ambiguities that do not exist and thereby allow the Court to legislate from the bench to rewrite the provisions in a manner that suits them; (2) selectively ignore relief specified in the statutes that foreclose their defenses; and (3) make merits findings that

are not only inappropriate at the motion-to-dismiss stage, but are barred altogether by one of the statutes. The clear text of the CRA, HAVA, the NVRA, and interpretative case law require that, accepting all the allegations in the Complaint as true, the United States asserts both a cognizable legal theory and has pled sufficient facts to support that theory. Finally, the privacy arguments are also not grounds on which to dismiss the Complaint.  Accordingly, Defendants' Motion to Dismiss should be denied.

## I.    THE UNITED STATES HAS A VALID LEGAL CLAIM UNDER THE CIVIL RIGHTS ACT OF 1960.

A.    The language of the Civil Rights Act of 1960 unambiguously permits the requests.

Title III of the Civil Rights Act of 1960 is entitled "Federal Election Records." CRA § 301, Pub. L. No. 86-449, 74 Stat. 86 (1960). It imposes a "sweeping" obligation on election officials to preserve and on request to produce registration records pertaining to federal elections. *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962). Section 301 provides, in pertinent part, "Every officer of election shall retain and preserve, for a period of twenty-two months from the date of [a federal election] *all* records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701 (emphasis added). Section 303 authorizes the Attorney General of the United States to compel any person "having custody, possession, or control of such record or paper" to make "available for inspection, reproduction, and copying … by the Attorney General or [her] representative." 52 U.S.C. § 20703.

Notwithstanding the CRA's plain language, Defendants argue that the Court must go outside the text of the statute to the legislative history and find that demands under Title III must be "tethered

to the constitutional ill addressed by the statute, namely voting-related discrimination."[2] Defs.' Mot. to Dismiss, ECF No. 54 at 15. No such language appears anywhere in the statutory text. *See* 52 U.S.C. §§ 20701–20706. Moreover, in a case cited by Intervenors, the court concluded "that the prescribed standard of Section 301 is *clear and unambiguous …*" *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 855 (M.D. Ala. 1960) (emphasis added). Specifically, Title III functions as "a special statutory proceeding in which the courts play a limited, albeit vital, role." *Lynd*, 306 F.2d at 225. The only language that is required in the Attorney General's demand is that it "was made for the purpose of investigating possible violations of a Federal statute." *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (quoting "Senator Keating, one of the principal spokesmen for the bill in the Senate," at 106 Cong. Rec. 7767).

Requiring more by engrafting a requirement of racial discrimination that does not exist in the statute would violate the clear congressional mandate. Where, like here, "the language of an enactment is clear … the words employed are to be taken as the final expression of the meaning intended." *United States v. Missouri Pac. R.R. Co.*, 278 U.S. 269, 278 (1929). Well-established principles of statutory construction foreclose federal courts from rewriting a statute in a manner that better suits a litigant. As the Supreme Court explained, "[t]he judicial function to be exercised in

---

[2] The House Report accompanying the passage of the CRA expressly states in the section on "Title III (Federal Election Records)": The purpose of Title III is to provide a more effective protection of the right of all qualified citizens to vote without discrimination on account of race. This is the same purpose contained in the Civil Rights Act of 1957, which authorizes the Attorney General to institute civil proceedings for preventive relief from the discriminatory denial of the right to vote. Experience has shown the need for this legislation. So long as there is lacking a suitable provision for access to voting records during the course of an investigation and prior to the institution of a suit, the authority of the Attorney General is rendered relatively ineffective. The situation requires evidence which is practically impossible to assemble unless access is had to detailed information concerning application, registration, tests, and other acts and procedures requisite to voting. Moreover, such information is mandatory for a proper evaluation of complaints. The Department of Justice has no existing power in civil proceedings to require the production of these records during any investigation it may conduct on complaints of a denial to vote because of race.

