UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>  v.<br><br>SHENNA BELLOWS, in her official capacity as the Secretary of State of Maine, and the STATE OF MAINE,<br><br>                Defendants,<br><br>  and<br><br>JOHN SCHNECK, MARPHEEN CHANN, and LEAGUE OF WOMEN VOTERS OF MAINE,<br><br>                Intervenor-Defendants. | Case No. 1:25-cv-468-LEW |

**INTERVENOR-DEFENDANTS JOHN SCHNECK AND MARPHEEN CHANN'S REPLY IN SUPPORT OF MOTION TO DISMISS**

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 2

    I.    DOJ fails to state a claim under the NVRA. ................................................................... 2

    II.    DOJ fails to state a claim under HAVA. ......................................................................... 3

    III.    DOJ fails to state a claim under the Civil Rights Act of 1960. ........................................ 3

CONCLUSION ............................................................................................................................. 7

## INTRODUCTION

DOJ fails to identify a single instance in the history of the NVRA, HAVA, or the Civil Rights Act of 1960 ("CRA") in which a court held that *any* of those statutes require a state to hand the federal government sensitive voter data protected by state law. For good reason: those statutes do not authorize the relief DOJ seeks. Indeed, since filing this suit, DOJ appears to have realized the NVRA and HAVA offer it no support. In its most recent lawsuits seeking to obtain similar information from other states, DOJ jettisoned its NVRA and HAVA claims and relies solely on the CRA.[1] But, as two courts have since determined, DOJ's claim fails under the CRA, too. Specifically, yesterday, a district court in California dismissed *all* of DOJ's claims—including under the CRA—without leave to amend, noting that the DOJ appears to be on a "nationwide quest to gather the sensitive, private information of millions of Americans for use in a centralized federal database." *U.S. v. Weber*, No. 2:25-cv-09149-DOC-ADS (C.D. Cal. Jan. 15, 2026), ECF No. 128 at 16 ("*Weber* Order," attached as Ex. A). A district court in Oregon issued a tentative oral ruling to similar effect on January 14, with a written ruling to follow.[2]

---

[1] DOJ sued 23 states and D.C. in nearly-identical suits. In its first eight, including this one, DOJ brought claims under the NVRA, HAVA, and the CRA. In the most recent sixteen, it proceeds under the CRA only. *E.g.*, Compl., *U.S. v. Albence*, No. 1:25-cv-01453 (D. Del. Dec. 2, 2025); Compl., *U.S. v. DeMarinis*, No. 1:25-cv-03934 (D. Md. Dec. 1, 2025); Compl., *U.S. v. Oliver*, No. 1:25-cv-01193 (D.N.M. Dec. 2, 2025); Compl., *U.S. v. Amore*, No. 1:25-cv-00639 (D.R.I. Dec. 2, 2025); Compl., *U.S. v. Hanzas*, No. 2:25-cv-00903 (D. Vt. Dec. 1, 2025); Compl., *U.S. v. Hobbs*, No. 3:25-cv-06078 (W.D. Wash. Dec. 2, 2025); Compl., *U.S. v. Griswold*, No. 1:25-cv-03967 (D. Colo. Dec. 11, 2025); Compl., *U.S. v. Nago*, No. 1:25-cv-00522 (D. Haw. Dec. 11, 2025); Compl., *U.S. v. Aguilar*, No. 3:25-cv-00728 (D. Nev. Dec. 11, 2025); Compl., *U.S. v. Galvin*, No. 1:25-cv-13816 (D. Mass. Dec. 11, 2025); Compl., *U.S. v. Raffensperger*, No. 5:25-cv-0548 (M.D. Ga. Dec. 18, 2025); Compl., *U.S. v. Wis. Elections Comm'n*, No. 3:25-cv-1036 (W.D. Wis. Dec. 18, 2025); Compl., *U.S. v. Matthews*, No. 3:25-cv-3398 (C.D. Ill. Dec. 19, 2025); Compl., *U.S. v. Evans*, No. 1:25-cv-4403 (D.D.C. Dec. 18, 2025); Compl., *U.S. v. Fontes*, No. 2:26-cv-66 (D. Ariz. Jan. 6, 2026); Compl., *U.S. v. Thomas*, No. 3:26-cv-21 (D. Conn. Jan. 6, 2026).

