# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

SHENNA BELLOWS, in her official capacity as the Secretary of State of Maine, and the STATE OF MAINE,

*Defendants*,

JOHN SCHNECK and MARPHEEN CHANN,

*Defendant-Intervenors,*

LEAGUE OF WOMEN VOTERS OF MAINE

*Defendant-Intervenors*.

Case No. 1:25-CV-468-LEW

**LEAGUE OF WOMEN VOTERS OF MAINE'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT..........................................................................................................................1

    I.      The United States has failed to state a claim under the Civil Rights Act for the unredacted voter list..................................................................................................1

           a.   The Civil Rights Act does not abrogate Plaintiff's responsibility to state a claim in its Complaint...................................................................................................1

           b.   The United States failed to meet the CRA's statutory requirements to state the basis and purpose of its requests...............................................................3

    II.     Plaintiff fails to state a claim under the NVRA ...............................................5

    III.    Plaintiff's HAVA claim should be dismissed ..................................................5

    IV.    State and federal privacy laws are important legal considerations ................6

CONCLUSION.......................................................................................................................7

## INTRODUCTION

The United States sued the state of Maine for its unredacted voter file. It has now sued 22 other states and the District of Columbia. These suits are largely identical, and none is justified by the Attorney General's power to enforce federal voting laws. Instead, they are an unprecedented effort to collect voters' sensitive data from almost every state in the country. According to various sources of information, including a proposed Memorandum of Understanding (MOU) the Justice Department (USDOJ) asked Colorado and other states to sign, the United States intends to use this data for a number of purposes, some unconstitutional, that go beyond the enforcement of the laws it relies on here. *See* ECF No. 52 at 8-9 (describing MOU). This runs contrary to the constitutional and statutory frameworks for elections, which entrust the states with the authority to maintain their voter lists.[1] Because Plaintiff's demands for data fail to state a claim, the Complaint should be dismissed. *See* Ex. A, Order Granting Defendant's Motion to Dismiss and Intervenors' Motions to Dismiss, *United States v. Weber*, No. 2:25-cv-09149-DOC-ADS (C.D. Cal. Jan. 15, 2026) (dismissing, without leave to amend, a similar complaint based on the same three statutes) (hereinafter *Weber* Order).

## ARGUMENT

**I.    The United States has failed to state a claim under the Civil Rights Act for the unredacted voter list.**

    a. *The Civil Rights Act does not abrogate Plaintiff's responsibility to state a claim in its Complaint.*

The Civil Rights Act (CRA) does not create a special, truncated proceeding that shields Plaintiff's demand from ordinary judicial scrutiny, including dismissal authorized by Federal Rule

---

[1] Further, the proposed MOU does not limit USDOJ's ability to use states' data and expressly permits USDOJ to provide the data to contractors. ECF No. 52-1 (MOU) at 6-7; *but see* 52 U.S.C. § 20704.

of Civil Procedure (FRCP) 12(b).[2] *See Weber* Order at 13 ("[n]othing in the text of Title III requires a special statutory proceeding or any abbreviated procedures"); *contra* ECF No. 75 (Opp. Br.) at 9. The *Weber* court held that "appropriate process" requires application of the FRCP to properly allow the court to determine whether Plaintiff has met the CRA's statutory requirements. *Weber* Order at 13. In a closely analogous statutory scheme, the Supreme Court held that "appropriate process" required courts to apply standard civil procedure and to ensure statutory prerequisites were satisfied. *See United States v. Powell*, 379 U.S. 48, 57-58 & n.18 (1964). Plaintiff relies on the 1962 Fifth Circuit case *Kennedy v. Lynd* to argue otherwise, but, as Intervenor League of Women Voters of Maine (LWVME) has already explained*, see* ECF No. 52 at 4, that reliance is misplaced*.* In fact, Plaintiff's ongoing reliance on *Lynd* undercuts its own procedural argument that it is entitled to forego routine litigation requirements. For example, Plaintiff never addresses *Lynd*'s directive, which directly follows its discussion of a special statutory proceeding, that "Title III provides 'an effective means whereby preliminary investigations of registration practices can be made *in order to determine whether or not such practices conform to constitutional principles*.'" *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962) (emphasis added) (citation omitted). Plaintiff has only argued that it needs the documents to engage in *statutory* list maintenance and does not explain how that statutory goal allows it to benefit from *Lynd*'s allowance of special statutory proceedings to evaluate whether practices "conform to *constitutional* principles." *Id.* (emphasis

