UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>      v.<br><br>SHENNA BELLOWS in her official capacity as Secretary of the State of Maine and the STATE OF MAINE,<br><br>                Defendants. | Docket No. 1:25-cv-00468 |

**REPLY MEMORANDUM IN SUPPORT OF
MAINE'S MOTION TO DISMISS**

Defendants State of Maine and Secretary of State Shenna Bellows (together, "Maine") submit this reply memorandum in further support of their Motion to Dismiss (ECF No. 54) Plaintiff United States of America's ("DOJ's") Complaint (ECF No. 1) for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  Significantly, just yesterday, the District Court in *United States v. Weber*, 2:25-cv-09149-DOC-ADS (C.D. Cal.), dismissed DOJ's lawsuit seeking California's unredacted voter file on grounds similar to those argued in Maine's Motion to Dismiss, *see id.*, ECF No. 128 (attached as Exhibit A).  The Court should follow a similar path here.

**I.    DOJ's demand for Maine's unredacted voter file under the Civil Rights Act is inadequate because it fails to adequately state a basis and purpose.**

DOJ does not contest that the Civil Rights Act of 1960 (CRA) requires the Attorney General to state both a basis and purpose for election records requests.  Nor does DOJ contest that the CRA's records provision was passed to enable the Attorney General to tackle voting-related discrimination.  *See Weber*, Ex. A at 14.  Instead, in support of its contention that it complied with the CRA's "basis" and "purpose" requirements, DOJ suggests the statue's plain

meaning renders the CRA's policy goals irrelevant to interpreting the statute.  *See* Opp. 7–9.

But the scope of permissible bases and purposes under the statute is anything but plain. *See, e.g., In re Weinstein*, 272 F.3d 39, 48 (1st Cir. 2001) (permitting consideration of "legislative history" and "underlying policies" where ambiguity exists).  On its face, the CRA sets essentially no limits on disclosure requests, but the Attorney General self-evidently cannot request election records for retaliatory purposes, nor would a statement like "I seek the records because they exist" suffice.  Accordingly, when considering a claim under the CRA, a court must assess whether the Attorney's General's statement of basis and purpose is *adequate*.[1]

Maine submits, based on a wealth of legislative history, *see* Mot. to Dismiss 15–16; *see also* Opp. 8 n.2, that an adequate basis and purpose must relate to suspected voting-related discrimination.  DOJ offers no counter-description of the limits of the CRA.  Instead, it relies heavily on *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), implying that the Attorney General has met any minimal burden under the CRA.  But as Maine argued in response to DOJ's Motion for Order to Show Cause—to which DOJ did not reply—the Attorney General's demand in *Lynd* concerned voting-related discrimination, and that decision, which has gone uncited for its interpretation of the CRA for decades, no longer reflects the state of the law.  *See* Opp'n to Mot. for OTSC 13.  Further, even the *Lynd* Court recognized that the Attorney General must "*adequately* state[] [a] basis and purpose" for any request.  306 F.3d at 229 (emphasis added).[2] DOJ's stated purpose, to "evaluate the state's compliance with . . . list-maintenance requirements

---

[1] The single case DOJ cites in support of its claim that the provision is clear, *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960), is irrelevant.  The *Alabama* court determined that Section 301 of the CRA is "clear and unambiguous," *id.* at 855, but that provision concerns the records election officials are required to preserve.  The disclosure provision, and the corresponding purpose and basis requirements, appears in Section 303.

[2] As to *Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963), which both suffers the same faults as *Lynd* and contains no relevant analysis, it is telling that DOJ repeatedly cites the statement of a Senate spokesman reproduced in that case as the authoritative source on the meaning of the CRA, *see* Opp. 8, 11–12, 13, yet it simultaneously decries consideration of the legislative history cited by Maine in its Motion to Dismiss.

under federal law," *see, e.g.,* Opp. 10, would therefore be inadequate under the CRA even if it were the true purpose. And, as Maine has suggested and a federal court has now concluded, even that purpose appears to be "pretextual." *Weber*, Ex. A at 19; Mot. to Dismiss 19.

As to the "basis" for DOJ's request, which the CRA also requires, DOJ fails to point to any express statement of a basis in its demand letters. Rather, in an abandonment of its plain meaning ethos, DOJ rejects Maine's "hyper-technical" reading of the statute and asserts that the basis for its records request was implicit in its letters. Opp. 11.

