**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>v.<br><br>SHENNA BELLOWS, in her official capacity as the Secretary of State of Maine and the STATE OF MAINE,<br><br>   Defendants. | Case No. 1:25-cv-468-LEW |

**INTERVENORS JOHN SCHNECK AND MARPHEEN CHANN'S RESPONSE TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**

Intervenors John Schneck and Marpheen Chann ("Voter Intervenors") respectfully submit this response to Plaintiff's Notice of Supplemental Authority regarding an Office of Legal Counsel ("OLC") opinion. *See* ECF No. 112.

The OLC opinion is effectively an unauthorized surreply in which one DOJ office opines that another DOJ office's litigation position is correct. The timing is revealing: Though DOJ sued Maine on September 16, 2025, the OLC opinion is dated May 12, 2026—nearly two months after oral argument in this case, and on the eve of oral arguments in three appeals stemming from the dismissal of DOJ's parallel claims for other States' voter lists. *See United States v. Benson*, No. 26-01225 (6th Cir., argued May 13, 2026); *United States v. Oregon*, No. 26-01231 (9th Cir., to be argued May 19, 2026); *United States v. Weber*, No. 26-01232 (9th Cir., to be argued May 19, 2026). And unlike a typical OLC opinion, this one explicitly concerns arguments advanced in active litigation, citing and responding to briefs filed by counsel for Voter Intervenors in this matter. ECF No. 112-1 at, *e.g.*, 7 n.7, 8 n.9; *see also* Off. of Legal Couns., *Memorandum for*

1

*Attorneys of the Office Re: Best Practices for OLC Legal Advice and Written Opinions* at 3 (July 16, 2010), https://perma.cc/2DWR-ALS7 ("As a prudential matter, OLC generally avoids opining on questions likely to arise in pending or imminent litigation involving the United States as a party.").[1] Even setting aside the default rule that agency opinion letters are afforded no legal deference, *see Christensen v. Harris County*, 529 U.S. 576, 587–88 (2000), this legal brief dressed up as an OLC opinion should be given no weight.

On the merits, the OLC opinion adds nothing to bolster DOJ's position in this litigation—in fact, it often confirms *Voter Intervenors'* position. As just one example, OLC contends that "[i]f Congress had meant to limit section 303 to materials that a third party has provided state election officers, it had other, more specific words available," such as "receive." ECF No. 112-1 at 9. Yet in the exact same breath, OLC defines "receive" to as "[*t*]*o come into possession of*, get, acquire, or the like, from any source outside of oneself," and to "indicate[] a transfer of possession from one person . . . to another[.]" *Id.* (second alteration in original) (emphasis added) (quotations omitted). Those definitions buttress Voter Intervenors' argument that the CRA does not extend to voter lists. *See* Mem. Supp. Mot. Dismiss 9, ECF No. 61. A State's voter list, which is a record created and maintained by election officials, does not fall within any understanding of the statutory language—not even OLC's.

The OLC opinion also leaves no doubt that the impetus for DOJ's demand is to share Maine's unredacted voter registration list with the Department of Homeland Security to investigate purported (and unsubstantiated) illegal voting by noncitizens in Maine. ECF No. 112-1 at 1. But DOJ's letters to Secretary Bellows said nothing of the sort. *See* ECF Nos. 1-1, 1-3. Similarly, at the motion to dismiss hearing, counsel for DOJ hedged on whether the agency intended to share

---

[1] This Best Practices memo remains in effect, notwithstanding OLC's choice to involve itself in pending litigation here. *See* https://www.justice.gov/olc/best-practices-olc-legal-advice-and-written-opinions.

Maine's voter list with the Department of Homeland Security, Mar. 26, 2026 Tr. 43:13–17; 79:5–19, notwithstanding OLC's confirmation that giving the list to DHS was DOJ's true purpose all along. Here, DOJ has instead repeatedly represented to the Secretary and this Court that its purpose was to enforce the NVRA and HAVA's list maintenance provisions, ECF Nos. 1-1, 1-3, which only obligate States to create a program that makes reasonable efforts to remove from their lists voters who become ineligible due to death or relocation. *See* 52 U.S.C. § 20507(a)(4). Indeed, the OLC opinion itself acknowledges this. ECF No. 112-1 at 2. Nothing in the NVRA, HAVA, or the CRA grants DOJ supervisory power over the removal of noncitizens from state voter rolls. The OLC opinion thus reveals DOJ's stated purpose to be a pretext.

Dated: May 15, 2026

Respectfully submitted,

*/s/ Elisabeth C. Frost*
Elisabeth C. Frost*
Christopher D. Dodge*
Branden D. Lewiston*
Tori Shaw*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
Telephone: (202) 968-4490
efrost@elias.law
cdodge@elias.law
blewiston@elias.law
tshaw@elias.law

James G. Monteleone
**BERNSTEIN SHUR**
100 Middle Street/PO Box 9729
Portland, Maine 04104-5029
jmonteleone@bernsteinshur.com

*Admitted *Pro Hac Vice*

*Counsel for Voter Intervenors John Schneck and Marpheen Chann*