H.R. Rep. 86-956 at 1944-45 (1960).

construing a statute is limited to ascertaining the intention of the Legislature therein expressed. A *casus omissus* does not justify judicial legislation." *Ebert v. Poston*, 266 U.S. 548, 554-55 (1925). "[W]here the language of an enactment is clear, and construction according to its terms does not lead to absurd or impracticable consequences, the words employed are to be taken as the final expression of the meaning intended. And in such cases legislative history may not be used to support a construction that adds to or takes from the significance of the words employed." *Missouri Pac.*, 278 U.S. at 278–79 (citations omitted). In that manner, the "judicial function [is] to apply statutes on the basis of what Congress has written, not what Congress might have written." *Massachusetts Fin. Servs., Inc. v. Sec. Inv. Prot. Corp.*, 545 F.2d 754, 758 (1st Cir. 1976) (quoting *United States v. Great Northern Ry.,* 343 U.S. 562, 575 (1952)).

As a result, the United States respectfully submits that the Court must decline Defendants' and Intervenors' invitation to rewrite the statute to add a requirement of racial discrimination.

B.    The United States has sufficiently pled a claim for relief under Title III of the Civil Rights Act.

The filing of a request for federal election records under Title III by the Attorney General "is not the commencement of an ordinary, traditional civil action with all of its trappings." *Lynd*, 306 F.2d at 225. Instead, "it is comparable to the form of a traditional order to show cause, or to produce in aid of an order of an administrative agency." *Id.* The Fifth Circuit has described in detail what the Attorney General must allege to satisfy the statute:

> Since it is a special statutory proceeding, it does not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure. All that is required is a simple statement by the Attorney General that after a [Section 303] written demand for inspection of records and papers covered in [Section 301], the person against whom an order for production is sought under [Section 305] has failed or refused to make such papers 'available for inspection, reproduction, and copying…"

*Id.* at 225–26 (quoting 52 U.S.C. § 20703).

Under the plain language of the statute, "[t]here is no place for any other procedural device or maneuver – either before or during any hearing of the application – to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Id.* at 226. Likewise, there is no basis in the proceedings to challenge "the reasons why the Attorney General considers the records essential.…" *Id.* Rather, if the Attorney General has stated in writing the basis and the purpose of the demand, Title III is satisfied, and the records must be produced.  *See* 52 U.S.C. § 20703.

The United States has met those requirements. On July 24, 2025, the Attorney General requested that Maine, through its Secretary of State, fill in the wide gaps of data that the state had not disclosed to the EAC, and to produce its complete voter registration list to include their state driver's license number or the last four digits of the registrant's social security number as required by HAVA. Compl. at ¶¶ 29-34; ECF No. 1-1. In a letter dated August 8, 2025, the Secretary refused to cooperate and declined to produce the requested voter records. *Id.* at ¶ 55. On August 18, 2025, the Attorney General made a second written demand pursuant to Title III for a current copy of Maine's computerized Statewide Voter Registration List ("SVRL"), including each registrant's full name, date of birth, residential address, and the HAVA identifying numbers. *Id.* at ¶¶ 47-54. The demand explained that the purpose was to evaluate the state's compliance with its list-maintenance requirements under federal law and described how the privacy of data would be protected and could be transmitted securely. *Id*. Defendants tacitly acknowledge that DOJ provided the "statement of its purpose," instead choosing to label it "insufficient." Defs.' Mot. to Dismiss, ECF No. 54 at 16. This is an argument specifically foreclosed in *Lynd*. *Lynd*, 306 F.2d at 226.

Conversely, Defendants argue that the United States failed to describe the basis for its request. Defs.' Mot. to Dismiss, ECF No. 54 at 16-18.  To arrive at that conclusion, Defendants

10

erroneously employ a hyper-technical reading of Section 303. In doing so, they deliberately ignore the detailed basis the United States provided in writing to them in its July 24, 2025, letter. Compl., at ¶¶ 29-34, ECF No. 1-1. The Department's July 24, 2025, letter cited many data points that raised concerns regarding Maine's voter list maintenance. *See id.* at ¶¶ 1-5. Defendants deride these serious gaps and red flags as an insufficient basis for the Attorney General's investigation.  Defs.' Mot. to Dismiss, ECF No  54 at 16-18.  However, Defendants' and Intervenors' assessment of the data is immaterial. In *Lynd,* the Fifth Circuit explained, "On the filing of this simple statement by the Attorney General, the Court is required to treat it as a summary proceeding." 306 F.2d at 226. Under the language of the statute, "the factual foundation for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose' contained in the written demand, [Section 303], *is not open to judicial review or ascertainment*."[3] *Id.* (emphasis added).