[2] *See* Julia Shumway, *Oregon not required to give feds voter data, judge rules*, Oregon Public Broadcasting (Jan. 14, 2026), https://www.opb.org/article/2026/01/15/oregon-not-required-to-give-feds-voter-data-judge-rules/.

1

Those decisions are sound, as DOJ's response here only further confirms. On the NVRA, DOJ offers no response to binding First Circuit precedent foreclosing its claim. Instead, it attempts to reinvent its claim in its opposition—though in doing so, it directly contradicts the allegations in its own complaint. As to HAVA, DOJ concedes that the law does not contain any inspection provision, yet suggests it will seek Maine's voter list in *discovery* to determine if it has a claim. But litigants cannot file legally inchoate claims merely to obtain discovery as the form of relief. *See Weber* Order at 25 ("Even the federal government is not permitted to sue first, obtain discovery, and finalize its allegations later. This appears to be a telltale 'fishing expedition.'"). Nor does the CRA provide support for DOJ's demand. DOJ fails to provide any basis to suspect Maine has violated any relevant federal law, as the statute requires. Further, the CRA authorizes only investigations into efforts to *suppress voting rights*—DOJ admits that is not its purpose here. DOJ also fails to establish that Title III's scope extends to Maine's unredacted voter list in the first place.

At bottom, no federal law authorizes DOJ's demand to intrude on the privacy rights of Maine voters. The Court should thus dismiss DOJ's complaint for failure to state a claim.

## ARGUMENT

### I. DOJ fails to state a claim under the NVRA.

DOJ's NVRA claim is foreclosed by binding precedent. *See Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (holding Maine may redact sensitive voter information before disclosure under NVRA); *see also Weber* Order at 20 ("[T]he NVRA does not allow for the unjustified, wholesale disclosure of voters' sensitive information."). DOJ attempts to pivot and now asserts that Maine "failed to engage in reasonable list maintenance efforts" under the NVRA. Opp'n to Mot. Dismiss ("Opp.") at 15, ECF No. 75. But that is not the claim DOJ pleaded. The Complaint alleges that Maine failed to provide information that is "**_necessary_** for the Attorney

2

General to determine *if* Maine is conducting" sufficient list maintenance. Compl. ¶ 58 (emphases added). It provides no plausible basis to conclude that Maine is in fact violating the NVRA. Nor could it assert such a claim that would entitle it to the records it seeks. *See* Weber Order at 20-21. The Court should dismiss this claim.

## II.     DOJ fails to state a claim under HAVA.

DOJ concedes that "Congress . . . did not include a public disclosure requirement" in HAVA. Opp. at 16. Maine could not have violated HAVA by failing to disclose information to DOJ when it was never required to do so in the first place. *See Weber* Order at 25 (finding the lack of a disclosure provision "ends the inquiry"). Undeterred, DOJ suggests its claim "falls into the conventional realm of discovery." *Id.* at 16–17. This is backwards. To survive a motion to dismiss and get discovery, DOJ must *first* allege facts sufficient to state a legally viable claim. DOJ cannot sue "in hopes of discovering claims that they do not know they have." *McCloskey v. Mueller*, 446 F.3d 262, 271 (1st Cir. 2006); *see also Weber* Order at 25. This claim should also be dismissed.

## III.    DOJ fails to state a claim under the Civil Rights Act of 1960.

On its face, Title III requires DOJ to provide "the basis and the purpose" of its demand to for state and local voting records. 52 U.S.C. § 20703. DOJ's demand fails on both fronts, requiring this claim's dismissal. *See generally Weber* Order at 13–19.

***Basis***. DOJ's demand did not provide *any* basis for suspecting Maine violated any federal voting rights law—or any federal law, for that matter. *See* Mot. to Dismiss ("Mot.") at 18, ECF No. 61. That immediately distinguishes this case from the authorities DOJ cites—in each, DOJ provided an explicit statement of "basis" *and* "purpose." In *Kennedy v. Lynd*, for instance, DOJ's demand to election officials said: "This demand is *based* upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction. The *purpose* of this demand is to

3

examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred." 306 F.2d 222, 229 n.6 (5th Cir. 1962) (emphases added) (internal quotation marks omitted); *see also Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962) (same); *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962) (same), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963). DOJ's failure here to plead that it met these requirements in its demand to Maine election officials is fatal to its claim.