---

[2] The United States did not file a reply in support of its Motion for an Order to Show Cause, so that motion is fully briefed as well. On January 12, 2026, Plaintiff filed a notice, attaching a recent scheduling order in *United States v. Thomas*, No. 3:26-cv-21 (KAD) (D. Conn. Jan. 8, 2026), a parallel case seeking Connecticut's unredacted voter rolls. ECF No. 78. The scheduling order in *Thomas* includes no analysis of Plaintiff's claims, nor any analysis of the proper procedure to be followed. In fact, the same court issued an additional order making this exact point. *See* Order, *United States v. Thomas*, No. 3:26-cv-21 (KAD) (D. Conn. Jan. 14, 2026), ECF No. 30 (clarifying that the Court will determine both the correct procedural steps and merits of the pending motions after full briefing and a hearing); *Weber* Order at 31-32. Should this Court determine it is appropriate to hold a hearing on Plaintiff's Motion for an Order to Show Cause, any such hearing should only occur after the Court resolves the pending motions to dismiss and allows for discovery into the true purpose of Plaintiff's request, and should provide for an opportunity to present evidence.

2

added). And *Lynd* also directs courts that "if the respondent-custodian opposes the grant of such relief," the Court should set a "suitable hearing" on the matter, not grant relief on the papers. *Id.* at 226. Plaintiff's selective reading of *Lynd* does not displace the text of the CRA or the FRCP in determining the appropriate process in this litigation. Therefore, the Court should apply the FRCP in addressing the sufficiency of the Complaint.

> b. *The United States failed to meet the CRA's statutory requirements to state the basis and purpose of its requests.*

The Court should dismiss Count III of the Complaint because Plaintiff has failed to meet its statutory obligations under the CRA to state the basis and purpose for its demand. *See* ECF No. 53 at 16-18; *Weber* Order at 14 (finding Plaintiff had failed to meet CRA's requirements). Plaintiff's only response on this point is to again cite *Lynd* and complain they are being held to a "hyper-technical reading" of the statute. Opp. Br. at 11. The CRA's statutory requirements, however, are not semantics. 52 U.S.C. § 20703. A federal agency's power to enforce demands for records "is created solely by statute." *Peters v. United States*, 853 F.2d 692, 696 (9th Cir. 1988). Therefore, to enforce such a demand, the agency must comply with the terms of applicable law. *See CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 690 (D.C. Cir. 2017). The Attorney General is required to provide a statement of basis and purpose prior to seeking judicial enforcement of its request. 52 U.S.C. § 20703. She did not do so: None of USDOJ's letters include the basis of its request. *See* ECF No. 53 at 16-17.

Even if USDOJ's July 24 letter was deemed to include a statement of basis—despite not including any mention of the CRA—Defendant Bellows has already described in detail in her September response letter why the Election Administration and Voting Survey (EAVS) data cited does not provide any factual basis for a request for an unredacted voter file. *See* ECF No. 1-2 at 2-3. Plaintiff made no effort to defend its use of the EAVS data as the basis. Rather than responding

3

to Secretary Bellows' concerns, Plaintiff filed suit, as it now has in many other states. Plaintiff's failure to provide the basis for its request becomes clearer within the broader context; it has no individualized reason to believe Maine, or any of the 23 states it has sued, is violating any federal voting law.

Plaintiff has also failed to identify the purpose for its request. Plaintiff is attempting to use this data to usurp the State's statutory role in list maintenance, which is not a purpose under the CRA. *See* Opp Br. at 11-12; *but see* ECF No. 53 at 1 (explaining how this data is not necessary for list maintenance analysis). Rather, Plaintiff's push to insert itself into election administration threatens the separation of powers. *See Weber* Order at 16-19 (discussing Plaintiff's "true motive").