Not so. The statute makes clear that there must be some "statement" of the basis for a records request. 52 U.S.C.A. § 20703; *see also* Mot. to Dismiss 14–15. DOJ has not provided one. *Compare In re Coleman*, 208 F. Supp. 199, 199 (S.D. Miss. 1962) (letter demand clearly identified the information "[the] demand is based upon" and "[t]he purpose of [the] demand"). But even if a literal statement of basis were not required, DOJ's letters to the Secretary do not plausibly identify one given (1) rather than identify a concern about HAVA or NVRA compliance, let alone *discriminatory* noncompliance, DOJ asked questions about Maine's list-maintenance procedures, which the Secretary answered; (2) DOJ asked for Maine's unredacted voter file *before* it received answers to its questions; and (3) DOJ is seeking the same data from essentially every State in the union. *See* Mot. to Dismiss 17–18.

**II.     DOJ's request under the NVRA exceeds what federal law authorizes.**

DOJ's single-paragraph defense of its NVRA claim is unmoored from the allegations of the Complaint and leaves two fatal flaws entirely unaddressed. *First*, the First Circuit has made clear that the NVRA does not entitle a requestor to an *unredacted* voter file. *See Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024).[3] DOJ offers no response, other than to

---

[3] DOJ's claim that private parties have been granted access to more detailed voter information is false. *See* Opp. 13. In the single case cited, the information obtained by the ACLU excluded sensitive information like social

assert that the "voter registration list . . . is . . . some of the best evidence of a state's voter list maintenance efforts." Opp. 15. But that statement is unsupported by allegations in the Complaint. Further, the statement is illogical given a static list does little to shed light on whether Maine's list-maintenance procedures are effective "on a regular and ongoing basis." *Pub. Int. Legal Found., Inc. v. Benson*, 136 F.4th 613, 627 (6th Cir. 2025).

The Secretary's responses to DOJ's letters, by contrast, *do* provide detailed information regarding Maine's list-maintenance program. Yet rather than ask follow-up questions to satisfy any remaining concerns—and, to be clear, DOJ has never alleged that Maine "ha[s] failed to engage in reasonable list maintenance efforts," Opp. 15—DOJ filed this lawsuit.

*Second*, DOJ does not dispute that the applicability of the NVRA's disclosure provision to the federal government is narrowed by the Privacy Act and E-Government Act. Accordingly, DOJ's violation of those statutes, *see* Parts IV–V, *infra*, renders its request for the voter file outside the scope of the disclosures that the NVRA requires.

**III.    HAVA offers no statutory basis for demanding Maine's unredacted voter file.**

DOJ admits that HAVA contains no disclosure provision, public or otherwise. It nonetheless argues, without supporting authority, that its HAVA enforcement obligations implicitly authorize a request for the unredacted voter file under HAVA.

As evidenced by both the NVRA and the Civil Rights Act of 1960, Congress knows how to authorize records requests and mandate disclosure. That HAVA contains no provision at all permitting DOJ to request voting records, never mind records to "evaluat[e]" or "determin[e]" an individual state's compliance, Compl. ¶¶ 61–63, is therefore glaring.

---

security numbers, was secured by a comprehensive protective order, and was sought in a case unrelated to list maintenance. *See* Protective Order & Schedule A, *Coal. for Open Democracy v. Scanlan,* Case No. 1:24-cv-00312-SE-TSM (D.N.H Jun. 18, 2025), ECF Nos. 87, 87-1.

In any event, even if HAVA allowed pre-suit demands for records, DOJ never identified, either in its Complaint or its letters to the Secretary, any suspected violation of HAVA that it needs records to investigate. Its new suggestion that it might investigate whether Maine is properly collecting voters' driver's license or social security numbers, Opp. 16, appears to be nothing more than a *post hoc* rationalization to bolster its litigating position.

Failing implicit authorization, DOJ pivots entirely and suggests that its HAVA claim refers not to a statutory records request, but rather, functionally, a discovery request under Federal Rule of Civil Procedure 34. Opp. 16–17. Putting aside that DOJ's request for Maine's unredacted voter file was necessarily made before this case was filed, DOJ has never made a Rule 34 request for records. And even if it had done so, a violation of Rule 34 self-evidently cannot support a claim that Maine violated an entirely separate federal statute.

**IV.    DOJ's demand violates the Privacy Act.**

Regardless of whether DOJ was required "to plead its compliance with the Privacy Act," Opp. 17, it chose to do so in some detail here, Compl. ¶¶ 52–53. The Complaint thus opened the door to consideration at the motion-to-dismiss stage whether its sweeping request for voter PII violates the Privacy Act. As Maine has explained, Mot. to Dismiss 20–24, it does.