To summarize, the United States identified the basis for its request for federal election records by identifying in its July 24, 2025, letter to Defendants voter registration metrics reported by Maine that raise serious concerns regarding the state of its SVRL. When Defendants failed to produce those records, the United States followed up with a written statement of its purpose, to evaluate Maine's compliance with list-maintenance requirements under federal law in its August 18, 2025, letter. That correspondence satisfies the plain language in Section 303 of the CRA for a "demand in writing by the Attorney General or [her] representative" including "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703; *see generally Coleman*, 313 F.2d at 868 (a

---

[3] Defendants speculate that the Department is collecting the SVRL for nefarious purposes.  Defs.' Mot. to Dismiss, ECF No. 54 at 18-19.  As explained in Section IV of this brief, the United States is complying with the Privacy Act, and the use of the data is limited to the enforcement of the list maintenance requirements in HAVA and the NVRA. "[I]t is pure speculation to suggest that the Census Bureau will not comply with its legal obligations to ensure the privacy of respondents' data…." *Elec. Priv. Info. Ctr. v. U.S. Dep't of Commerce*, 928 F.3d 95, 102 (D.C. Cir. 2019) (citation omitted).

written demand "made for the purpose of investigating possible violations of a Federal statute" is sufficient to comply with Section 303).

   C.    The United States is entitled to unredacted "copying" and "reproduction" of Defendants' federal election records.

Section 303's language provides that "[a]ny record or paper required by section 301 [of this title] to be retained and preserved shall[,]" upon written demand by the Attorney General or her representative stating the basis and purpose, "be made available for "inspection, *reproduction, and copying*…." 52 U.S.C. § 20703 (emphasis added). Records that must be produced to the United States pursuant to this demand cannot be contested as long as the records fall within Section 301's broad definition: "all records and papers which come into [the officer of election's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting" in a federal election "for a period of twenty-two months from the date of any general, special or primary election" for federal office. 52 U.S.C. § 20701. As the Fifth Circuit explained in *Lynd*, "the scope of the order to produce" is "not open to judicial review or ascertainment." 306 F.2d at 226. "This is so because the papers and records subject to inspection and demand have been specifically identified by Congress," as set out in Section 301. *Id.* "The incorporated standard of [Section 301] is *sweeping*." *Id.* (emphasis added). The question is only "open for determination" by the Court, if "a genuine dispute… arises as to whether or not any specified particular paper or record comes within this broad statutory classification of 'all records and papers … relating to any … act requisite to voting….'" *Id.*

Defendants and Intervenors again ask the Court to legislate limitations that are absent from Title III as well as read each election statute in isolation rather than in conjunction. The Attorney General can only meaningfully investigate and enforce the list maintenance requirements of HAVA and the NVRA by having access to the voter identification numbers required by federal law. For

each voter, HAVA requires that registrants include his driver's license number, last four digits of their social security number, or other identifying number. *See* 52 U.S.C. § 21083(a)(5)(A). That information is also necessary to identify duplicate registration records, registrants who have moved, ineligible registrants, and registrants who have died or otherwise are no longer eligible to vote in federal elections.[4] There is no question that enforcement of the list maintenance requirements of HAVA and the NVRA are for "the purpose of investigating possible violations of a Federal statute." *Coleman*, 313 F.2d at 868.