Far from imposing a "hyper-technical" reading of the statute, Opp. at 11, these requirements are mandated by Title III's plain language requiring DOJ to state "the basis *and* the purpose" of its demand. *See* 52 U.S.C. § 20703 (emphasis added); *see also Weber* Order at 14. The use of the word "and" indicates the law "creates two separate requirements." *United States v. Lawrence*, 675 F. App'x 1, 4 (1st Cir. 2017). And because DOJ's authority to demand information "is a creature of statute," *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458 (5th Cir. 2018), it "must comply with statutory requirements," *id.* at 460. DOJ has not bothered to do so here.

DOJ's claim that it *did* provide a "detailed basis . . . in its July 24, 2025, letter," Opp. at 11, is easily rejected. As an initial matter, it is simply wrong on its face—the July 24 letter does not mention or allude to the CRA, *see* ECF No. 1-1, and so cannot constitute DOJ's Title III demand. *See* 52 U.S.C. § 20703 ("*This demand* shall contain a statement of the basis and the purpose therefor") (emphasis added). That letter only asked *questions* about Maine's voter removal efforts—it never provided any basis to suspect Maine had *violated* its list maintenance obligations or any other federal law. *See* ECF No. 1-1; Compl. ¶ 34. In response to the letter, Secretary Bellows answered DOJ's questions in depth, and DOJ posed no follow-up. *See* ECF Nos. 1-2, 1-3.

Further, Maine's only affirmative list maintenance obligation is to conduct a "general program" that makes a "reasonable effort" to remove voters who became ineligible because the

4

voter died or moved. 52 U.S.C. § 20507(a)(4). DOJ's questions about Maine's efforts to remove *other* categories of registrants—such as non-citizens or inactive voters—are irrelevant because the NVRA does not mandate such removals in the first place. *See Bellitto v. Snipes*, 935 F.3d 1192, 1195 (11th Cir. 2019) ("[S]tates and their subsidiaries are required to conduct a general program of list maintenance that makes a reasonable effort to remove voters who become ineligible on account of death or change of residence, and only on those two accounts."). Nor did DOJ's questions imply that Maine failed to make a "reasonable effort" to remove from its rolls voters who died or moved. It merely observed that Maine had removed voters who moved at a rate "more than twice the national average"—which, if anything, suggests Maine *has* engaged in adequate list maintenance—and asked without any further elaboration for Secretary Bellows to "explain Maine's process" for removing voters who moved or died. ECF No. 1-1. DOJ thus failed to provide any basis to suspect Maine violated its modest list maintenance obligations.

**Purpose**. DOJ's demand also lacks a proper purpose. Its purported desire to "ascertain Maine's compliance with the list maintenance requirements of the NVRA and HAVA," Compl. ¶ 49, is beyond the scope of Title III. As one early court applying Title III noted, a jurisdiction's "failure[] to purge voters who have moved away or have died . . . does not bear any particular importance" to a Title III inquiry. *Bruce*, 298 F.2d at 864 n.2; *see also Weber* Order at 15 ("Title III was not passed as a tool for NVRA compliance").

DOJ claims that its stated purpose "is not open to judicial review." Opp. at 11. But that suggestion is foreclosed by decades of case law subjecting the purpose of government document requests to meaningful judicial scrutiny. *See, e.g.*, *United States v. Powell*, 379 U.S. 48, 57–58 (1964); *see also* Opp'n to Mot. to Show Cause Order at 5–7 (citing cases), ECF No. 62. In recent weeks, two more federal courts have joined a growing chorus rejecting DOJ's efforts to assert

5

subpoena authority beyond the purposes authorized by Congress. *See In re: Dep't of Just. Admin. Subpoena No. 25-1431-030*, No. 25-MC-00063-SKC-CYC, 2026 WL 33398, at *1 (D. Colo. Jan. 5, 2026) (quashing subpoena when DOJ failed to show "its requests are reasonably relevant to the subpoena's congressionally-authorized purpose"); *In re 2025 UPMC Subpoena*, No. 2:25-MC-01069-CB, 2025 WL 3724705, at *1 (W.D. Pa. Dec. 24, 2025) (similar). And, in the parallel voter list suits in California and Oregon, those courts clearly came to the same conclusion. *See, e.g.*, *Weber* Order at 14–16 (dismissing DOJ's complaint demanding unredacted voter data with prejudice after careful review of its asserted claims and the basis and purpose of the demand).