Plaintiff's attempts to minimize the significance of these improper requests are without merit. *First*, it argues that Maine already provides this data to the Electronic Registration Information Center (ERIC), so Maine should turn the same data over to Plaintiff. Opp. Br. at 13. ERIC is a tool used by states to assist with their statutorily required list-maintenance responsibilities.[3] Just because Maine provides the information to ERIC does not support Plaintiff's claim that it is also entitled to the data; indeed, it actually demonstrates that Plaintiff is attempting to take the State's statutorily mandated role in list maintenance as its own. *Second*, Plaintiff incorrectly describes the data received by private litigants in *Coalition for Open Democracy v. Scanlan*. Opp Br. at 13. Plaintiff's description is incorrect in two crucial ways: (1) the private litigants in that case did not receive identification numbers as a result of its discovery request, and importantly (2) private litigants obtained the state voter roll as part of discovery in litigation of

---

[3] *See ERIC Overview*, ERIC, https://ericstates.org/ (last visited Jan. 16, 2026) ("In compliance with federal and state laws, [member states] use these reports to contact voters for the purposes of updating their record or to remove ineligible and deceased voters from the rolls."). Moreover, ERIC members are required to "hash" (or randomize) sensitive data like social security numbers, driver's license numbers, or dates of birth *before* transmitting them. *Technology & Security Overview*, ERIC, https://ericstates.org/security/ (last visited Jan. 16, 2026).

constitutional claims, and under a strict protective order. *See* Protective Order, *Coalition For Open Democracy v. Formella*, No. 1:24-cv-000312 (D.N.H June 18, 2025), ECF No. 87. *Third*, Plaintiff's reliance on a state court decision in South Carolina is inapt to this analysis of the United States's authority to demand this data in federal court, as that court spent a mere two paragraphs of dicta on the federal laws at play. *See* Opp. Br. at 13-14.

### II. Plaintiff fails to state a claim under the NVRA.

Plaintiff barely opposes the motions to dismiss its National Voter Registration Act (NVRA) claim, including a mere paragraph that does not address LWVME's arguments. Binding and persuasive caselaw plainly demonstrates that sensitive personal data does not fall under Section 8(i)'s disclosure provision. *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 44 (1st Cir. 2024); *see also Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1325 (N.D. Ga. 2016) (citing 52 U.S.C. § 20507(a)(3)-(4)); *id.* at 1345 (information like social security numbers and birth dates "is not relevant . . . to determine whether the State improperly removed or did not add individuals to the voter roll"); *id.* at 1344; *Weber Order* at 20. And Plaintiff does nothing to explain why it needs access to driver's license numbers, other DMV identifiers, and social security numbers to evaluate whether Maine "makes a reasonable effort" to remove ineligible voters—its charge under the NVRA. 52 U.S.C. § 20507(a)(4).

### III. Plaintiff's HAVA claim should be dismissed.

Unlike the NVRA, the Help America Vote Act (HAVA) does not contain a provision through which the Attorney General or the public may request records. *Weber* Order at 24-25. The NVRA was already in place when Congress passed HAVA, and HAVA's repeated invocation of the NVRA demonstrates that "Congress knew how to reference the NVRA." *Bellitto v. Snipes*, 935 F.3d 1192, 1202 (11th Cir. 2019). But Congress chose not to incorporate the NVRA's

disclosure provision or to craft one specific to HAVA. As a result, no provision of HAVA authorizes the Attorney General's demand for sensitive voter information from Maine.

Plaintiff argues that HAVA's lack of a private right of action means this Court should read in a public disclosure provision.[4] *See* Opp. Br. at 15-16. That argument is unpersuasive. HAVA gives the Attorney General authority to enforce certain sections of HAVA, including the list-maintenance requirements detailed in 52 U.S.C. § 21083(a). 52 U.S.C. § 21111. But Plaintiff did not file a civil action alleging a violation of HAVA, nor is it seeking discovery in such litigation, making its references to the language of the CRA and protections under FRCP 34 inapt. *See* Opp. Br. at 17. In addition, the CRA has an explicit provision permitting USDOJ to request documents, *see* 52 U.S.C. § 20703, and HAVA does not.