DOJ's opposition offers no meaningful rebuttal. DOJ does not dispute that the voter data it is seeking "describ[es] how an[] individual exercises rights guaranteed by the First Amendment," thus making it off-limits to the federal government unless an exception applies. 5 U.S.C.A. § 552a(e)(7). Rather, DOJ attempts to justify its demand under the exception for collections "within the scope of an authorized law enforcement activity," *id.*, which is decidedly "narrow," *Garris v. Fed. Bureau of Investigation*, 937 F.3d 1284, 1296 (9th Cir. 2019). But DOJ does not explain why it needs sensitive information about Mainers' expressive activity to assess whether Maine has adopted reasonable procedures for maintaining its voter list.

Indeed, DOJ's attempt to analogize itself to ERIC, Opp. 19, is actually a concession that it is acting far outside any authorized law enforcement capacity.[4] ERIC does not assess States' list-maintenance processes, but rather is a tool States utilize to *perform* list maintenance. By asserting that it needs Maine's voter data for "data matching," Opp. 20, DOJ confirms that it intends to subject States to its own involuntary list-maintenance program. That is not authorized law enforcement activity, but rather a violation of HAVA. *See* 52 U.S.C.A. § 21085.

DOJ similarly fails to establish that it has provided the requisite notice of its data collection efforts to the public or Congress. It parrots the language in its Complaint citing SORNs it contends are applicable, but offers no response to Maine's point that those SORNs do not even hint that DOJ will be maintaining databases containing the sensitive PII of millions of innocent voters. *See* Mot. to Dismiss 23–24. Rather, DOJ's response simply begs the question, in that DOJ asserts that Maine cannot refuse to disclose the voter data "where the United States is complying with the provisions of the Privacy Act." Opp. at 18.

To the extent DOJ is arguing that Maine must turn over voter PII even if DOJ's receipt of it would violate the Privacy Act, that lawless argument should be rejected. If DOJ would violate the Privacy Act if it collected PII on Maine voters, Maine cannot possibly be obliged to abet a violation of federal law by providing it. The request is therefore itself unlawful.

V.    **DOJ's demand is a new collection that triggers, and violates, the E-Government Act.**

DOJ's failure to comply with the E-Government Act also undermines its request for Maine's voter file. DOJ does not contend that it conducted a privacy impact assessment, nor does it contest its obligation to comply with the statute. Instead, DOJ claims, without support, that it has not initiated a relevant "new" collection under the Act because it has not contacted

---

[4] DOJ's argument about ERIC also ignores its own prior concession, Compl. ¶ 54, that States only transmit to ERIC strings of seemingly random code ("hashes") that ERIC has no ability to decrypt.

individuals for information. Opp. 20.

DOJ misreads the Act. The E-Government Act's description of a relevant "new collection" turns not whether the government directly contacts individuals, but rather on whether the information sought (a) permits the identification of specific individuals, and (b) is obtained in aggregate, i.e., from "10 or more persons." *See* Pub. L. No. 107–347 ("EG Act"), § 208(b)(1)(A)(ii)(II), 116 Stat. 2899 (codified as amended as 52 U.S.C. §§ 20901-21145).[5] Nothing in the text of the Act limits it to direct federal contact with individuals, nor would such a limitation be consistent with the Act's broad purpose of protecting individual privacy. *See* EG Act § 208(b). Seizing from the Secretary of State voters' responses to the questions "posed" on Maine's voter registration application threatens individual privacy in the same fashion as if the federal government were collecting that information directly from voters. *Id*. In short, DOJ is initiating a new collection of information that consists of answers to uniform questions posed to more than one million registered voters in Maine. A privacy impact assessment is required.

No "absurd result" flows from this understanding. Maine does not contend, nor does its interpretation of the E-Government Act suggest, that DOJ must conduct "thousands of privacy impact assessments." Opp. 21. Rather, Maine simply maintains that, where DOJ takes the highly unusual step of collecting the PII of millions of innocent voters, the law requires that it first consider the impact on those voters' privacy interests.

## Conclusion

For the reasons above, and those stated in Maine's Motion to Dismiss, the Court should dismiss the Complaint.

---

[5] *See also* Off. of Mgmt. & Budget, Exec. Off. of the President, OMB Mem. M-03–22, OMB Guidance for Implementing the Privacy Provisions of the E-Government Act of 2002 (2003), https://perma.cc/5SCU-63JV (privacy impact assessment required for a "a new electronic collection of information in identifiable form for 10 or more persons").

| | |
|---|---|
| Dated: January 16, 2026 | AARON M. FREY<br>Attorney General<br><br>`/s/ Jonathan R. Bolton`<br>Jonathan R. Bolton<br>Jason Anton<br>Assistant Attorneys General<br>Office of the Attorney General<br>6 State House Station<br>Augusta, ME 04333–0006<br>Tel. (207) 626–8800<br>jonathan.bolton@maine.gov<br>jason.anton@maine.gov |