Indeed, the data the United States has requested under the CRA is the same that twenty-five states and the District of Columbia routinely share through the non-governmental Electronic Registration Information Center, ("ERIC"), to facilitate their compliance with federal list-maintenance requirements.[5] Similarly, private parties have been granted access to even more detailed voter data than what the United States has requested where necessary to bring actions to enforce federal rights. *See Coal. for Open Democracy v. Scanlan*, No. 24-CV-312-SE, 2025 WL 1503937, at *2 (D.N.H. May 27, 2025) (ACLU compelled production of "copy of the New Hampshire statewide voter database and all documents concerning the use of the statewide voter database, including instruction manuals or other guides concerning the data fields contained in the database and their correct interpretation."), *appeal docketed*, No. 25-1585 (1st Cir. June 17, 2025).

A South Carolina court recently confronted the same arguments espoused by Defendants from an individual voter seeking to enjoin state officials from cooperating with the Department. As

---

[4] *See generally* 52 U.S.C. § 20507(a)(4) ("In the administration of voter registration for elections for Federal office, each State shall – (4) conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of – (A) the death of the registrant; or (B) a change in the residence of the registrant…."); 52 U.S.C. § 21083(a)(4) ("The State election system shall include provisions to ensure that voter registration records in the State are accurate and are updated regularly, including… (A) A system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters….").

[5] *See* ERIC, ERIC Overview, *available at* https://ericstates.org/ (last visited Dec. 22, 2025).

it pertains to voter registration rolls, the court reasoned:

> Title III has long been understood to "encompass[], among other things, voting registration records," *McIntyre v. Morgan*, 624 F. Supp. 658, 664 (S.D. Ind. 1985), which is not surprising given the scope of the statutory text. And since HAVA's enactment two decades ago, registration records must include either "the applicant's driver's license number" or "the last four digits of the applicant's social security number." 52 U.S.C. § 21083(a)(5)(A). The Attorney General (or his representative) may demand in writing "[a]ny record or paper" that a state election official must keep under § 20701. *Id.* § 20703. That demand must simply "contain a statement of the basis and the purpose therefor." *Id.*

*Crook v. S.C. Election Comm'n*, No. 2025-CP-40-06539 (Richland Cty. Comm. Pleas Oct. 1, 2025), attached as Ex. 1, at 11.

Consequently, United States is entitled to production of Maine's unredacted SVRL under the plain language of Section 303 of the CRA. *See* 52 U.S.C. § 20703.

### D.  Statewide voter rolls are within the scope of the Civil Rights Act of 1960.

Intervenors argue that Maine's SVRL does not fall under the scope of election records covered by the CRA because the SVRL is a database generated by the election officials and not something the official "comes into possession of" under the statute. *See* Intervenors' Mot. To Dismiss, ECF No. 61, p. 19. However, the statute does not qualify which election records must be provided based on how they are created or by whom. The SVRL is clearly an election record created by the Defendant as a compilation of voter registration forms. Further, Intervenors do not contest that the voter registration forms that underlie all substantive portions of the SVRL are election records. Intervenors instead attempt to argue that the act of organizing these received forms excludes them from the scope of the unambiguous text of the statute. There is no basis in the text of the CRA for this exclusion.

## II.  THE UNITED STATES HAS A VALID LEGAL CLAIM UNDER THE NVRA.

Defendants' motion to dismiss the NVRA claim must be denied. The plain text of Section 8(i)

of the NVRA requires states to make available "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters…." 52 U.S.C. § 20507(i)(1). That includes the voter registration list, which necessarily must be used to ensure the accuracy of the official list of eligible voters, and is the some of the best evidence of a state's voter list maintenance efforts. The United States has properly alleged in its Complaint that Defendants have failed to engage in reasonable list maintenance efforts and have refused to produce records associated with those efforts. For the same reasons described in the preceding discussion, all the well-pled allegations in the Complaint must be accepted as true.

### III. THE UNITED STATES HAS A VALID LEGAL CLAIM UNDER HAVA.

Congress enacted HAVA "to improve our country's election system." H.R. Rep. 107-329(I) at 31 (2001). The Act recognizes that "the federal government can play a valuable [role]" in assisting states modernize their elections systems. *Id.* at 32. HAVA requires states to implement a computerized SVRL that is coordinated with other state agency databases. *See* 52 U.S.C. § 21083(a)(1)(A). It also establishes "[m]inimum standard[s] for accuracy of State voter registration records." 52 U.S.C. § 21083(a)(4). Under HAVA Section 303, a state's "election system shall include provisions to ensure that voter registration records in the State are accurate and are updated regularly," including by use of a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters" and "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters." *Id.* HAVA's list maintenance requirements apply to all states, including Maine. *See Colón-Marrero v. Vélez*, 813 F.3d 1, 14 (1st Cir. 2016) (collecting citations).