DOJ's assertion that *any conceivable* stated purpose suffices—no matter how far removed from Congress's purpose in enacting Title III—fails as a matter of statutory interpretation and, if accepted, would render Title III's "purpose" requirement a nullity. "In ascertaining the meaning of a statutory provision, we must interpret the relevant words not in a vacuum, but with reference to the statutory context, structure, history, and purpose." *United States v. Seward*, 967 F.3d 57, 66 (1st Cir. 2020) (cleaned); *see also Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 441 (2019) ("[W]ords of a statute must be read in their context and with a view to their place in the overall statutory scheme." (quotation omitted)); Antonin Scalia & Brian A. Garner, *Reading Law* 167 (2012) (Whole-Text Canon: "Context is a primary determinant of meaning.").

The statutory context, structure, history, and purpose here is clear: Congress enacted Title III to give DOJ a tool to investigate violations of the *right to vote*. *See* Mot. at 13–14. Congress specifically crafted Title III to help enforce the Civil Rights Act of 1957's substantive provisions safeguarding voting rights. *Id.*; *see also Weber* Order at 14-15. DOJ admits as much. *See* Opp. at 8, n.2 ("The purpose of Title III is to provide a more effective protection of the right of all qualified citizens to vote without discrimination on account of race. This is the same purpose contained in

6

the Civil Rights Act of 1957, which authorizes the Attorney General to institute civil proceedings for preventive relief from the discriminatory denial of the right to vote." (quoting H.R. Rep. 86-956 at 1944–45 (1960)). Yet DOJ's reading of Title III's "purpose" requirement eschews this essential statutory context, ripping the term from its statutory mooring.[3]

Enforcement history confirms Title III's intended purpose. All of DOJ's early efforts to invoke Title III concerned investigations into the denial of the right to vote. *See, e.g.*, *Lynd*, 306 F.2d at 228; *Coleman*, 313 F.2d at 868; *Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 851 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961); *United States v. Ass'n of Citizens Councils of La.*, 187 F. Supp. 846, 847 (W.D. La. 1960) (per curiam). Throughout its correspondence, complaint, and briefs, DOJ has yet to identify any instance in Title III's six-decade-plus history in which a court held Title III may be used for a purpose other than investigating the "infringement or denial of . . . constitutional voting rights." *Lynd*, 306 F.2d at 228. DOJ's failure to cabin its demands to Title III's purpose is fatal to its claim.

## CONCLUSION

The Court should dismiss DOJ's Complaint for failure to state a claim.

---

[3] DOJ's assertion that "private parties have been granted access to even more detailed voter data," Opp. at 13, in litigation is false. In reality, the disclosures in the cited case *excluded* several categories of sensitive voter information that DOJ seeks here, and they were subject to an extremely strict protective order. *See Coal. for Open Democracy v. Scanlan*, No. 1:24-cv-00312-SE-TSM (D.N.H June 18, 2025), ECF Nos. 87, 87-1. DOJ has been told of this in other cases, *see* Reply Br. in Supp. of Mot. to Intervene, *Weber*, No. 2:25-cv-9149, ECF No. 31; Reply Br. in Supp. of Mot. to Intervene, *United States v. Scanlan*, No. 1:25-cv-371 (D.N.H. Dec. 16, 2025), ECF No. 22, yet it persists in repeating this false claim.

<table>
<tr><td>Dated: January 16, 2026</td><td>Respectfully submitted,<br><br>/s/ Elisabeth C. Frost<br>Elisabeth C. Frost*<br>Christopher D. Dodge*<br>Branden D. Lewiston*<br>Tori Shaw*<br>**ELIAS LAW GROUP LLP**<br>250 Massachusetts Ave NW, Suite 400<br>Washington, DC 20001<br>Telephone: (202) 968-4490<br>Fax: (202) 312-5904<br>efrost@elias.law<br>cdodge@elias.law<br>blewiston@elias.law<br>tshaw@elias.law<br><br>James G. Monteleone<br>**BERNSTEIN SHUR**<br>100 Middle Street/PO Box 9729<br>Portland, Maine 04104-5029<br>jmonteleone@bernsteinshur.com<br><br>*Appearing *Pro Hac Vice*<br><br>*Counsel for Intervenors John Schneck and Marpheen Chann*</td></tr>
</table>