Finally, the argument that the power to enforce HAVA implies an ability to obtain the unredacted voter list is unpersuasive. A static, unredacted copy of Maine's voter registration list is not necessary to determine whether Maine is complying with HAVA's list-maintenance requirements unless Plaintiff alleges that Maine is failing to collect driver's license numbers or the last four digits of social security numbers. Plaintiff does not allege this, and it is obvious that Maine is collecting that data. *Me. Voter Registration Application*, https://perma.cc/X3GG-B4SS. As such, Plaintiff failed to allege a claim that Maine has violated HAVA by failing to provide Maine's unredacted voter list.

### IV. State and federal privacy laws are important legal considerations.

Finally, the Court should not cast aside state and federal privacy protections. Courts do not preempt state law unless it is necessary to enforce the federal law at issue. *See Dalton v. Little*

---

[4] Plaintiff also wrongly states HAVA enforcement is "vested solely in the Attorney General." Opp. Br. at 16. The First Circuit has found that comparable provisions of HAVA may be privately enforced through a Section 1983 action. *Colon-Marrero v. Velez*, 813 F.3d 1, 17 (1st Cir. 2016).

*Rock Family Planning Servs.*, 516 U.S. 474, 476-78 (1996) (state law should be "displaced only to the extent that it actually conflicts with federal law"); *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 9 (2013) (federal law preempts state law only "so far as the conflict extends").

Plaintiff claims that it requested Maine's unredacted voter file to assess whether Maine has complied with its statutory list-maintenance obligations under NVRA and HAVA, but as explained previously, *see* ECF No. 53, the unredacted voter file will shed no light on whether Maine has complied with these requirements. Indeed, in *PILF*, the First Circuit held that the NVRA does not require production of the sensitive voter information that Plaintiff has requested and Maine law protects. *PILF*, 92 F.4th at 56. Given Plaintiff's lack of need for this sensitive information for its NVRA and HAVA oversight, preemption of Maine law would be an improper breach of Maine's sovereignty and principles of federalism. *See Weber* Order at 22-24.

Plaintiff's response to the concerns regarding federal privacy law are similarly unpersuasive and largely repeat allegations from the Complaint. Opp. Br. at 17-18, 20-21; *but see Weber* Order at 27 (finding Plaintiff is violating federal privacy laws). Congress enacted the Privacy Act and E-Government Act to protect the data of Americans against federal intrusion. Given the unprecedented nature of Plaintiff's approach, and the questions surrounding its planned use for this data, these laws demonstrate that the Court should hold Plaintiff to a high standard and closely examine whether its Complaint is legally sufficient.

## CONCLUSION

For the reasons stated above, Intervenor League of Women Voters of Maine asks this Court to grant this motion to dismiss all counts of the Complaint.

January 16, 2025                                  Respectfully submitted,

                                                  /s/ *Sejal Jhaveri*

7

Allan K. Townsend
Johnson, Webbert & Beard, LLP
1 Bowdoin Mill Island, Suite 300
Topsham, ME 04086
Tel : (207) 623-5110
Fax: (207) 622-4160
allan@work.law

Brent Ferguson
Daniel S. Lenz
Sejal Jhaveri
Renata O'Donnell
Heather Szilagyi
Alexis Grady
Kate Hamilton
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
Tel: (202) 736-2200
Fax: (202) 736-2222
bferguson@campaignlegalcenter.org
dlenz@campaignlegalcenter.org
sjhaveri@campaignlegalcenter.org
rodonnell@campaignlegalcenter.org
hszilagyi@campaignlegalcenter.org
agrady@campaignlegalcenter.org
khamilton@campaignlegalcenter.org

Maura Eileen O'Connor
Brennan Center for Justice
at NYU School of Law
777 6th St. NW, Ste. 1100
Washington, DC 20001
Tel: (202) 249-7190
oconnore@brennan.law.nyu.edu

Andrew B. Garber
Brennan Center for Justice
at NYU School of Law
120 Broadway, Suite 1750
Tel: (646) 292-8310
Fax: (212) 463-7308
garbera@brennan.law.nyu.edu

Counsel for Intervenor League of Women Voters of Maine

## CERTIFICATE OF SERVICE

  I, Sejal Jhaveri, do hereby certify that on this 16th day of January, 2026, I caused a true and correct copy of the foregoing document to be served upon all counsel of record registered with the Court's ECF system, by electronic service via the Court's ECF transmission facilities.

Date: January 16, 2026                Signature: <u>/s/*Sejal Jhaveri*</u>