Defendants acknowledge HAVA includes maintenance requirements that apply to all states, which includes Maine. *See* Defs.' Mot. to Dismiss, ECF No. 54 at 13.  Nevertheless, they assert that

the text of HAVA's statute does not explicitly provide a section for DOJ to demand documents. *Id.* at 13-14. The absence of a specific explicit provision, however, does not mean that the statute cannot provide authority. The only enforcement provision in HAVA authorizing a cause of action in federal court is found at section 401, which provides that enforcement of the Act is vested solely in the Attorney General. *See* 52 U.S.C. § 21111. Senator Dodd of Connecticut, a HAVA conferee and sponsor, recognized that the Act did not have a private right of action. *See* 148 Cong. Rec. S10512 (daily ed. Oct. 16, 2002). As a result, the Supreme Court has held that private parties may not enforce section 303, including requests for records under that provision. *See Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008) (per curiam) ("Respondents, however, are not sufficiently likely to prevail on the question whether Congress has authorized the District Court to enforce § 303 in an action brought by a private litigant to justify the issuance of a TRO."). Congress unsurprisingly did not include a public disclosure requirement, such as the one included in Section 8(i) of the NVRA, because unlike the NVRA, private parties cannot enforce HAVA.

At the same time, however, that does not leave the United States without recourse to seek list maintenance records under HAVA. Rather, it may do so through the ordinary investigative process necessary to enforce section 303 of HAVA. The only way to determine compliance with HAVA's requirement to provide the driver's license number, or the last four digits of the Social Security number in Section 303(a)(5)(A) is to review the SVRL to determine whether that information is being collected consistently. *See* 52 U.S.C. § 21083(a)(5)(A). Here, the CRA cases are also instructive. Under the CRA, election officials are required to preserve and produce federal election records "to facilitate the investigation … before suit is filed." *United States v. Ass'n of Citizens Councils of La.*, 187 F. Supp. 846, 847 (W.D. La. 1960) (per curiam). By comparison, the demand for records that the United States has made under HAVA falls into the conventional realm

of discovery: "The chief purpose of [Federal] Rule [of Civil Procedure] 34 … is to give a party litigant the right to have records produced after suit has been filed." *Id.* That is all the United States is doing in this case. It seeks the necessary records to establish its claim under HAVA to determine whether Defendants are violating the list maintenance requirements in Section 303 of the Act.

Accordingly, Defendants' motion to dismiss the HAVA claim should be denied.

## IV.    THE UNITED STATES IS COMPLYING WITH APPLICABLE PRIVACY LAWS.

### A.    The United States is complying with the Privacy Act.

Defendants argue that the United States must comply with the Privacy Act, and the United States is doing that. However, there is no requirement that the United States needs to plead its compliance with the Privacy Act in every complaint that may contain personally identifiable information.

The voter information that the Department is collecting is maintained consistent with Privacy Act protections as explained at Civil Rights Division - Department of Justice - Privacy Policy.[6] The full list of routine uses for this collection of information can be found in the systems of records notices ("SORN") titled, JUSTICE/CRT – 001, "Central Civil Rights Division Index File and Associated Records", 68 Fed. Reg. 47610-01, 611 (Aug. 11, 2003); 70 Fed. Reg. 43904-01 (July 29, 2005); and 82 Fed. Reg. 24147-01 (May 25, 2017). It should be noted that the statutes cited for routine use include the NVRA, HAVA, and the Civil Rights Act of 1960, and the United States made its requests pursuant to those statutes. The United States is not seeking these records for any other purpose other than to enforce these statutes.  The records in the system of records are kept

---

[6] *See* https://civilrights.justice.gov/privacy-policy#:~:text=Our%20Statutes-,Privacy%20Act%20Statement,the%20scope%20of%20our%20jurisdiction.

under the authority of 44 U.S.C. § 3101 and in the ordinary course of fulfilling the responsibility assigned to the Civil Rights Division under the provisions of 28 CFR §§ 0.50, 0.51.

Similarly, to the extent that Defendants are concerned about the transport of such data to the United States, the Department uses a secure file-sharing system, Justice Enterprise File Sharing ("JEFS"). That system implements strict access controls to ensure that each user can only access their own files and is also covered by SORNs. [7]

Moreover, the Privacy Act does not bar the disclosure of Maine's SVRL to the United States. The Privacy Act regulates federal agencies' collection, maintenance, and disclosure of information within their own systems of records—it does not restrict the ability of state actors to share information with federal agencies. The statute's plain language confirms that it applies only to federal "agencies" as defined in 5 U.S.C. § 552a(a)(1), meaning "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government." 5 U.S.C. § 552a(a)(1). State and local entities fall outside that definition. The Privacy Act "erects certain safeguards for an individual against an invasion of personal privacy," Pub. L. No. 93–579, § 2(5)(B), 88 Stat. 1896 (1974), only within the scope of federal agency record systems. There is no basis for Maine to fail to disclose information to a federal agency for law enforcement purposes, particularly here, where the United States is complying with the provisions of the Privacy Act.

## B.  The First Amendment does not Prohibit NVRA and HAVA Enforcement.

Defendants further contend that the United States violates the First Amendment, because the request for the SVRL is not "pertinent to and within the scope of an authorized law enforcement

---

[7] *See* JUSTICE/DOJ-014, Department of Justice Employee Directory Systems, last published in full at 74 Fed. Reg. 57194 (Nov. 4, 2009), and modified at 82 Fed. Reg. 24151, 24153 (May 25, 2017); JUSTICE/DOJ-002, Department of Justice Computer Systems Activity and Access Records, last published in full at 64 Fed. Reg. 73585-02 (Dec. 30, 1999), and modified at 66 Fed. Reg. 8425-02 (Jan. 31, 2001) and 82 Fed. Reg. 24147-01 (May 25, 2017).

activity" under 5 U.S.C. § 552a(e)(7).  Defs.' Mot. to Dismiss, ECF No. 54 at 20.

Initially, the United States made it clear that it seeks the SVRL to enforce Section 8 of the NVRA and Section 303 of HAVA regarding list maintenance.  Both of those statutes were enacted pursuant to the Elections Clause and have broad mandates.  *See Arizona v. InterTribal Council of Ariz., Inc.*, 570 U.S. 1,7-9, FN 1 (2013) (discussing broad scope of Elections Clause); *Mi Familia Vota v. Fontes,* 129 F.4th 691, 712 (9th Cir. 2025) (citing *Voting Rts. Coal. v. Wilson*, 60 F.3d 1411, 1413–14 (9th Cir. 1995) as rejecting challenge to constitutionality of NVRA in part because "the Supreme Court has read the grant of power to Congress in Article I, section 4 [of the U.S. Constitution] as quite broad"). HAVA requires the driver's license number or the last four digits of the Social Security Number in Section 303(a)(5)(A), and the Attorney General will be assessing Maine's compliance with that provision. *See* 52 USC § 21083(a)(5)(A). Section 8(a)(4) of the NVRA requires each state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of … the death of the registrant," or "a change in the residence of the registrant…." 52 U.S.C. § 20507(a)(4).  A registered voter list that includes all fields will allow for more accurate matching when determining whether a person on the voter registration list is deceased or in finding duplicate registrations.

The work of ERIC supports this proposition.  ERIC is a private organization, of which Maine is a member, whose mission includes, among other things, the means "to assist states in improving the accuracy of America's voter rolls.".[8] According to ERIC's website, "Members submit dates of birth, driver's license/ID card numbers, and Social Security numbers to ERIC…." *Id.* "At least every 60 days, each member submits their voter registration data and licensing and identification data from

---

[8]  *FAQ's*, ERIC, (Dec. 28, 2025) https://ericstates.org/faq/; *see id.*, "Which States Are Members of ERIC?" https://ericstates.org/about/.

their motor vehicle departments to ERIC. ERIC refers to these data as Member Data. Data fields related to name, address, driver's license or state ID number, last four digits of social security number, date of birth, and activity date are required, if present. Members also submit information on current record status (e.g., is the record "active" or "cancelled"), phone number, and email address when available. These fields improve the quality of the data matching process." *Id*.  List maintenance is an authorized enforcement activity, and Maine's voter registration list is integral to that effort.

## C.  The E-Government Act does not bar claims by the United States.

The E-Government Act neither authorizes dismissal of this case, nor limits the United States' ability to bring suit. The E-Government Act is not applicable to the United States' enforcement of NVRA and HAVA.  The United States is not initiating a new process, whereby it is contacting individuals for information as contemplated by Pub. L. No. 107–347, § 208(b)(1)(A)(ii)(II), which "includes any information in an identifiable form permitting the physical or online contacting of a specific individual, if identical questions have been posed to, or identical reporting requirements imposed on, 10 or more persons, other than agencies, instrumentalities, or employees of the Federal Government."[9]  The request is made to the State of Maine to provide a voter registration list they already maintain, pursuant to federal law to analyze their federally required list maintenance.[10]

Applying the E-Government Act to the enforcement of voting statutes would lead to an

---

[9] The Census collects information from individuals and, therefore, regularly conducts privacy impact assessments.  The court found collection did not begin until the census form was mailed out to individuals.  *Elec. Priv. Info. Ctr. v. U.S. Dep't of Commerce*, 356 F. Supp 85, 90 (D.D.C. 2019), *dismissed on other grounds*, 928 F.3d 95 (D.C. Cir. 2019).

[10] When the Civil Rights Division began use of ServiceNow (SNOW), a FedRAMP High-compliant Software as a Service (SaaS) cloud-hosting provider offering a suite of natively integrated applications designed to support Information Technology Service Management (ITSM), resource management, and shared support services, it conducted a Privacy Act Assessment ("PIA"), as required by the E-Government Act. See Office of Privacy and Civil Liberties | DOJ Privacy Impact Assessments (visited December 4, 2025).

absurd result, whereby the Department of Justice would need to do thousands of Privacy Impact Assessments whenever the Department gathered any voter data to enforce the Voting Rights Act, NVRA, HAVA, or the Uniform and Overseas Citizens Voting Act (UOCAVA).  Nor does the purpose of the privacy provision in the E-Government Act suggest it was meant to encompass the enforcement provisions of all voting laws where voter data is examined.  *See* Pub. L. No. 107–347, § 208 (a).

### D.  Federal preemption bars state law claims.

Maine's and Intervenors' reliance on a state statute as a defense to non-disclosure is unavailing due to the doctrine of federal preemption, which has a particular meaning in the Elections Clause context. As this Circuit has explained, even the assumption in favor of state police power "does not hold when Congress acts under th[e Elections Clause], which empowers Congress to 'make or alter' state election regulations.'" *Pub. Int. Leg. Found., Inc. v. Bellows*, 94 F.4th 36, 51-52 (quoting *Arizona v. InterTribal Council of Ariz., Inc.*, 570 U.S. 1, 14 (2013)). Federal statutes are given deference that they reflect Congress' preemptive intent. *Id.*

### CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny the Motion to Dismiss by Defendants and Intervenors.

Dated: January 2, 2026

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

ERIC V. NEFF
Acting Chief, Voting Section
Civil Rights Division


/s/ David Vandenberg
DAVID D. VANDENBERG
Trial Attorney, Voting Section
Civil Rights Division
150 M St. NE, Ste 8-143
Washington, DC 20009
David.Vandenberg@usdoj.gov
Tel. (202) 307-2767
*Attorneys for the United States*

## CERTIFICATE OF SERVICE

I hereby certify that on January 2, 2026, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

*/s/David D. Vandenberg*
David D. Vandenberg